UNITED STATED DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RHODE ISLAND RESOURCE RECOVERY CORPORATION<br><br>*Plaintiff*,<br><br>v.<br><br>THE RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, by and Through its Director, W. MICHAEL SULLIVAN and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, NEW ENGLAND REGION, by and through its Regional Administrator, ROBERT W. VARNEY,<br><br>*Defendant*. | ) | CA 05 451<br><br>C.A. No. 05- |

**MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Rhode Island Resource Recovery Corporation ( "Plaintiff") hereby moves for a preliminary injunction prohibiting the Rhode Island Department of Environmental Management from (1) requiring Plaintiff to obtain a state permit, license, or approval in order to conduct on-site remediation work at Operable Unit 1 ("OU1") of the Central Landfill Superfund Site in Johnston, Rhode Island (the "Superfund Site"); (2) entering onto the Superfund Site without the consent, approval or order of the U.S. Environmental Protection Agency as is required by the Consent Decree; and (3) commencing or independently engaging in any civil, administrative or criminal statutory or regulatory proceeding concerning the Plaintiff's remediation activities within the Superfund Site.

In support of its Motion, Plaintiff relies on the accompanying memorandum of law, as well as its Complaint for Declaratory and Injunctive Relief filed in this case.

RHODE ISLAND RESOURCE RECOVERY CORPORATION

By its Attorneys,

Patricia K. Rocha (#2793)
R. Bart Totten (#5095)
Kristen W. Sherman (#5595)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607/751-0604

Richard A. Sherman (#1190)
Raymond M. Ripple (#6489)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
Tel: (401) 276-6513
Fax: (401) 276-6611

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26 day of October, 2005, I caused a true copy of the within Motion for a Preliminary Injunction to be served together with the Complaint in this matter:

*359234_1.doc*

UNITED STATED DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RHODE ISLAND RESOURCE RECOVERY CORPORATION<br><br>*Plaintiff,*<br><br>v.<br><br>THE RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, by and Through its Director, W. MICHAEL SULLIVAN and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, NEW ENGLAND REGION, by and through its Regional Administrator, ROBERT W. VARNEY,<br><br>*Defendants.* | ) | CA 05 451<br>C.A. No. 05- |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff Rhode Island Resource Recovery Corporation, formerly known as the Rhode Island Solid Waste Management Corporation ("Plaintiff"), by and through its undersigned attorneys, hereby submits this Memorandum of Law in Support of its Motion for a Preliminary Injunction in the above-captioned matter.

## I. BACKGROUND

On May 16, 1996, the Plaintiff executed that certain Consent Decree entered as an Order of this Court on October 2, 1996 in the matter of United States of America v. Rhode Island Solid Waste Management Corp., C.A. No. 96-408P (the "Consent Decree"). Under the terms of the Consent Decree, Plaintiff was and is required to remediate, in accordance with the applicable provisions of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 et seq. ("CERCLA"), the various hazardous substances present in that 121 acre portion (known as Phase I and also known as Operable Unit I ("OU1"))

of the Central Landfill, owned and operated by the Plaintiff in Johnston, Rhode Island (the "Superfund Site").

Since 1996, the Plaintiff has been diligently implementing the required remedy for the Superfund Site, of which one of the elements is the construction of a multilayer RCRA (Resource Conservation and Recovery Act) C cap over the previously uncapped 89 acres of the Superfund Site, as well as incorporating therein the then existing cap (approved by the defendant Rhode Island Department of Environmental Management ("Department")), which covers the remaining 32 acres of the Superfund Site (the "RCRA Cap").

Prior to the construction of the RCRA Cap, the Plaintiff utilized various fill materials including, but not limited to, processed bottom ash ("PBA") and other soils, from both in-state and out-of state sources, to fill voids, reshape and level out the area of Superfund Site to be capped in order to allow for construction of the RCRA Cap. The construction of the RCRA Cap is now almost complete.

