**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RHODE ISLAND RESOURCE RECOVERY CORP., | ) | |
| Plaintiff, | ) | |
| v. | ) | C. A. No. 05-451-ML |
| RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) | |
| Defendants. | ) | |

**UNITED STATES' MOTION TO DISMISS**

Pursuant to Rules 12(b)(1) and 12(b)(5) of the Federal Rules of Civil Procedure, the United States, on behalf of Defendant United States Environmental Protection Agency ("EPA"), hereby moves the Court for an order dismissing Plaintiff Rhode Island Resource Recovery Corporation's ("RIRRC") Complaint against EPA in its entirety. In support of the relief requested in this motion, the United States relies upon the Memorandum In Support of United States' Motion to Dismiss, filed contemporaneously herewith, and all other materials and arguments to be properly submitted in support of the relief requested herein.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

Dated: December 23, 2005

STEPHEN E. CROWLEY
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986
Tel: (202) 514-0165
Fax: (202) 514-8865

Attorney for the United States

Of Counsel:

M. Gretchen Muench
Senior Enforcement Counsel
U.S. Environmental Protection Agency – Region I
One Congress Street, Suite 1100
Boston, MA 02114-2023
Tel: (617) 918-1896

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 23rd day of December 2005, served a true and correct copy of the foregoing UNITED STATES' MOTION TO DISMISS on all counsel of record, by first-class mail, postage prepaid, as follows:

Patricia K. Rocha
Adler Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

Richard W. Sherman
Raymond M. Ripple
Edwards Angel Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

John A. Langlois
RIDEM Office of Legal Services
235 Promenade Street, 4th Floor
Providence, RI 02908-5767

Stephen E. Crowley
Attorney for the United States

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

RHODE ISLAND RESOURCE RECOVERY CORPORATION,

Plaintiff,

v.

RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Defendants.

C. A. No. 05-451-ML

# MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION TO DISMISS

Dated: December 23, 2005

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

STEPHEN E. CROWLEY
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986
Tel: (202) 514-0165
Fax: (202) 514-8865

*Attorneys for the United States*

*Of Counsel*:
M. GRETCHEN MUENCH
Senior Enforcement Counsel
U.S. EPA — Region I
One Congress Street, Suite 1100
Boston, MA 02114-2023

INTRODUCTION

In this case, Plaintiff Rhode Island Resource Recovery Corporation ("RIRRC") seeks to enjoin the State of Rhode Island Department of Environmental Management ("RIDEM") from interfering with RIRRC's efforts to complete an environmental remedial action at the Central Landfill Superfund Site in Johnston, Rhode Island. In the course of performing the remedial action, RIRRC has been constructing an impermeable cap on a portion of the Site by using, among other materials, incinerator ash that was originally generated outside of the state of Rhode Island. Compl. ¶ 17. According to RIRRC's Complaint, RIDEM notified RIRRC that use of the ash violates a state law that makes criminally punishable the disposal of solid waste at the Central Landfill if such waste was generated outside of Rhode Island, id. ¶ 22, and RIDEM damaged the cap in the course of executing a criminal search warrant on the Site, id. ¶ 21.

RIRRC is obligated to conduct the remedial action pursuant to a consent decree that was approved and entered in 1996 by then-U.S. District Judge Raymond J. Pettine, in United States v. Rhode Island Solid Waste Management Corporation (D.R.I.), Civil Action No. 96-408-P. RIRRC asserts that the Consent Decree, as well as the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-75, prohibit RIDEM's actions, and bars any potential civil, criminal, or administrative actions by RIDEM that would interfere with the remedial work at the Site. Compl. ¶¶ 35-36.

In addition to suing RIDEM, RIRRC has also sued EPA. However, RIRRC completely fails to identify any statutory waiver of sovereign immunity allowing its lawsuit against EPA. The Complaint also fails to identify any action or inaction by EPA which harms or threatens to harm RIRRC's interests or rights, and emphasizes that RIRRC seeks no affirmative relief against

EPA. Compl. ¶ 5. Instead, EPA is named a defendant merely because it allegedly "has an interest in the determination of questions raised in this lawsuit." Id.

The Court should dismiss EPA from this lawsuit. First, RIRRC has failed to identify any statute waiving the United States' sovereign immunity from suit. Nor do any conceivable waivers of sovereign immunity exist that would allow RIRRC to cure this defect.

Second, RIRRC fails to identify any action or inaction by EPA which harms or threatens to harm RIRRC's interests or rights. As such, there is no justiciable "case or controversy" between RIRRC and EPA, and RIRRC lacks constitutional standing to sue.

Third, should some cognizable claim for relief be found to have been pled against EPA, jurisdiction is squarely barred under Section 113(h) of CERCLA, 42 U.S.C. § 9613(h), a provision that expressly withdraws subject matter jurisdiction from the federal courts to hear challenges to CERCLA response actions until after such actions are completed. If RIRRC's lawsuit against EPA is at all cognizable, it seeks judicial review of EPA's administrative or enforcement activities related to RIRRC's implementation of the CERCLA response action. Because this suit is filed well prior to the completion of the response action at the Central Landfill Site, and prior to any enforcement action by EPA on this issue, it is exactly the type of costly, premature, and piecemeal challenge to EPA's CERCLA activities that Congress prohibited in Section 113(h).

