UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RHODE ISLAND RESOURCE RECOVERY CORPORATION, *Plaintiff,* | : | |
| vs. | : | C.A. No. 05-451-ML |
| RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *Defendants.* | : | |

**OPPOSITION OF RHODE ISLAND RESOURCE RECOVERY CORPORATION TO UNITED STATES' MOTION TO DISMISS**

Plaintiff, Rhode Island Resource Recovery Corporation opposes the motion to dismiss filed by the United States in this matter. In support of its opposition, Plaintiff relies upon its Memorandum of Law and the Declaration of R. Bart Totten, Esq. filed contemporaneously herewith.

Plaintiff,
Rhode Island Resource Recovery Corporation,
By its Attorneys,

Patricia K. Rocha (#2793)
R. Bart Totten (#5095)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel.: (401) 274-7200
Fax: (401) 351-4607/751-0604

Richard A. Sherman (#1190)
Raymond M. Ripple (#6489)
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903
Tel.: (401) 274-9200
Fax: (401) 276-6611

Dated: January 13, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of January, 2006, a copy of the within Opposition to United States' Motion to Dismiss was served by first-class mail on:

Steven E. Crowley
Sue Ellen Wooldridge
U. S. Dept. of Justice
Environmental Defense Section
P. O. Box 23986
Washington, DC 20026-3986

and

John Langlois, Esquire
Rhode Island Department of Environmental Management
Office of Legal Services
235 Promenade Street
Providence, RI 02908.

*368038_1.doc*

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RHODE ISLAND RESOURCE RECOVERY CORPORATION, *Plaintiff,* | : | |
| vs. | : | C.A. No. 05-451-ML |
| RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *Defendants.* | : | |

**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO UNITED STATES' MOTION TO DISMISS**

Plaintiff Rhode Island Resource Recovery Corporation (the "Corporation") submits this Memorandum of Law in support of its concurrently filed Opposition to the United States' Motion to Dismiss. The United States Environmental Protection Agency ("EPA") has moved to dismiss the Complaint pursuant to Fed. R. Civ. P. Rule 12(b)(1) and (5), alleging that the Complaint is barred under the doctrine of sovereign immunity or, in the alternative, that the Complaint seeks relief that is impermissible under Section 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613. EPA also alleges, without explication, insufficiency of service of process under Fed. R. Civ. P. Rule 4(i)(1) and (i)(2)(A).[1]

[1] Federal Rule of Civil Procedure 4(i)(2)(A) governs service of process on agencies of the United States. It requires service of the summons and complaint on the United States Attorney for the District where the action is brought and service by registered or certified mail of the summons and complaint on the Attorney General of the United States at Washington, District of Columbia and on the agency at issue. As set forth in the Declaration of R. Bart Totten filed contemporaneously herewith, each of these required elements of service one EPA was complied with.

EPA is properly a party to this action. Under the terms of the Consent Decree entered by this Court, after EPA had itself brought suit against the Corporation's predecessor,[2] the Corporation is required to undertake certain remedial actions with respect to the Superfund Site identified in the Complaint. Also under the terms of that Consent Decree, the Corporation is not subject to state permitting and approval requirements with respect to those cleanup efforts except as expressly stated therein. Further, the Court in the 1996 Litigation *explicitly retained jurisdiction* over "the subject matter of [the] Consent Decree . . . for the purpose of enabling *any of the Parties* to apply to this Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of [the] Consent Decree, or to effectuate or enforce compliance with its terms. . . ." *Id.* at ¶ 6; Consent Decree at ¶ 110. (emphasis supplied)

The Corporation brought suit to stop the State of Rhode Island, through its Department of Environmental Management ("RIDEM"), from unlawfully interfering with the enforcement mechanism devised by EPA and embodied in the Consent Decree under the doctrine of federal preemption. This suit is brought solely to give full effect to, and to enforce the terms of, the Consent Decree and therefore there can be no bar to this lawsuit under the doctrine of sovereign immunity.