On or about August 16, 2005, the Department issued a Notice of Intent to Enforce to the Plaintiff in which it threatened to apply state law and regulation against the Plaintiff concerning the use of PBA as controlled fill at the Superfund Site. Thereafter, on October 12, 2005, the Department obtained a search warrant from the Rhode Island District Court authorizing the Department to enter upon the Superfund Site and to obtain samples of PBA and soils therefrom. Pursuant to said Warrant, Department personnel utilized various pieces of equipment to obtain such samples, and in the process of doing so, excavated down through the RCRA Cap, tearing the RCRA Cap in a number of places and leaving the materials below the torn RCRA Cap exposed to the elements. The Department has made no attempt to repair the torn RCRA Cap in the areas in which it conducted its excavation and sampling. Significant quantities of rainwater

are now entering through the torn RCRA Cap and exacerbating the release of hazardous substances from the Superfund Site.

## II. PLAINTIFF IS ENTITLED TO THE PRELIMINARY INJUNCTIVE RELIEF REQUESTED IN ITS MOTION

A party seeking a preliminary injunction must demonstrate the following elements:

(1) the movant enjoys a likelihood of success on the merits;
(2) there exists the potential for irreparable harm to the movant if the injunction is denied;
(3) the injunction would not impose a hardship on the nonmovant outweighing that to the movant in the absence of an injunction; and
(4) the injunction will not adversely affect the public interest.

See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996); Westenfelder v. Ferguson, 998 F. Supp. 146, 150 (D.R.I. 1998).

### A. Plaintiff Enjoys a Likelihood of Success on the Merits Because it is not Required as a Matter of Law to Obtain Any Permit or Approval From Defendant in Order to Utilize PBA As Fill In Phase I.

There is clearly a likelihood that Plaintiff will succeed on the merits of its declaratory judgment action. The Department has taken the position that the Plaintiff does not have a permit or approval from the Department to use PBA as "controlled fill" at the Superfund Site and that it is required to have such permit or approval from the Department. However, for the reasons set forth below, Plaintiff asserts that no such permit or approval from the Department is required as a matter of law.

#### 1. The State's Permitting Requirements are Preempted by Federal Law.

The Supremacy Clause[1] of the United States Constitution establishes that when state and federal laws conflict, federal law prevails. U.S. Const., Art. VI, cl. 2; Maryland v. Louisiana, 451 U.S. 725, 746 (1981). "Pre-emption occurs when Congress, in enacting a federal statute,

[1] The Supremacy Clause provides: "This Constitution and the Laws of the United States which shall be made in pursuance thereof . . . shall be the supreme Law of the Land . . . anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const., Art. VI, cl. 2.

expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress." Louisiana Pub. Serv. .Comm'n v. Federal Communications Comm'n., 476 U.S. 355, 368 (1986) (citations omitted); see also Algonquin LNG v. Loqa, 79 F. Supp. 2d 49, 50 (D.R.I. 2000).

In this case, Section 8.a. of the Consent Decree, a copy of which is attached hereto as Exhibit A, provides as follows: "As provided in Section 121(e) of CERCLA and [40 C.F.R.] §300.400(e)(1) of the NCP [National Contingency Plan], no permit is required for any portion of the Work conducted entirely on-site." The "Work" is defined in the Consent Decree as all activities that the Plaintiff is required to perform under the Consent Decree, and "on-site" means within the 121 acres of the Superfund Site

In addition to the literal, foregoing language of the Consent Decree, Section 121(e)(1) of CERCLA states as follows: "No Federal, State, or local permit shall be required for any portion of any removal or remedial action conducted entirely on site, where such remedial action is selected and carried out in compliance with this section." See 42 U.S.C. § 9621(e)(1). Moreover, the relevant section of the Code of Federal Regulations, entitled *Permit Requirements*, states as follows: "No federal, state, or local permits are required for on-site response actions conducted pursuant to CERCLA sections 104, 106, 120, 121, or 122. The term "on-site" means the areal extent of the contamination and all suitable areas in very close proximity to the

contamination necessary for implementation of the response action." See 40 C.F.R. § 300.400(e)(1).