Lastly, the Complaint should be dismissed under Rule 12(b)(5) because process has not been adequately served on EPA or the Attorney General of the United States. Fed. R. Civ. P. 4(i)(1) & 4(i)(2)(A).

## STATUTORY BACKGROUND

CERCLA "grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." Key Tronic Corp. v. United States, 511 U.S. 809, 814 (1994). Under CERCLA, the President (acting primarily through the EPA), is provided with alternative means for cleaning up contaminated property. For example, Section 104 of the statute authorizes EPA itself to undertake response actions[1] designed to remove hazardous substances and provide appropriate cleanup, using the Hazardous Substance Superfund. See 42 U.S.C. § 9604. Alternatively, Section 106(a) authorizes EPA to compel, by means of an administrative order or a request for judicial relief, the responsible parties to undertake response actions, which the government then monitors. See 42 U.S.C. § 9606(a). Under either approach, the United States may recover its response costs from responsible parties through an action for the recovery of its response costs. See 42 U.S.C. § 9607(a). Relatedly, CERCLA provides EPA with the authority to enter into agreements with PRPs that require PRPs to finance and perform response actions. 42 U.S.C. § 9622; 42 U.S.C. § 9604(a)(1).

In 1986, Congress amended CERCLA through the enactment of the Superfund Amendments and Reauthorization Act ("SARA"), Pub. L. No. 99-499, 100 Stat. 1613. These SARA amendments added, among other provisions, Section 113(h), a provision that broadly prohibits, with limited exceptions, federal court jurisdiction over challenges to CERCLA response actions.

---

[1] The statutory term "response" encompasses a variety of activities designed to assess or remove contamination from a site, and includes the more specific "removal" and "remedial" actions. See 42 U.S.C. §§ 9601(23)-(25).

## FACTUAL BACKGROUND

The Central Landfill Superfund Site has been owned and operated since 1980 by Plaintiff RIRRC or its predecessor, the Rhode Island Solid Waste Management Corporation ("RISWMC"). ROD at 1-2.[2] The Site consists of two land parcels: a 33-acre inactive municipal solid waste landfill and a 121-acre inactive landfill. Id. at 1. Prior to 1980, the 121-acre portion of the Site was used for the disposal of both municipal and hazardous wastes. Id. at 2. In 1986, the entire Site was placed on EPA's National Priorities List ("NPL").[3] 51 Fed. Reg. 21,054 (June 10, 1986); Consent Decree § I, ¶ I.

In 1993, RISWMC completed a remedial investigation and feasibility study[4] with respect to the nature and extent of groundwater contamination on the 121-acre parcel, which was designated Operable Unit 1 ("OU-1") of the Site. Consent Decree § I, ¶ I. In 1994, following notice and public comment, EPA issued a Record of Decision ("ROD") for OU-1, which memorialized EPA's final decision regarding the remedial action for this area.[5] Id. § I, ¶ M. The

---

[2] The statement of factual background is derived from the well-pled factual allegations contained in the Complaint (which we consider as true solely for the purposes of this motion to dismiss), the Consent Decree approved and entered in United States v. RISWMC, and the June 1994 Record of Decision ("ROD") for the source control operable unit ("OU-1") of the Central Landfill Superfund Site, which was incorporated into the Consent Decree.

[3] The NPL identifies and prioritizes those facilities or sites at which hazardous substances have been released and that appear to warrant remedial actions pursuant to CERCLA. 40 C.F.R. § 300.425.

[4] A remedial investigation and feasibility study determines the nature and extent of contamination at a site, assesses the risks, and evaluates alternative remedial actions. See 40 C.F.R. § 300.430(d), (e).

[5] EPA regulations governing the selection and implementation of response actions are set forth in the National Contingency Plan ("NCP"). See 40 C.F.R. Part 300. According to the NCP,

(continued...)

selected remedial action was primarily intended to control the sources of contamination at the Site, and specifically called for, inter alia, the construction of a multi-layer, impermeable cap over the 121-acre area, as well as the extraction and treatment of contaminated groundwater. ROD at 42-44.[6]

On July 17, 1996, the United States, on behalf of EPA, filed a complaint against RISWMC pursuant to Sections 106 and 107 of CERCLA seeking the recovery of certain response costs incurred by EPA as well as the performance of response work by RISWMC. Consent Decree § I, ¶¶ A-B. On the same day as the complaint was filed, the United States lodged a consent decree with the court. That Consent Decree, which was approved and entered by United States District Judge Raymond J. Pettine on October 4, 1996, required RISWMC to finance and perform remedial actions at the Site as specified in the ROD. Consent Decree § VI, ¶ 10. The Consent Decree also contained a specific "retention of jurisdiction" provision, which provided that the Court that approved the Decree will retain jurisdiction to consider motions from the parties seeking the construction or modification of the Decree, to enforce compliance with its terms, or to resolve disputes arising under the Decree's dispute resolution provisions.