[2] The Corporation's predecessor was Rhode Island Solid Waste Management Corporation, the defendant in litigation initiated in this Court by EPA encaptioned, United States of America v. Rhode Island Solid Waste Management Corporation, C.A. No. 96-408 (D.R.I.) (the "1996 Litigation") seeking implementation of certain response actions and the recovery of costs incurred by the United States in connection with the Corporation's central landfill site located in Johnston, Rhode Island under Sections 106 and 107 on the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") 42 U.S.C. §§ 9606 and 9607. The 1996 Litigation resulted in the entry of a Consent Decree which is the subject of the within Declaratory Judgment action.

The motion to dismiss should be denied in its entirety. As explained below, EPA has both waived any immunity it would otherwise enjoy and voluntarily submitted to the jurisdiction of this Court, at least for the purposes of this suit, by bringing the1996 Litigation. Because the matters raised in the Corporation's present Complaint pertain to the exact same subject matter as the 1996 Litigation, federal law is clear that EPA may not object to the assertion of jurisdiction by this Court with respect to that subject matter based upon the doctrine of sovereign immunity.

Each of the other bases upon which EPA urges dismissal is likewise inapposite. The Corporation has properly stated a claim for a declaratory judgment that relates to a justiciable case or controversy. There exists a ripe, well-defined dispute involving the Corporation, RIDEM, and EPA with respect to the relative jurisdiction of RIDEM and EPA to impose permitting or other approval requirements at the site that was the subject of the 1996 Litigation and which is now governed by the Consent Decree. Contrary to the arguments advanced by EPA, nothing in CERCLA precludes this Court from construing and enforcing that Consent Decree. This action is not a challenge to "EPA's CERCLA activities" (*see* United States' Memorandum at 2) of the type identified in Section 113(h) of CERCLA. *Compare* 42 U.S.C. § 9613(h) (limiting scope of review for removal and remedial actions under CERCLA) *with* Complaint ¶¶ 1-2 (Corporation seeking declaration and related injunctive relief against RIDEM based on federal preemption principles).

Finally, Fed. R. Civ. P. Rule 12(b)(5) has no application in this case because the Corporation has served EPA as is required under the applicable Rules of Civil

Procedure, as established in the contemporaneously-filed Declaration of R. Bart Totten, Esq.

## I. FACTUAL BACKGROUND

This lawsuit arises out actions taken by RIDEM at Operable Unit 1 of the Central Landfill Superfund Site in Johnston, Rhode Island (the "Superfund Site") in violation of the Consent Decree entered by this Court in the 1996 Litigation. Complaint at ¶ 6. The Corporation contends that RIDEM is preempted by federal law and the Consent Decree from requiring the Corporation to obtain any state permits or approvals from RIDEM with respect to work performed entirely within the Superfund Site except as expressly stated in the Consent Decree.

The Consent Decree was entered into by the Corporation and EPA to resolve all issues relating to the obligation of the Corporation to investigate and remediate, in accordance with applicable provisions of CERCLA, the various hazardous substances present at the Superfund Site. *Id.* at ¶ 8. As set forth in more detail in the Complaint, the Consent Decree and applicable federal law preempt any requirement of state or local permits or approvals with respect to any on-site remedial actions at the Superfund Site. *Id.* at ¶¶ 9-12.

One of the remedial actions required by the Consent Decree was the construction by the Corporation of a multilayer RCRA ["Resource Conservation and Recovery Act"] C cap over the previously uncapped 89 acres of the Superfund Site and incorporating therein the then existing RIDEM-approved cap which covered the remaining 32 acres of the Superfund Site (the "RCRA Cap"). Complaint at ¶ 13. As part of the preparation for the construction of the RCRA Cap at the Superfund Site, the Corporation utilized

various fill materials, including but not limited to processed bottom ash ("PBA") and other soils, from both in-state and out-of state sources, to fill voids in, reshape and level out the area of the Superfund Site to be capped in order to be able to then construct the RCRA Cap required by the Consent Decree. Complaint at ¶ 17.

Despite the express provisions of the Consent Decree that prohibited the requirement of any state or local permits or approvals for work conducted entirely within the Superfund Site, on or about August 16, 2005, RIDEM issued a Notice of Intent to Enforce to the Corporation in which it threatened to apply state law and regulation against the Corporation concerning the use of PBA by the Corporation at the Superfund Site. Complaint at ¶ 19.