It is black-letter law that the "intent to preempt may be inferred either from the fact that the scheme of federal regulation is so pervasive or from the fact that the federal interest in the subject matter regulated is so dominant that there is no room for state action." Southern Union Gas Co. v. R.I. Div. of Pub. Utilities and Carriers, 306 F. Supp. 2d 129, 133 (D.R.I. 2004); see Mass. Ass'n of Health Maintenance Organization v. Ruthardt, 194 F.3d 176, 179 (1st Cir. 1999) (holding that field preemption "reflects the view that Congress' intent to occupy a given field can be inferred from the pervasiveness of federal regulation and/or the dominance of the federal interest in a particular area"). Moreover, in this vein, numerous courts have held that when the mechanics of state laws conflict with CERCLA, federal law preempts the state law. See, e.g., New Jersey, Dept. of Envt'l Protection. v. Gloucester Envt'l Man. Servcs., Inc., C.A. No. 92-3860, 2005 WL 1129763, at *13 (D.N.J. May 11, 2005) (discussing field preemption and holding that state statute was preempted by a consent decree entered under CERCLA); U.S. v. Akzo Coatings of America, 719 F. Supp. 571, 579-81 (E.D. Mich. 1989) (holding that, in light of the concept of field preemption, state environmental requirements were preempted by CERCLA when a consent decree conflicts with state law).

Accordingly, the Department is preempted from imposing any requirement upon the Plaintiff to obtain any permit to conduct any aspect of the remediation required under the Consent Decree that is performed within the 121 acres of the Superfund Site including, but not limited to, any permit to use PBA and other soils in the manner utilized by the Plaintiff.[2] The

[2] Further, any other law or regulation, regardless of its date of enactment, that has been or may be cited the by Department in support of its position on this matter that is not included within the ARARs set forth in the ROD is preempted as a matter of law.

applicable or relevant and appropriate federal and state requirements ("ARARs") contained in the Record of Decision ("ROD"), which is Appendix A to the Consent Decree, and the performance standards and requirements set forth in the Scope of Work ("SOW"), which is Appendix B to the Consent Decree, constitute the universe of laws and regulations that govern the remediation required under the Consent Decree. Those state ARARs - which become federally enforceable by virtue of their inclusion in the ROD - that are possibly relevant to the use of fill materials in connection with pre-cap construction activities are the following as set forth in Section XI.B of the ROD: Sections 8, 9, 10 and 13 of the Rhode Island Rules and Regulations for Solid Waste Management, promulgated by the Department on April 19, 1992. However, a close examination of such Sections reveals that use by Plaintiff of PBA for the purposes described above is not prohibited, and the Department has never indicated to the Plaintiff anything to the contrary.

Moreover, those performance standards and requirements that are possibly relevant to the use of fill materials in connection with pre-cap construction activities are set forth in Section IV.B of the SOW, but there is nothing contained therein which prohibits the use by Plaintiff of PBA for the purposes described above, and the Department has never indicated to the Plaintiff anything to the contrary. In fact, the Plaintiff has never requested approval from the Department for the use of any fill materials at the Superfund Site since it was never required under the terms of the Consent Decree to do so. Moreover, the Department has had representatives present at numerous meetings where the use of PBA as controlled fill was discussed and never objected to such use.

Even if one were to concede any validity to the position of the Department, its sole remedy is to request or petition the United States of America, acting by and through the U.S.

Environmental Protection Agency ("EPA"), to enforce the Consent Decree against the Plaintiff, and it has not chosen to do so.