---

[5](...continued)
following the completion of the remedial investigation and feasibility study, EPA identifies a preferred alternative and presents it to the public for review and comment in a proposed plan. 42 U.S.C. § 9617(a); 40 C.F.R. § 300.430(f)(2), (3). EPA then reviews and responds to the comments, and consults with the affected state and other agencies where appropriate, before making a final remedy selection decision. 42 U.S.C. § 9617(b); 42 U.S.C. § 9621(f). This final remedy selection decision is documented in a Record of Decision ("ROD"), which is made available to the public before the commencement of any remedial action. 42 U.S.C. § 9617(b); 40 C.F.R. § 300.430(f)(4), (5), (6).

[6] During the remedy selection process, RIDEM reviewed the various alternatives and indicated, by signing a declaration of concurrence, its support for the selected remedy. ROD at 59. The State's declaration was formally incorporated into the ROD as Appendix C thereto. Id.

The Consent Decree also provided that the dispute resolution procedures of the Decree "shall be the exclusive mechanism to resolve disputes between EPA and [RIRRC] arising under or with respect to th[e] Consent Decree." Consent Decree ¶ 73.

In this case, RIRRC seeks to prohibit RIDEM from interfering with RIRRC's attempt to construct the cap on the Site. Compl. ¶ 1. Specifically, RIRRC seeks an order that would: (1) bar RIDEM from entering the Site without EPA's permission; (2) declare that RIRRC is not required to obtain any permit or other approval from the State to conduct on-Site remedial actions; and (3) prohibit RIDEM from commencing any administrative, civil, or criminal action concerning RIRRC's on-Site remedial actions. Id. ¶ 2.

## STANDARD OF REVIEW

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1) where, as here, the defendant attacks solely the sufficiency of the allegations in the claim for relief, the well-pled factual allegations must be taken as true and viewed in a light most favorable to the plaintiff. See Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). In other words, a facial motion to dismiss under Rule 12(b)(1) presents a purely legal question. As such, the Court should not accept as true any legal allegations of subject matter jurisdiction. See Papasan v. Allain, 478 U.S. 265, 286 (1986). As Plaintiff, RIRRC bears the burden of demonstrating the Court's subject matter jurisdiction. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).

## ARGUMENT

### I. JURISDICTION IS LACKING BECAUSE THERE IS NO APPLICABLE STATUTE WAIVING THE UNITED STATES' SOVEREIGN IMMUNITY FROM SUIT.

#### A. To Maintain Suit Against the United States, RIRRC Must Identify An Applicable Federal Statutory Provision That Unequivocally Waives Sovereign Immunity.

Under the principle of sovereign immunity, the United States cannot be sued except as it consents to be sued, and such consent "must be 'unequivocally expressed in a statutory text.'" Marina Bay Realty Trust LLC v. United States, 407 F.3d 418, 422 (1st Cir. 2005) (quoting Lane v. Pena, 518 U.S. 187, 192 (1996)). "A waiver will not be implied, and . . . 'will be strictly construed, in terms of its scope, in favor of the sovereign.'" Id. (quoting Lane, 518 U.S. at 192). The burden of establishing that the United States has waived its sovereign immunity rests with RIRRC. Kokkonen, 511 U.S. at 377. Indeed, a plaintiff seeking to bring a claim against the United States is "'required to set forth in the complaint the specific statute containing a waiver of the government's immunity from suit.'" Millet v. United States Dep't of the Army, 245 F. Supp. 2d 344, 351 (D.P.R. 2002) (emphasis added) (quoting McLellan Highway Corp. v. United States, 95 F. Supp. 2d 1, 14 (D. Mass. 2000)).

Under these well-established principles, RIRRC has failed to establish the existence of a waiver of sovereign immunity. As such, this Court does not have subject matter jurisdiction with respect to RIRRC's suit against EPA, and immediate dismissal is warranted.

#### B. RIRRC Fails to Identify Any Applicable Waiver of Sovereign Immunity.

Paragraph 6 of RIRRC's Complaint asserts that jurisdiction is based on the following: (1) the general federal question provision, 28 U.S.C. § 1331; (2) Section 113(b) of CERCLA, 42 U.S.C. § 9613(b); and (3), Paragraph 110 of the 1996 Consent Decree. None of these provides a

waiver of sovereign immunity for suit against the United States.