Thereafter, RIDEM obtained a Search Warrant from a the Rhode Island Sixth Division District Court authorizing it to enter upon the Superfund Site and to obtain samples of PBA and soils therefrom; and pursuant to said Warrant, RIDEM personnel utilized various pieces of equipment to obtain such samples, and in the process of doing so, excavated down through the RCRA Cap, tearing the RCRA Cap in a number of places and leaving the materials below the torn RCRA Cap exposed to the elements thereby destroying the integrity of the cap and creating the actual or threatened release of hazardous substances. Complaint at ¶ 20-21.

Again, despite the express provisions of the Consent Decree and applicable federal law that prohibit the requirement of any state or local permits or approvals for work conducted entirely within the Superfund Site, RIDEM has notified the Corporation that the Corporation does not have a permit or approval from RIDEM to use such PBA as "controlled fill" at the Superfund Site, and that it is the position of RIDEM that the

use of such PBA as "controlled fill" at the Superfund Site constitutes an unlawful disposal of out-of-state generated solid waste at the Central Landfill in violation of R.I.G.L. § 23-19-13.1(a) and disposal at an unlicensed solid waste management facility in violation of R.I.G.L. § 23-18.9-5. Complaint at ¶ 22.

As a result of RIDEM's position and actions with respect to requiring permits and approvals at the Superfund Site in direct contradiction to the terms of the Consent Decree and applicable federal law, the Corporation brought this suit. As set forth in more detail herein, the Corporation also named EPA as a defendant since it believed EPA has an interest relating to the subject of the litigation – *i.e.*, whether state agencies may require state permits and approvals at Superfund Sites in contravention of EPA Consent Decrees and federal law.[3]

## II. **ARGUMENT**

In ruling on EPA's motion to dismiss, this Court must examine the Complaint as a whole, construe it in the light most favorable to the Corporation, take all well-pleaded allegations as true and give Corporation the benefit of all reasonable inferences. *See Figueroa v. Rivera*, 147 F. 3d 77, 80 (1st Cir. 1998). Therefore, this Court should deny the EPA's motion to dismiss unless "it appears beyond doubt that [the Corporation] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

---

[3] *See e.g., United States of America v. The City And County of Denver, Colorado, et al,* 916 F.Supp. 1058 (D.Colo. 1995) (United States sued city and county after city ordered owner of a Superfund site not to perform remedy required by EPA for cleanup under CERCLA as violation of Supremacy Clause and CERCLA).

### A. EPA Waived Immunity by Bringing The Underlying CERCLA Enforcement Action in the1996 Litigation

The primary argument advanced by EPA in its motion to dismiss is that EPA has not waived sovereign immunity with respect to this action. The Corporation does not contest that EPA generally enjoys the benefits of the sovereign, and is therefore immune from suit, except in specified circumstances. However, because this suit relates entirely to the subject matter of the 1996 Litigation, which was brought by EPA against the Corporation, and pursuant to the Court's retention of jurisdiction in that litigation, well-established federal law provides that EPA has waived sovereign immunity with respect to the subject matter of this case. EPA fails to address this issue and the cases cited by EPA on sovereign immunity are inapposite to the facts herein.

The Supreme Court has expressly acknowledged that sovereign immunity may be abrogated by a government's voluntary submission to the jurisdiction of a court, at least insofar as the subject matter of the litigation brought by the government is concerned. The Supreme Court has observed "that a counterclaim based on the subject matter of a sovereign's suit is allowed to cut into the doctrine of immunity" and found that to be "proof positive that the doctrine is not absolute, and that considerations of fair play must be taken into account in its application." *National City Bank v. Republic of China*, 348 U.S. 356, 364 (1955)[4] "Fair play" in this context means, essentially, that a sovereign may not sue in a court and, faced with a counterclaim arising out of precisely the same subject matter, assert sovereign immunity as an absolute bar to the exercise of

[4] Although the National City Bank decision concerned the immunity afforded to a foreign sovereign, its analysis applies with equal force to the sovereign immunity of the United States. As the Court explained, both the United States' sovereign immunity and that of foreign nations has arisen "solely through adjudications of this Court[,u]nlike the special position accorded our States as party defendants by the Eleventh Amendment. . . ." 348U.S. at 358.

jurisdiction over that plaintiff. Yet if EPA is successful in its assertion of sovereign immunity, its position amounts to precisely that sort of "unfair" litigation.