**2. The State Should Be Estopped From Arguing That The Consent Decree Does Not Control in This Case.**

In 1994 the then Director of the Department concurred in writing with the selected remedy for the Superfund Site as set forth in the ROD, including the ARARs. See Letter of June 15, 1994 from Michael Annarummo, Director of the Department, to John DeVillars, Regional Administrator of the EPA, Region I, attached hereto as Exhibit B. Moreover, the use of fill materials by the Plaintiff in connection with the implementation of the remedy in the Superfund Site, including but not limited to the use of PBA and other soils, has been made over the years with the actual knowledge of EPA, Department project managers and the EPA oversight contractors. Moreover, the Department has for a number of years actively participated in the Consent Decree process and implementation of the remedy.[3]

However, the Department has now decided to commence enforcement actions wholly independent of the Consent Decree and without any regard to its prior involvement and acquiescence in the Consent Decree process and remedy implementation noted above.

Therefore, the Department is estopped from asserting that any other law or regulation, regardless of its date of enactment, governs any performance of the remedy under the Consent Decree.

---

[3] In its search warrant, the Department has alleged that the use of the PBA from an out-of-state source violates R.I.G.L §23-19-13.1, which prohibits the disposal within the state of solid waste originating from outside the state. Even if the state statute was not preempted by federal law, the use of PBA as an extender for clean soil cover materials is not a waste under R.I.G.L. § 23-19-13.1, and has been so declared by the Rhode Island Attorney General since 1989. See A.G. Opinion No. 89-07-36 dated July 26, 2989 (attached hereto as Exhibit C).

B. **The Potential For Irreparable Harm Exists in The Absence of Injunctive Relief.**

When conducting its activities at the Superfund Site pursuant to the Search Warrant, Department personnel and their agents cut through and damaged the existing RCRA Cap that the Plaintiff installed over the waste at the Superfund Site. Because the RCRA Cap has not been repaired by the Department, all materials below the RCRA Cap are now exposed to the elements – primarily precipitation. Unless further damage to the RCRA Cap that Department personnel may inflict pursuant to future trips to the Landfill and disturbance of the RCRA Cap is avoided, such precipitation has entered and will continue to infiltrate through the torn RCRA Cap and may cause hazardous substances within the waste below the RCRA Cap to leak to groundwater, thereby exacerbating the groundwater contamination that already made this a Superfund Site.

C. **The Injunction Will Not Impose A Hardship On The Department And Will Not Adversely Impact The Public Interest,**

An injunction will not impose a hardship on the Department or adversely affect the public interest because EPA retains the authority to enforce the Consent Decree.

## III. CONCLUSION

The use by Plaintiff of PBA at the Superfund Site without a permit from the Department is not prohibited and is consistent with the Consent Decree, the ARARs and the SOW. Therefore, any state law or regulation, whether promulgated before or after the effective date of the Consent Decree, concerning the use of PBA or the requirement to obtain a permit from the Department which is inconsistent with the Consent Decree, the ASARs or the SOW is preempted as a matter of law by federal law and regulation which covers the field.

Accordingly, the Department has no right, power or authority to require the Plaintiff to obtain a permit to utilize PBA at the Superfund Site, because the Department is preempted by

CERCLA and the provisions of the Consent Decree, and its sole remedy is to request or petition the United States of America acting by and through the EPA to enforce the Consent Decree against the Plaintiff. Moreover, the Department is preempted from bringing an administrative, civil or criminal proceedings (including further action on the Search Warrant) that relate to Plaintiff's use of PBA at the Superfund Site.

Therefore, Plaintiff respectfully requests that the relief it seeks in its Motion for a Preliminary Injunction be granted.

RHODE ISLAND RESOURCE RECOVERY CORPORATION

By its Attorneys,

Patricia K. Rocha (#2793)
R. Bart Totten (#5095)
Kristen W. Sherman (#5595)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607/751-0604

Richard A. Sherman (#1190)
Raymond M. Ripple (#6489)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
Tel: (401) 276-6513
Fax: (401) 276-6611

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26 day of October, 2005, I caused a true copy of the within Memorandum of Law in Support of a Motion for a Preliminary Injunction together with the Complaint in this matter

Deborah Kubacki

*359240_1.doc*