First, subject matter jurisdiction and sovereign immunity are distinct concepts, and general grants of jurisdiction do not waive the United States' sovereign immunity. See Powelson v. United States, 150 F.3d 1103, 1104 (9th Cir. 1998) ("[W]hile sovereign immunity can bar jurisdiction, a statute that purports to create jurisdiction alone does not necessarily eliminate sovereign immunity."). The general federal question provision, 28 U.S.C. § 1331, does not waive the United States' sovereign immunity. Berman v. United States, 264 F.3d 16, 20 (1st Cir. 2001). Similarly, Section 113(b) of CERCLA, 42 U.S.C. 9613(b), which is a grant of jurisdiction with respect to claims arising under CERCLA,[7] does not waive the United States' immunity from suit. Voluntary Purchasing Groups v. Reilly, 889 F.2d 1380, 1385 (5th Cir. 1989). Finally, though RIRRC asserts that "EPA is joined pursuant to 28 U.S.C. § 2201," Compl. ¶ 5, it is well settled that the Declaratory Judgment Act merely provides a remedy where the court already has subject matter jurisdiction, and thus does not confer jurisdiction or waive sovereign immunity.[8]

Second, the 1996 Consent Decree also fails to waive the United States' sovereign immunity. The Consent Decree is not a federal statute, and thus does not satisfy the requirement that waivers be found exclusively in statutory text. Marina Bay, 407 F.3d at 422. For the same

---

[7] Section 113(b) provides: "Except as provided in subsections (a) and (h) of this subsection, the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter, without regard to the citizenship of the parties or the amount in controversy." 42 U.S.C. § 9613(b).

[8] See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950); Akins v. Penobscot Nation, 130 F.3d 482, 490 n.9 (1st Cir. 1997); Progressive Consumers Fed. Credit Union v. United States, 79 F.3d 1228, 1230 (1st Cir. 1996) (no waiver of sovereign immunity).

reason, sovereign immunity is not waived in instances where the United States has initially invoked federal jurisdiction by filing a claim for relief, or later resolved such claims in a consent decree. United States v. Shaw, 309 U.S. 495, 501-04 (1940); Minnesota v. United States, 305 U.S. 382, 388-89 (1939); Waylyn Corp. v. United States, 231 F.2d 544, 547 (1st Cir. 1956).

Even assuming arguendo that a consent decree could waive the United States' sovereign immunity (which it cannot), the plain language of the 1996 Consent Decree does not give any consent to sue the United States, or grant this Court jurisdiction over any such lawsuit. Paragraph 110 of the 1996 Consent Decree, which RIRRC relies on, reads:

> This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendant for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XX (Dispute Resolution) hereof. (Emphasis added).

Accordingly, this provision only provides that the court that approved and entered the Decree retains jurisdiction to consider motions or applications from the parties seeking the construction or modification of the Decree, to enforce compliance with its terms, or resolve disputes arising under the Decree's dispute resolution provisions.[9] Paragraph 110 does not authorize original suits or claims against the United States in a separate proceeding, much less counterclaims in the

---

[9] E.g., New Jersey, Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Servs., Inc., 264 F. Supp. 2d 165, 167, 175-76 (D.N.J. 2003) (construing identical "retention of jurisdiction" provision in CERCLA consent decree involving the United States as plaintiff) (court recognizes "continuing jurisdiction" to consider a party's "motion to enforce the Consent Decree entered into by the parties in 1997") (emphasis added); Brewster v. Dukakis, 675 F.2d 1, 3-4 (1st Cir. 1982).

same proceeding.[10] Indeed, nowhere does the Decree authorize this Court, or any other district court judge, to exercise jurisdiction in a collateral civil action over freestanding claims against EPA.[11]

Finally, sovereign immunity is not waived on the basis that EPA "has an interest in the determination of questions raised in this lawsuit." Compl. ¶ 5. Here, RIRRC appears to be relying on Rule 19 of the Federal Rules of Civil Procedure, which requires joinder of certain interested parties. Yet, even assuming arguendo EPA is an indispensable party to this action — which may require dismissal of the action if EPA is not joined, see Fed. R. Civ. P. 19(b) — that factor has no bearing on the question whether there is a statutory waiver of EPA's immunity from suit.[12] The Federal Rules of Civil Procedure do not confer subject matter jurisdiction upon

---

[10] The language of the Decree thus comports with "the general rule" among federal courts "that a judge should not overrule or reconsider the previous decision or order of another judge." 20 A.L.R. Fed. 13, at § 2 (1974); see also Sennewald v. Univ. of Minn., 847 F.2d 472, 474 (8th Cir. 1988) (Arnold, J., concurring) ("[A consent decree] is a kind of private law, agreed to by the parties and given shape over time through interpretation by the court that entered it.") (emphasis added). This rule prevents parties from shopping for judges more favorably inclined to their position, and promotes the orderly functioning of the judicial system by avoiding unseemly conflicts and confusion. Furthermore, even in situations where the unavailability of the judge that issued the judgment or decree may necessitate the involvement of a second judge, that does not waive sovereign immunity or expand jurisdiction; the second judge serves as a successor in the same case to consider issues to the same extent that his or her predecessor was empowered. See U.S. Gypsum Co. v. Schiavo Bros., Inc., 668 F.2d 172, 176-77 (3d Cir. 1981).

[11] Courts also possess "inherent jurisdiction" necessary to police and effectuate their own final judgments and decrees, even in the absence of express "retention of jurisdiction" provisions in such judgments and decrees. In re Pearson, 990 F.2d 653, 657-58 (1st Cir. 1993); Delaware Valley Citizens' Council For Clean Air v. Pennsylvania, 674 F.2d 976, 980-81 (3d Cir. 1982). This limited power, however, does not supercede the doctrine of sovereign immunity.