Wherever the government brings suit, it waives immunity, but only to the extent of the subject matter of the suit. Thus one commentator explained the doctrine as follows:

> Despite the sovereign immunity doctrine . . ., when the United States institutes an action, [a] defendant may assert by way of recoupment any claim arising out of the same transaction or occurrence as the original claim in order to reduce or defeat the government's recovery.

6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice And Procedure* § 1427, at 197 (3d ed. 1990). Although the scope of any such waiver is limited, "[c]ourts generally have agreed that [transaction or occurrence] should be interpreted liberally in order to further the general policies of the federal rules and carry out the philosophy of Rule 13(a)." *Id.* at § 1410. As the Third Circuit explained, "[t]he Supreme Court has held that when the United States institutes an action, a defendant may assert by way of recoupment any claim arising out of the same transaction or occurrence as the original claim in order to reduce or defeat the government's recovery." *Livera v. First Nat'l State Bank of New Jersey*, 879 F.2d 1186, 1195-96 (3d Cir. 1989) (citing *United States v. U.S. Fidelity and Guaranty Company*, 309 U.S. 506 (1940)).

One particularly instructive case is *United States v. Iron Mountain Mines, Inc.*, 812 F. Supp. 1528, 1551-52 (E.D. Cal. 1993). In that case, the court allowed the defendant to offset United States' CERCLA claims with the defendant's claim for damage to its equipment, facilities, and minerals caused by the government, because that damage had arisen from the same transaction or occurrence as EPA's original

CERCLA action. EPA had taken the position that the defendant's recoupment claim must be identical to that sought by the government, but that argument was rejected by the court in favor of a subject matter-based scope of waiver of sovereign immunity.

EPA's contention that "the 1996 Consent Decree also fails to waive the United States' sovereign immunity" and the cases it cites in support of that proposition do not stand in opposition to the well recognized doctrine that the United States waives immunity with respect to the subject matter of a suit that the United States brings. Moreover, EPA fails to cite any authority factually similar to the present case. Taken to its logical conclusion, EPA's position would strip this Court of the very jurisdiction that the Consent Decree confers on this Court and to which EPA is a party.

The *State of Minnesota v. United States*, 305 U.S. 382 (1939) case decided only whether individuals acting on behalf of the United States had waived sovereign immunity by removing to federal court an action originally brought in state court, and in which there was no jurisdiction by virtue of sovereign immunity. 305 U.S. 382, 388-89 (1939). Explaining that federal court jurisdiction in removal cases is a form of "derivative jurisdiction," the Court concluded that the act of removal did not confer jurisdiction where it was otherwise lacking. *Id.*

EPA identifies *United States v. Shaw*, 309 U.S. 495 (1940) as supporting the general proposition that "without specific statutory consent, no suit may be brought against the United States." 309 U.S. at 500-01. However, in *Shaw*, the Supreme Court also acknowledged that the United States had waived, by statute, sovereign immunity with respect to claims against the government in connection with a suit brought by the government, noting that "cross-claims are allowed to the amount of the government's

claim, where the government voluntarily sues." *Id.* at 501 and n. 21 (1940) (citing 28 U.S.C. § 774, now amended at 28 U.S.C. § 2406). The Court observed that where the authority to sue is granted by the government, "it is liberally construed." *Id.* at 501.[5]

Certainly there will remain situations in which a defendant's potential counterclaims are barred by the doctrine of sovereign immunity because they do not relate to the subject matter of the suit brought by the government, but those cases are entirely inapposite to this situation. *See, e.g., United States v. Taylor*, 342 F. Supp. 715 (D. Kan. 1972) (where government sued in contract, counterclaim sounding in tort not permissible). Here, however, and based on the foregoing authority, the United States is amenable to suit with respect to the subject matter of a suit that it has brought, without regard to a particular statutory waiver of sovereign immunity. In this case, EPA instituted the 1996 Litigation, suing the Corporation's predecessor and seeking remedial action under CERCLA for the Superfund Site. EPA obtained that relief in the form of the Consent Decree, which now governs the various responsibilities of EPA and the Corporation with respect to that Site. EPA cannot contend that this present litigation does not arise out of the same subject matter as the 1996 Litigation. Because EPA waived immunity with respect to that subject matter, it cannot – as a matter of law, equity, or as the Supreme Court noted, fairness – now claim immunity from judicial action on that identical topic.