[12] See California v. Arizona, 440 U.S. 59, 62-63 (1979) (if United States, an indispensable party to the action, has not consented to suit, then United States cannot be made a defendant, and California's quiet title action against Arizona and United States must be dismissed for failure to (continued...)

courts, and do not waive the United States' sovereign immunity. Put differently, the sovereign immunity hurdle is not overcome as a result of the United States' alleged status as a necessary or indispensable party to a lawsuit between two other parties. Instead, joinder of the United States as a necessary party defendant is only permitted in instances where a federal statute unequivocally waives immunity from suit, or expressly allows the United States to be joined for purpose of enabling a complete adjudication of other parties' rights.[13/]

In conclusion, RIRRC has not identified an applicable waiver of EPA's sovereign immunity from suit, much less a provision that permits the United States to be joined in an action as a defendant. Based on this defect alone, this Court should dismiss the Complaint against EPA in its entirety. See Millet v. Dep't of the Army, 245 F. Supp. 2d at 351.

C. Even If The Court Looks Beyond the Four Corners of the Complaint, No Applicable Waiver of Sovereign Immunity Exists.

Nor do any conceivable waivers of sovereign immunity exist that would allow Plaintiff to amend its Complaint to cure this defect. RIRRC cannot avail itself of the waiver of sovereign immunity contained in the Administrative Procedure Act ("APA"). The waiver provision of the

---

[12/](...continued)
join an indispensable party); American Guaranty Corp. v. Burton, 380 F.2d 789, 791 (1st Cir. 1967) (not feasible to join United States because of sovereign immunity); see also 7 Wright, Miller & Kane Federal Practice & Procedure, § 1602 (2001) ("[D]espite the desirability of adding certain persons to an action, the courts cannot use Rule 19 in a way that would extend the subject-matter jurisdiction of the federal courts . . . .") (citing Fed. R. Civ. P. 82).

[13/] See Orff v. United States, 125 S. Ct. 2606, 2610-11 (2005) (distinguishing statutory waivers that permit "suits directly against the United States" from waivers that only permit "joinder of the United States as a necessary party defendant to permit a complete adjudication of rights"); Lopez v. Arraras, 606 F.2d 347, 353 (1st Cir. 1979) (permitting joinder of federal agency because "[s]overeign immunity is waived" under a "sue and be sued" statutory provision concerning that agency).

APA provides, in part, that "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. As the Supreme Court has recognized, this provision imposes a requirement that a party seeking review must identify an "agency action" of which it complains. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 882 (1990).[14] Moreover, "[w]hen, as here, review is sought not pursuant to specific authorization in the substantive statute . . . the 'agency action' in question must be 'final agency action.'" Id. (quoting 5 U.S.C. § 704). As such, the APA waiver does not provide a boundless right to judicial "preview" of inchoate agency action, or of matters that have not been resolved or even addressed by the defendant federal agency.

Here, RIRRC fails to identify any agency action, let alone final agency action.[15] RIRRC therefore may not avail itself of the APA's waiver.[16] As no other express statutory waiver of immunity is available in this case, RIRRC's suit against EPA is barred.

---

[14] "'[A]gency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13).

[15] Nor has RIRRC alleged whether or how its interests may have been "adversely affected or aggrieved" by an EPA action "within the meaning of the relevant statute," 5 U.S.C. § 702, an omission that suggests that RIRRC's Declaratory Judgment Act claim does not fall within APA's limited waiver of sovereign immunity. See Lujan, 497 U.S. at 882 (plaintiff "must identify some 'agency action' that affects him in the specified fashion") (emphasis added).

[16] Furthermore, even assuming that RIRRC had identified the agency action, and how RIRRC had been harmed by such action, the APA is inapplicable altogether when the relevant statute "preclude[s] judicial review." 5 U.S.C. § 701(a)(1); see Block v. Community Nutrition Inst., 467 U.S. 340, 345 (1984). Section 113(h) of CERCLA explicitly precludes judicial review within the meaning of the APA. See Boarhead Corp. v. Erickson, 923 F.2d 1011, 1023-24 (3d Cir. 1991); Voluntary Purchasing Groups, 889 F.2d at 1391; Alabama v. EPA, 871 F.2d 1548, 1559-60 (11th Cir. 1989). As such, and because Section 113(h) squarely applies to RIRRC's suit against EPA, see infra pp. 14-20, the APA is inapplicable and cannot waive EPA's sovereign immunity here.