---

[5] In *Waylyn Corp. v. United States*, 231 F.2d 544 (1st Cir. (Puerto Rico) 1956), the last case cited by EPA, the First Circuit offered no analysis of this doctrine, but merely followed an earlier ruling, *United States v. Silverton*, 200 F.2d 824, 826 (1st Cir. 1952), that the government, "by filing its original complaint against the defendant in the court below, did not thereby consent to be sued on a counterclaim based on a cause of action *as to which it had not otherwise given consent to be sued.*" 231 F.2d 544, 547 (emphasis added).

Likewise, there is no merit to EPA's suggestion, at page 9 of its Memorandum, that the terms of the Consent Decree require that this matter be brought by motion in the same action as the Consent Decree. First, nothing in the Consent Decree prohibits either the Corporation or EPA from seeking further relief in an ancillary action brought in this Court. *See* Consent Decree at ¶ 110 (permitting any party to "apply" at any time for such further orders or relief necessary to effectuate the Consent Decree). Contrary to EPA's assertion, the word "apply" is not synonymous with "move." Second, there is no principle of federal law that constrains litigants to enforcing the terms of a consent decree only under the same civil action number as the original case in which the decree had issued. *See, e.g.*, *Martel v. Fridovich*, 14 F.3d 1 at 3 (1st Cir. 1993) (affirming dismissal of complaint, but recognizing right of plaintiff to bring separate "action" to enforce consent decree).

Finally, and most importantly, EPA's argument that this action should be dismissed because it is not brought under the auspices of the 1996 Litigation would elevate form over substance in the most extreme fashion. The Supreme Court has explicitly rejected distinctions of precisely the type advanced by EPA. In *United States v. Yellow Cab Company*, 340 U.S. 453, 554 (1951), the Court explained that, once it is established that the government has waived sovereign immunity on a given claim, it does not matter whether that claim is advanced in one particular form or another:

> Once we have concluded that the Federal Tort Claims Act covers an action for contribution due a tort-feasor, we should not, by refinement of construction, limit that consent to cases where the procedure is by separate action and deny it where the same relief is sought in a third-party action.

In accord with the *Yellow Cab* decision, courts have increasingly rejected distinctions based on form, holding that litigants are free to press claims against the government

either as counterclaims in an action brought by the United States, or as a separate action. *See*, *e.g.*, 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1427, at 202 n. 20 (citing *United States v. Phillips*, 362 F. Supp. 462 (D. Neb. 1973)).

Requiring the Corporation to proceed under the auspices of the 1996 Litigation would not only be contrary to law, but it would also be onerous and inconsistent with Rule 1 of the Federal Court Rules of Civil Procedure, which requires "the just, speedy and inexpensive determination of every action." For the Corporation to seek relief in the 1996 Litigation, the Corporation would have to move for leave to add RIDEM as a party to the litigation, have that motion granted, serve RIDEM as a third-party defendant, then move for exactly the same relief sought here. Of course, the 1996 litigation was closed by this Court in October of 1996 (*see generally* Docket Entry 10/6/96, C.A. No. 96-408-P (D.R.I)), so the Corporation would have to re-open the case before it could take any of these actions. But even if the Corporation took all of the steps necessary to revive the earlier litigation and bring these claims for relief in that case, the result would be precisely the same as permitting this case to proceed.

As EPA implicitly acknowledges, the *only* justification for requiring the Corporation to jump through such hoops would be to prevent "judge shopping." *See* United States' Memorandum at 10 n. 10. Of course, this matter was originally heard by the late Judge Raymond J. Pettine and, as EPA must concede, this matter would be heard by a new judge no matter what process the Corporation had followed. But as a matter of policy, neither the Corporation nor any similarly situated litigant could engage in "judge shopping" by proceeding as the Corporation has done here. The