## II. RIRRC's SUIT AGAINST EPA IS NOT JUSTICIABLE UNDER ARTICLE III OF THE CONSTITUTION.

Article III of the Constitution limits federal judicial power to the adjudication of "Cases" or "Controversies." See generally Flast v. Cohen, 392 U.S. 83, 95-97 (1968); Muskrat v. United States, 219 U.S. 346, 356-60 (1911).[17] RIRRC's suit against EPA cannot proceed because it does not satisfy this Article III "case or controversy" requirement. There is no EPA action or inaction with which RIRRC disagrees, much less any allegation of injury or threatened injury as a result of an EPA action or inaction. The Complaint alleges that RIDEM believes a state law criminal violation has occurred, and that EPA is an interested party in this issue, but has failed to identify EPA's legal interests, or actions EPA may have taken or will take, or how such actions are adverse to RIRRC's rights or legal interests. As such, there is no concrete dispute between EPA and RIRRC, and therefore no actual case or controversy giving the Court subject matter jurisdiction over RIRRC's lawsuit against EPA.[18]

Relatedly, RIRRC lacks constitutional standing to sue. To have standing to sue EPA, RIRRC must demonstrate a concrete, particularized legal injury that was caused by EPA and is

---

[17] This constitutional limitation, which cannot be relaxed by Congress, is nonetheless expressly recognized by Section 2201 of the Declaratory Judgment Act, which empowers courts to give declaratory relief, but only "[i]n a case of actual controversy." 28 U.S.C. § 2201; see Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40 (1937); Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 325 (1936).

[18] See Muskrat, 219 U.S. at 357 ("The term ['case'] implies the existence of present or possible adverse parties, whose contentions are submitted to the court for adjudication.") (quotation marks omitted); cf. D'Imperio v. United States, 575 F. Supp. 248, 251-53 (D.N.J. 1983) (Declaratory Judgment action against EPA seeking declaration of non-liability following plaintiff's receipt of EPA letter stating that plaintiff "may be liable" under CERCLA failed to present "actual controversy"); Pacific Resins & Chems. Inc. v. United States, 654 F. Supp. 249, 253 (W.D. Wash. 1986) (same).

likely to be redressed by judicial relief in RIRRC's favor. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The basis for RIRRC's standing in this case is not at all apparent, since it fails to identify any legal injury caused or threatened by EPA, much less how that injury could be redressed through this lawsuit against EPA. Accordingly, RIRRC's suit against EPA should be dismissed for lack of jurisdiction.

## III. JURISDICTION IS BARRED UNDER SECTION 113(h) OF CERCLA.

Should the Court nonetheless determine that sovereign immunity has been waived and that Article III requirements have been satisfied, jurisdiction is barred by Section 113(h) of CERCLA, 42 U.S.C. § 9613(h). The gravamen of the Complaint is that RIRRC seeks a judicial declaration of its rights and obligations (and potential liabilities under state law) in connection with its performance and implementation of the CERCLA response action that RIRRC is obligated to perform pursuant to the 1996 Consent Decree. As such, RIRRC's suit is a prohibited "challenge" to the response action within the meaning of Section 113(h), and the suit against EPA should be dismissed.

### A. Section 113(h) Broadly Prohibits Judicial Review of EPA Enforcement Activities Related To Ongoing CERCLA Remedial Actions.

Section 113(h), precludes jurisdiction with respect to "any challenges to removal or remedial action selected under section [104 of CERCLA, 42 U.S.C. § 9604]," except in five specifically enumerated situations. 42 U.S.C. § 9613(h).[19] In enacting this provision, Congress

---

[19] "The five exceptions to the jurisdictional bar are all actions filed by the government or by a private citizen seeking to enforce or recover costs for the enforcement of CERCLA[.]" Reardon v. United States, 947 F.2d 1509, 1512 (1st Cir. 1991) (en banc). For this reason, courts commonly state that Section 113(h) bars "pre-enforcement review." Id. As explained below, infra pp. 19-20, none of the five exceptions applies to this case.

sought to prevent judicial interference in the implementation of CERCLA cleanups. See Clinton County Comm'rs v. EPA, 116 F.3d 1018, 1023 (3d Cir. 1997); Hanford Downwinders Coalition, Inc. v. Dowdle, 841 F. Supp. 1050, 1061 (E.D. Wash. 1993), aff'd 71 F.3d 1469 (9th Cir. 1995); Schalk v. Reilly, 900 F.2d 1091, 1095, 1097 (7th Cir. 1990). Consistent with this purpose, courts have broadly interpreted the term "challenge" in Section 113(h) to encompass "virtually any challenge to ongoing activities at Superfund sites . . . ." Heart of America Northwest v. Westinghouse Hanford Co., 820 F. Supp. 1265, 1276 (E.D. Wash. 1993). In effect, Section 113(h) supports EPA's ability to "shoot first and ask questions later" when it undertakes or facilitates cleanups of contaminated sites. Farmers Against Irresponsible Remediation ex rel. Hanehan v. EPA, 165 F. Supp. 2d 253, 258 (N.D.N.Y. 2001).

Indeed, Section 113(h) effectuates such a "clear and unequivocal . . . 'blunt withdrawal of federal jurisdiction,'" Shea Homes Ltd. P'ship v. United States, 397 F. Supp. 2d 1194, 1202 (N.D. Cal. 2005) (quoting McClellan Ecological Seepage Situation ("MESS") v. Perry, 47 F.3d 325, 328 (9th Cir. 1995)), that it bars challenges regardless of whether they would, in fact, create a delay in the implementation of the selected cleanup.[20] Here, the Fifth Circuit's decision in Voluntary Purchasing Groups and the First Circuit's decision in Reardon v. United States, 947 F.2d 1509 (1st Cir. 1991) (en banc), are particularly instructive.