Corporation is obliged, by Local Rule 105(a), to inform the Court of any related litigation in order to allow the later-filed case to be assigned to the judge handling the earlier, related litigation (which the Corporation did in this case). Because the earlier case has been closed, the Court could also view this action as a "re-filed" case under that same Local Rule, which, again, would result in the matter being assigned to the original judge. In short, there exist no grounds on which the Court should be concerned that the procedure employed by the Corporation in this case amounts to an attempt to go "judge shopping."[6]

### B. The Corporation Has Stated A Valid Claim for Declaratory Judgment and Has Standing to State That Claim

The mere fact that the Corporation is not presenting a demand either for compensation or some affirmative act by the EPA should not be confused with failing to identify a justiciable claim that may be the subject of a declaratory judgment. *See id.*; *see also Igartua-De La Rosa v. United States*, 417 F.3d 145, 253-54 (1st Cir. 2005). EPA does not claim, nor could it do so, that there is no "case or controversy" that the Court might properly resolve through a declaratory judgment. The controversy is clearly delineated: EPA and the Corporation have entered into a settlement ultimately embodied in the Consent Decree, an order of this Court, which provides that the Corporation need not obtain state permits and approvals for the work performed entirely on-site pursuant to the Consent Decree except as expressly required therein, whereas RIDEM (which concurred in the Record of Decision which is Appendix A to the

---

6 In addition, EPA devotes several pages of its memorandum on the argument that the Corporation cannot avail itself of the waiver of sovereign immunity contained in the Administrative Procedure Act (the "APA"). The Corporation did not allege in its complaint that this case was brought under the APA and does not assert in this memorandum that its right to sue EPA derives from the APA.

Consent Decree) has asserted that the Corporation acted illegally in failing to obtain such permits and approvals. *See* Complaint ¶¶ 8-22. Indeed, the fact that RIDEM has undertaken a criminal procedure – executing a search warrant relative to the use of certain materials at the Superfund Site – renders this an even more concrete controversy than is often the case. *See, e.g., United States v. Davis*, 261 F.3d 1, 49 (1st Cir. 2001) (upholding District Court grant of declaratory judgment for future CERCLA cleanup costs despite lack of proof that plaintiff would incur more than its fair share of such costs).

EPA's argument, properly understood, is not that this case does not present a "case or controversy," but rather that the Corporation's position with respect to the subject matter of the litigation is not sufficiently adverse to EPA's such that there is no case or controversy as between the Corporation and EPA. *See* United States' Memorandum at 2 ("there is no justiciable 'case or controversy' between [the Corporation] and EPA") and 13 ("there is no concrete dispute between EPA and [the Corporation]").

Even if this were true, however – and it presents a question that the Corporation cannot respond to at least until EPA answers the Complaint – it is irrelevant. In making its argument, EPA asks the Court to disregard the plain language of the Declaratory Judgment Act and the case law on which EPA relies. All that is required for adjudication under the Declaratory Judgment Act is "a case of actual controversy." 28 U.S.C. § 2201. In *Muskrat v. United States*, the Supreme Court explained that "[w]henever the claim of a party under the Constitution, laws, or treaties of the United States takes such a form that the judicial power is capable of acting upon it, then it has

become a case." 219 U.S. 346, 357 (1911). Either the Complaint states a claim that is amenable to the exercise of judicial power, or it does not. The fact that there might be parties to a lawsuit that share a common litigation position does not undo that claim "[having] become a case." EPA is involved in this litigation not because it is adverse to the Corporation or because it has threatened some adverse action against the Corporation, but because (a) there is a justiciable case or controversy regarding the Consent Decree, and (b) EPA has an interest in that case or controversy.[7]

### C. Because This Suit Does Not Challenge EPA's Enforcement Action, It Is Not Barred by CERCLA

EPA urges that even if there is an applicable waiver of sovereign immunity, the Corporation may not bring this action because it is specifically prohibited by Section 113(h) of CERCLA, 42 U.S.C. § 9613(h). This argument fails both because it is incorrect as a matter of law and further because it is not the proper basis for a motion to dismiss brought pursuant to Fed. R. Civ. P. Rule 12(b)(1) or (5).[8] EPA argues that Section 113(h) requires that judicial review of EPA enforcement actions await completion of the remedial action, and because this action does not fall within any of Section 113(h)'s five exceptions to this requirement, this suit is barred. *See generally*

---

[7] The same analysis renders EPA's arguments with respect to the Corporation's standing inapplicable. EPA contends that the Corporation lacks standing because "it fails to identify any legal injury *caused or threatened by EPA*." United States' Memorandum at 14 (emphasis added). Standing, however, is a threshold issue that examines the plaintiff's relationship to the claims asserted, not the plaintiff's relationship with the other parties. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."). The Corporation is aware of no requirement that a plaintiff demonstrate standing *vis a vis* each party to particular litigation, and EPA offers no legal authority to support such a requirement.