In Voluntary Purchasing Groups, plaintiff sought a declaration of non-liability after receiving a notice letter from EPA indicating that EPA had completed an emergency removal

---

[20] See MESS, 47 F.3d at 330; Reardon v. United States, 947 F.2d 1509, 1513 (1st Cir. 1991) (en banc) (citing Voluntary Purchasing Groups, 889 F.2d at 1390); Oil, Chem., & Atomic Workers Int'l Union v. Richardson, 214 F.3d 1379, 1382 (D.C. Cir. 2000); Fairchild Semiconductor Corp. v. EPA, 769 F. Supp. 1553, 1561-62 (N.D. Cal. 1991), aff'd 984 F.2d 283 (9th Cir. 1993); Barmet Aluminum Corp. v. Reilly, 927 F.2d 289, 293-95 (6th Cir. 1991).

action and that EPA believed that plaintiff was liable for the costs of the removal action. 889 F.2d at 1382-83. EPA moved to dismiss, arguing that although plaintiff's suit did not directly challenge the completed removal action or actually delay its implementation, the suit nonetheless "challenged" a removal action within the meaning of Section 113(h) because "removal action" is expressly defined under Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), to encompass related enforcement activities, including the issuance of the notice letters intended to facilitate the recovery of EPA's costs. See id. at 1388 & nn.4, 13. The Fifth Circuit agreed that notice letters were part of the removal action, and held that Section 113(h) barred the lawsuit, reasoning as follows:

> Although review in the case at hand would not delay actual cleanup of hazardous wastes, it would force EPA — against the wishes of Congress — to engage in "piecemeal" litigation and use its resources to protect its rights to recover from any PRP filing such declaratory judgment action.

889 F.2d at 1390 (quoting 132 Cong. Rec. S14928 (daily ed. Oct. 3, 1986) (statement of Sen. Thurmond)).

In Reardon, EPA incurred costs in conducting a remedial action at the plaintiffs' property, and filed a notice of lien on plaintiffs' property to ensure recovery of these costs. 947 F.2d at 1511. The plaintiffs then challenged the lien in federal court and sought a declaration of non-liability under CERCLA. Id. at 1512. The First Circuit held that Section 113(h) precluded the claim.[21] The court determined that while the claim did not directly attack the manner of EPA's

---

[21] In Reardon, the First Circuit distinguished between plaintiffs' facial constitutional challenges to CERCLA and plaintiffs' statutory challenges to EPA's administration of CERCLA. See 947 F.2d at 1514. The court held that plaintiffs' statutory challenges to EPA's administration of CERCLA were barred by Section 113(h), id. at 1513-14, but that plaintiffs' facial constitutional challenges were not barred, id. at 1515-17. Because RIRRC's suit in this case is not a facial (continued...)

cleanup or slow it down, the claim constituted a barred "challenge" to a remedial action because the lien constituted a related "enforcement activity" by EPA within the meaning of Section 101(25), 42 U.S.C. § 9601(25), and the suit would force EPA to engage in costly and piecemeal litigation. See id. at 1512-13. The First Circuit also cited an additional reason to bar review under Section 113(h):

> [I]nformation needed to decide legal challenges to liens may not be available at the time such challenges are made. . . . One purpose of § 9613(h), we believe, is to delay review until enough its known to decide these issues.

Id. at 1513.

Accordingly, challenges to EPA's enforcement activities related to ongoing response actions are barred under Section 113(h), particularly when such suits divert EPA's limited resources and when the suits are filed before EPA has sufficient knowledge to formulate a position on the matter at issue.

### B. RIRRC's Suit Is A Premature "Challenge" To EPA's Administrative Enforcement Activities.

RIRRC's Complaint against EPA is barred by Section 113(h). First, to the extent there is a cognizable claim against EPA, it seeks judicial review of EPA's enforcement activity related to a remedial action selected under CERCLA. The Complaint seeks to enjoin the application of state law and relies on CERCLA and the 1996 Consent Decree as the legal basis for the relief sought. See Compl. ¶¶ 1-2, 24-25. That type of relief — for purposes of Section 113(h)'s applicability — is indistinguishable from the relief sought by the plaintiffs in Reardon and

---

[21/](...continued)
constitutional challenge to the statute itself, our discussion of Reardon is limited to the court's analysis and holding on challenges to EPA's administration of CERCLA.

Voluntary Purchasing Groups. Just as the suits in those cases would have drawn EPA into federal court and forced it to take and defend a position concerning the plaintiffs' rights or obligations under CERCLA, RIRRC's suit here threatens to draw EPA into federal court and force it to take and defend a legal position on the question of RIRRC's rights and obligations under CERCLA, the Consent Decree, and state law. Indeed, the suit here is arguably more intrusive and closely related to the selected remedial action, since it asks EPA to take a position on the legality of the manner of the ongoing implementation of the selected remedial action. See Shea Homes, 397 F. Supp. 2d at 1204 (Section 113(h) bars jurisdiction over claim alleging that ongoing cleanup is out of compliance with state hazardous waste laws). Simply put, RIRRC cannot force EPA into premature litigation of these issues, consistent with Section 113(h).