[8] As explained *infra*, this Court has specifically retained subject matter jurisdiction by virtue of the Consent Decree. Therefore, even if the Court were to agree that Section 113(h) of CERCLA had some application in this matter, it would not render jurisdiction lacking.

United States' Memorandum at 14-17. EPA claims that the Corporation's Complaint amounts to a "challenge to ongoing activities at Superfund sites" within the meaning of CERCLA, but that assertion does not bear scrutiny. *See id.* at 15 (quoting *Heart of America Northwest v. Westinghouse Hanford Co.*, 820 F. Supp. 1265, 1276 (E.D. Wash. 1993)).[9] In fact, this action simply seeks to have this Court construe, apply, and enforce its prior order, the Consent Decree. In essence, this case does not *challenge* EPA's cleanup efforts so much as it seeks to allow those cleanup efforts to proceed as planned and agreed upon by EPA and as ordered by this Court.

As a matter of law, the Corporation agrees with EPA that Section 113(h) would prohibit as premature any action by the Corporation that sought to obtain judicial review of EPA's interpretation of the remedy. This action is not brought, however, to seek review of EPA. Rather, this action is precisely the type contemplated by the Consent Decree itself, which explicitly provided as follows (emphasis added):

> This Court *retains jurisdiction over both the subject matter of this Consent Decree* and the Settling Defendant for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of *enabling any of the Parties to apply to this Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with*

[9] Indeed, the court in *Heart of America* helpfully surveyed the various actions that other courts had considered to be barred by Section 113(h) of CERCLA, and the list only underscores the fact that this action is entirely distinct from those, each of which basically examines whether the relief sought "would impact implementation of a response action." 820 F. Supp. at 1277. For example, the types of cases *rejected* by other courts sought relief including comprehensive cleanup of a site, cleanup of a pond located on the site, and ensuring that the cleanup process followed certain procedures. *Id.* at 1277-1279. By contrast, the court noted approvingly that other courts had found that Section 113(h) *did not prohibit* actions that would not hamper cleanup efforts and would generally "speed up ongoing cleanup efforts." *Id.* at 1278 (citing *Chemical Waste Management, Inc. v. Environmental Protection Agency*, 673 F. Supp. 1043, 1055 (D.Kan. 1987).

> *its terms, or to resolve* disputes in accordance with Section XX (Dispute Resolution) hereof. (Emphasis added)

The Corporation seeks, in this action, to obtain an order and injunctive relief from this Court to give full effect to the Consent Decree. By its terms, the Consent Decree permits the Corporation to pursue the cleanup of the Superfund Site without obtaining state permits and approvals without regard to whether they would otherwise be required under state law. *See*, *e.g.*, Complaint ¶ 9. RIDEM has attempted to interfere with the orderly and lawful cleanup process by threatening state criminal process based on the Corporation's compliance with the Consent Decree's terms. This action is necessary, not to review the EPA's efforts, but to prevent further disruption of the implementation of EPA's plan for remedial action. To the extent the Complaint seeks a declaration that the Consent Decree's exemption of the on-site work from state approval requirements prohibits RIDEM from imposing such requirements, this is an action "for the construction [* * *] of this Consent Decree." To the extent the Complaint seeks injunctive relief against RIDEM taking adverse action against the Corporation based on a failure to abide by state approval requirements, this is an action "to effectuate or enforce its terms." The Corporation seeks no other relief in this action. *See* Complaint at 8-10. Accordingly, EPA is incorrect in characterizing this action as seeking judicial review of a CERCLA remedial action that might be subject to the strictures of Section 113(h).