Second, Section 113(h) applies even though EPA has not administratively addressed the gravamen of the Complaint. In fact, the lack of any EPA administrative decision thus far on the substance of RIRRC's argument means that Section 113(h)'s bar applies with even more force, because the posture of EPA here is even more preliminary than it was in Voluntary Purchasing Groups and Reardon. In other words, RIRRC's suit against EPA comes even earlier than what is clearly a barred challenge, and EPA's enforcement activities are no less "challenged" by suits that come prior to any preliminary administrative actions by EPA.

The timing of RIRRC's suit highlights a third consideration in favor barring jurisdiction under Section 113(h): EPA, in cooperation with the Department of Justice, needs to gather and analyze information before it can take positions in federal court on a party's liability or non-liability under CERCLA, or its compliance or noncompliance with a CERCLA settlement. As the First Circuit has recognized, one purpose of Section 113(h) is to afford the government

sufficient time to gather and review factual and legal information pertinent to the CERCLA dispute. Reardon, 947 F.2d at 1513; cf. W.R. Grace & Co. v. EPA, 959 F.2d 360, 366 (1st Cir. 1992). EPA has not gathered information or formulated a position on the numerous issues presented by RIRRC's apparent dispute with RIDEM, and RIRRC should not be allowed to force EPA's hand.

Finally, RIRRC's suit should be barred under Section 113(h) because the suit would force EPA to divert scarce resources away from the oversight, enforcement, and implementation of the ongoing remedial action. The intent of Section 113(h) is that — until the remedial action is completed, or until EPA files its own enforcement suit on the issue — EPA should not have to expend resources to defend against a PRP's claim seeking declaratory and injunctive relief related to the remedial action. Therefore, Section 113(h) bars RIRRC's suit against EPA.

C. RIRRC's Claim Does Not Fall Within One of the Five Limited Exceptions Set Forth In Section 113(h).

Section 113(h) specifies five limited circumstances in which challenges that affect CERCLA response actions can occur. Three of the five exceptions apply where the Government or a private party files an action in federal district court: (1) to obtain cost recovery under Section 107, see 42 U.S.C. § 9613(h)(1); (2) to enforce Section 106 clean-up orders and/or seek penalties for any violations of such orders, see 42 U.S.C. § 9613(h)(2); or (3) to seek a judicial order pursuant to Section 106 compelling a party to conduct a response action, see 42 U.S.C. § 9613(h)(5).[22]

None of these exceptions apply to RIRRC's suit. RIRRC's suit is not one of those listed

[22] The two other exceptions allow challenges to EPA response actions in Section 106(b) reimbursement suits, and in CERCLA citizen suits. See 42 U.S.C. § 9613(h)(3), (h)(4).

in Section 113(h)(1)-(5). In addition, the CERCLA claims that the United States settled in the 1996 Consent Decree do not open the door for RIRRC to use the settlement as a sword in suing EPA, or to litigate its rights and obligations under the settled lawsuit in a new, collateral action. Those prior CERCLA enforcement claims by the United States bear no nexus to the questions in this lawsuit concerning the lawfulness of RIDEM's attempt to enforce state criminal laws against RIRRC. Cf. United States v. Charles George Trucking Co., Inc., 682 F. Supp. 1260, 1272-73 (D. Mass. 1988) (United States' Section 107 claim for recovery of its costs at Superfund site does not bear required nexus to United States' site access motion under Section 104(e)(5); thus, a challenge to the access motion does not fall within Section 113(h)(1)'s exception). Should the United States decide to bring an action to compel the performance of the response action in accordance with the Consent Decree or the ROD, or seek penalties, that action may trigger the exception under Section 113(h)(5). But the United States has not brought such a claim here. Accordingly, none of the exceptions to Section 113(h) apply.[23/]

CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion to dismiss the Complaint against EPA.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

Dated: December 23, 2005

[signature]
STEPHEN E. CROWLEY

[23/] Lastly, the Complaint should be dismissed under Rule 12(b)(5) because process has not been adequately served on EPA or the Attorney General of the United States. Fed. R. Civ. P. 4(i)(1) & 4(i)(2)(A).

United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986
Tel: (202) 514-0165
Fax: (202) 514-8865

Attorney for the United States

Of Counsel:

M. Gretchen Muench
Senior Enforcement Counsel
U.S. Environmental Protection Agency – Region I
One Congress Street, Suite 1100
Boston, MA 02114-2023
Tel: (617) 918-1896

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 23rd day of December 2005, served a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION TO DISMISS on all counsel of record, by first-class mail, postage prepaid, as follows:

Patricia K. Rocha
Adler Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

Richard W. Sherman
Raymond M. Ripple
Edwards Angel Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

John A. Langlois
RIDEM Office of Legal Services
235 Promenade Street, 4th Floor
Providence, RI 02908-5767

Stephen E. Crowley
Attorney for the United States