Even more importantly, though, it is impossible to reconcile EPA's contention that this Court lacks subject matter jurisdiction because of CERCLA Section 113(h) with the plain language of the Consent Decree, to which EPA is a party, that this Court retains subject matter jurisdiction throughout the performance of the terms of the

Consent Decree. Indeed, such retention is to a degree superfluous, as this Court inherently has jurisdiction to enforce such decrees. *See, e.g., Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 604 n. 7 (2001) (drawing distinction between private settlements and those embodied in a court order; noting that federal jurisdiction to enforce the terms of settlement "will often be lacking unless the terms of the settlement are incorporated into the order of dismissal"); *see also Martel v. Fridovich*, 14 F.3d 1, 3 (1st Cir. 1993). This Court had subject matter jurisdiction and retained it; Section 113(h) cannot destroy such jurisdiction, nor does EPA claim that it does.

In sum, the Corporation asks only that this Court address a subject matter over which it has expressly reserved jurisdiction, and on issues that this Court has specifically authorized the Corporation to bring to the Court for review. EPA's claim that the Court lacks jurisdiction to hear this dispute is belied by the plain language of the Consent Decree and incorrect as a matter of law.

**D. EPA Is A Defendant Solely Pursuant to Fed. R. Civ. P. Rule 19(a).**

Consistent with EPA's action in *United States of America v. Denver*, *supra*, the Corporation believes by virtue of EPA's role as the federal agency responsible for the enforcement of the Corporation's cleanup of the Superfund Site, that EPA does or will agree with the Corporation with respect to the relative jurisdiction of EPA and RIDEM and RIDEM's authority to impose permitting or other approvals on the Corporation with respect to work governed by the Consent Decree. Based on this assumption, the Corporation has admitted that it does not seek any "affirmative relief" from EPA in this case in the traditional sense, understanding "affirmative relief" to mean an award of

damages or some injunctive relief. *See* Complaint at ¶ 5. Rather, the Corporation has named EPA as a defendant because, in the language of Fed. R. Civ. P. Rule 19(a),

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if [* * *] the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may [] as a practical matter impair or impede the person's ability to protect that interest [* * *].

Here, the Corporation believes that EPA has "an interest relating to" the subject matter of this litigation, which generally relates to the Consent Decree entered in the 1996 Litigation and which specifically relates to the relative jurisdiction of EPA and RIDEM with respect to the regulated hazardous waste site governed by the Consent Decree. The Corporation further believes that if EPA is not a party to this litigation, that fact may impair EPA's ability to protect that interest (should EPA desire to do so), in that this Court conceivably could construe and determine the language of the Consent Decree in a manner inconsistent with EPA's interpretation, or declare the relative jurisdiction of EPA and RIDEM to be different from EPA's position on that issue. Accordingly, the Corporation named EPA as a defendant in accordance with the Rules of Civil Procedure and the Declaratory Judgment Act, 28 U.S.C. § 2201, so that EPA may protect its interests which may be affected by these proceedings.[10]

[10] The Corporation does not consider EPA to be an indispensable party, however, such that this Court could not afford complete relief in its absence. *See generally* Fed. R. Civ. P. Rule 19(b). None of the factors identified in Rule 19(b) mitigates in favor of concluding that this action may not proceed in EPA's absence.

## III. CONCLUSION

Based on the foregoing, Rhode Island Resource Recovery Corporation respectfully requests that this Court deny EPA's Motion to Dismiss.

Respectfully submitted,

Patricia K. Rocha (#2793)
R. Bart Totten (#5095)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
Tel.: (401) 274-7200
Fax: (401) 351-4607

Richard A. Sherman (#1190)
Raymond M. Ripple (#6489)
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, Rhode Island 02903
Tel.: (401) 274-9200
Fax: (401) 276-6611

Dated: January 13, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of January, 2006, a copy of the within Memorandum of Law in Opposition to United States' Motion to Dismiss was served by first-class mail on:

Steven E. Crowley
Sue Ellen Wooldridge
U. S. Dept. of Justice
Environmental Defense Section
P. O. Box 23986
Washington, DC 20026-3986

and

John Langlois, Esq.
Rhode Island Department of Environmental Management
Office of Legal Services
235 Promenade Street
Providence, Rhode Island 02908.

Debra Hurm

*367606_1.DOC*