**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RHODE ISLAND RESOURCE RECOVERY CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | C. A. No. 05-451-ML |
| RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM IN SUPPORT**
**OF UNITED STATES' MOTION TO DISMISS**

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

Dated: February 2, 2006

STEPHEN E. CROWLEY
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986
Tel: (202) 514-0165
Fax: (202) 514-8865
Stephen.Crowley@usdoj.gov

*Attorneys for the United States*

*Of Counsel*:
M. GRETCHEN MUENCH
Senior Enforcement Counsel
U.S. EPA — Region I
One Congress Street, Suite 1100
Boston, MA 02114-2023

The United States, on behalf of Defendant United States Environmental Protection Agency, submits this Reply Memorandum in support of its Motion to Dismiss.

## ARGUMENT

### I. THE COMPLAINT AGAINST EPA SHOULD BE DISMISSED BECAUSE SOVEREIGN IMMUNITY HAS NOT BEEN WAIVED.

#### A. There Is No Applicable Waiver Of Sovereign Immunity Or Exception To The Doctrine of Sovereign Immunity For RIRRC's Complaint Against EPA.

RIRRC sues EPA but concedes that there is no federal statute that waives EPA's sovereign immunity here. RIRRC contends instead that sovereign immunity is waived "[w]henever the government brings suit," Pl.'s Mem. 8 (emphasis added), "at least insofar as the subject matter of the litigation brought by the government is concerned." Id. at 7. That argument severely misconstrues the doctrine of sovereign immunity and overstates a very limited exception to the rule that waivers be "'unequivocally expressed in statutory text.'" Marina Bay Realty Trust LLC v. United States, 407 F.3d 418, 422 (1st Cir. 2005) (quoting Lane v. Pena, 518 U.S. 187, 192 (1996).

The well-settled principle, set forth by the First Circuit in Waylyn Corp. v. United States, 231 F.2d 544 (1st Cir. 1956), is that "[t]he filing of suit in the name of the United States does not in itself amount to waiver of sovereign immunity, subjecting the United States to an affirmative adverse judgment on a counterclaim filed by defendant in such suit." Id. at 547. That principle originated with the Supreme Court's landmark decision, United States v. Shaw, 309 U.S. 495 (1940). There, the Court applied the "postulate that without specific statutory consent, no suit may be brought against the United States," and allowed a cross-claim against the government to proceed, since a specific federal statute waived sovereign immunity "to the amount of the

government's claim, where the government voluntarily sues." Id. at 500-01. In a portion of the opinion that RIRRC neglects to mention (Pl.'s Mem. 9-10), however, the Court went on to consider the cross-claimant's much broader conception of waiver (which essentially echoes the legal stance of RIRRC in the instant case), namely,

> that when a sovereign voluntarily seeks the aid of the courts for collection of its indebtedness it takes the form of a private suitor and thereby subjects itself to the full jurisdiction of the court. The principle of full adjudication is stressed, as is the necessity for a complete examination into the cross-claim . . . .

Id. at 502. The Court squarely rejected this broad theory of "waiver through litigation," holding that even where the government invokes jurisdiction by *initiating* an action, the scope of the potential counterclaim or cross-claim against the government is strictly defined and limited by terms of the federal statutory waiver. See id. at 502-03. As such, there is simply no room for the broad principle that "whenever" the government files suit, it waives all immunity pertaining to the subject matter of the suit.

The decision in National City Bank of New York v. Republic of China, 348 U.S. 356 (1955), on which RIRRC chiefly relies, is not to the contrary. As the First Circuit observed in Waylyn: "National City Bank was not intended to overturn the holding in United States v. Shaw." 231 F.3d at 547. Indeed, the majority opinion in National City Bank recognized Shaw as "the accepted jurisprudence of sovereign immunity." 348 U.S. at 358 n.2. Furthermore, to the extent National City Bank actually departs from the well-settled principles articulated in Shaw, it should be viewed with disfavor.[1]

---

[1] One leading commentator, citing, inter alia, National City Bank and United States v. Yellow Cab Co., 340 U.S. 543 (1951) (another case relied on by RIRRC, see Pl.'s Br. 11), has remarked: "Some Court opinions suggested that the defense of sovereign immunity was (continued...)

There is also no merit to RIRRC's contention (Pl.'s Mem. 7) that the doctrine of sovereign immunity must give way to "'considerations of fair play.'" (quoting National City Bank, 348 F.2d at 364). "Whether we like the doctrine of sovereign immunity of the United States or not, we must take it as established law that the United States cannot be sued without its consent." Waylyn, 231 F.3d at 547. RIRRC, like most parties who seek to sue an agency of the United States but lack a waiver of sovereign immunity, believe that bringing their claims against the agency will resolve their dispute in the most "equit[able]," "fair[]," "just," "speedy," and "inexpensive" manner. Pl.'s Mem. 10, 12.[2] Such arguments have not persuaded federal courts.[3] Accordingly, RIRRC's contentions that sovereign immunity must give way to efficiency or fairness should be rejected.

B. The Common Law "Recoupment Exception" To Sovereign Immunity

To be sure, RIRRC's legal stance on sovereign immunity evolves as its brief progresses. It relies initially on National City Bank for the proposition that sovereign immunity can be

[1](...continued)
regarded with 'disfavor,' and that the Court might view more liberally waivers of immunity. It is now clear, however, that the courts are committed to enforcing immunity strictly." 20 Wright & Kane, Federal Practice & Procedure Deskbook § 23, at n.16 (internal citations omitted).

[2] In advancing this argument, RIRRC relies in part on Rule 1 of the Federal Rules of Civil Procedure (Pl.'s Mem. 12), thus ignoring that the Federal Rules cannot waive sovereign immunity and cannot be construed or relied upon to expand federal subject matter jurisdiction. Fed. R. Civ. P. 82.

[3] See, e.g., Ohio Casualty Ins. Co. v. Reed, No. 1:04-CV-2027-DFH-WTL, 2005 WL 1703256, at *4 (S.D. Ind. Jul. 20, 2005) ("[Plaintiff] also suggests that the court should reject USEPA's claim of sovereign immunity because it would be more just, expeditious, and economical to force all the interested parties into this lawsuit. . . . [T]he court is not free to ignore the fundamental principle of sovereign immunity merely because it would be more convenient for the court and the other parties to do so. Nor may the court do so merely because Rule 19 might allow joinder of a similarly situated non-sovereign party against its will.").

waived "whenever" the United States bring suit.[4] By proceeding to quote authorities that only recognize the far narrower "recoupment exception" to sovereign immunity, however, see Pl.'s Mem. 8, RIRRC beats a hasty retreat from it original position. Even so, the "recoupment exception" is of no help to RIRRC's case.

"Recoupment is a common law, equitable doctrine that permits a defendant to assert a defensive claim against a plaintiff, arising from the same contract or transaction as plaintiff's claim, to reduce the amount of the damages recoverable by the plaintiff." Berger v. City of N. Miami, Fla., 820 F. Supp. 989, 991 (E.D. Va. 1993).[5] In actions involving the United States as plaintiff, recoupment has been recognized as an exception to the doctrine of sovereign immunity, as follows:

> [W]hen the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment — arising out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the government's claim but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims . . . .

Frederick v. United States, 396 F.2d 481, 488 (5th Cir. 1967).

---

[4] RIRRC's argument also begins by misstating the applicable standards of review for our motion under Rules 12(b)(1) and (b)(5). RIRRC recites the standard applicable to Rule 12(b)(6). Pl.'s Mem. 6 (citing Conley v. Gibson, 355 U.S. 41 (1955)). This is exactly backwards; as Plaintiff, RIRRC, not the United States, bears the burden of demonstrating the Court's subject matter jurisdiction, Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994), as well as adequacy of service of process, Saez Rivera v. Nissan Mfg. Co., 788 F.2d 819, 821 n.2 (1st Cir. 1986).

[5] See also United States v. Dalm, 494 U.S. 596, 611 (1990); United Structures of America, Inc. v. G.R.G. Eng'g, S.E., 9 F.3d 996, 998 (1st Cir. 1993); United States v. American Color & Chem. Corp., 858 F. Supp. 445, 451 (M.D. Pa. 1994).

C. The Recoupment Exception To The Doctrine of Sovereign Immunity Is Unavailable.

RIRRC's lawsuit against EPA and RIDEM is not a recoupment action. On its face, the Complaint seeks declaratory and injunctive relief under the federal Declaratory Judgment Act, Compl. ¶¶ 1-2; it does not seek, or even mention, recoupment (or any type of monetary offset). For this fundamental reason, the recoupment exception to sovereign immunity is inapplicable.[6]

Even if RIRRC's suit against EPA were re-cast as recoupment, it would be unavailable because RIRRC's suit arises from RIRRC's performance of the ongoing response action at the Central Landfill Superfund Site, and the State of Rhode Island's "unlawful" on-Site search pursuant to state criminal law. Compl. ¶¶ 8-26; Pl.'s Mem. Of Law In Supp. Of Its Mot. For Prelim. Inj., at 1-3 ("Background"). The instant case does not arise, therefore, from the same transaction or occurrence that gave rise to the United States' much earlier CERCLA enforcement action against RISWMC — namely, the United States' incurrence of response costs at the Site

---

[6] Proceeding from the assumption that it had properly pled recoupment in its Complaint, RIRRC cites United States v. Iron Mountain Mines, Inc., 812 F. Supp. 1528, 1551-52 (E.D. Cal. 1993), for the proposition that recoupment claims may be pled in response to a CERCLA cost recovery action brought by the government. See Pl.'s Mem. 8. RIRRC neglects to point out, however, that in the very same case, the court issued a far more thorough and persuasive opinion in support of a decision to dismiss recoupment claims for failure to state a viable claim. See United States v. Iron Mtn. Mines, Inc., 881 F. Supp. 1432, 1452-57 (E.D. Cal. 1995) ("Iron Mountain II") ("There is nothing in CERCLA that can be read to exact a waiver of governmental sovereign immunity from claims under other laws as to which it is immune as the price of bringing a cost recovery action under CERCLA."). Other courts have similarly recognized that a defendant cannot assert a recoupment claim in response to a CERCLA cost recovery action. See United States v. Green, 33 F. Supp. 2d 203, 223-25 (W.D.N.Y. 1998); United States v. Rohm & Haas Co., 939 F. Supp. 1157, 1161-65 (D.N.J. 1996); United States v. Keystone Sanitation Co., Inc., 867 F. Supp. 275, 282-84 (M.D. Pa. 1994). But see Iron Mountain II, 881 F. Supp. at 1453 (listing cases allowing recoupment claims in response to a CERCLA cost recovery claim). Accordingly, even assuming RIRRC were to attempt a recoupment claim it would be unavailable as a matter of law, and therefore no basis for an exception to sovereign immunity.

for which RISWMC was liable as a past and present "owner/operator" under CERCLA, 42 U.S.C. § 9607(a)(1).[7] Alternatively, the 1996 case arose from RISWMC's liability in connection with the "imminent and substantial endangerment to the public health or welfare or the environment because of actual or threatened release[s]" of hazardous substances from the facility, 42 U.S.C. § 9606. Moreover, RIRRC seeks affirmative relief in the form of a declaratory judgment in this case, and such affirmative relief is not only impermissible in the recoupment context, see Frederick, supra, but different in nature and kind from the relief sought by the United States in the 1996 enforcement case, which sought the recovery of response costs and the performance of response actions from RISWMC. Compare Attachment A hereto (United States' complaint – seeking cost recovery and injunctive relief from RISWMC), with Pl.'s Mem. 18-19 ("[T]he Corporation has admitted that it does not seek . . . from EPA . . . an award of damages or some injunctive relief."). For these reasons, recoupment is unavailable to RIRRC.

Finally, even assuming that RIRRC had adequately pled a recoupment claim that arose from the same transaction or occurrence that gave rise to the United States' prior CERCLA enforcement lawsuit, recoupment would be unavailable because such claim may only be asserted as a defense to an original action over which a court already has jurisdiction. See United States v. Dalm, 494 U.S. 596, 606-11 (1990); United States v. Atlas Minerals & Chems., Inc., 797 F. Supp. 411, 421 (E.D. Pa. 1992). Put differently, a recoupment claim is "'in the nature of a defense,'" United Structures of America, Inc. v. G.R.G. Eng'g, S.E., 9 F.3d 996, 999 (1st Cir. 1993) (quoting Rothensies v. Elec. Storage Battery Co., 329 U.S. 296, 299 (1946)), and may not

[7] A copy of the United States' 1996 Complaint against RISWMC is attached hereto under the tab marked "A."

serve as "the sole basis for jurisdiction" in a separate action, Dalm, 494 U.S. at 608, particularly where (as here) the subject matter of the original action against the would-be recoupment claimant has already been fully litigated and resolved in a judicially-approved consent decree.[8] Furthermore, if RIRRC were actually to insist upon a recoupment claim today, that would amount to a belated effort to reopen and resuscitate the subject matter of the United States' 1996 enforcement lawsuit, matters which have long since been resolved by the 1996 Consent Decree.[9]

For all these reasons, the recoupment exception is inapplicable, and therefore RIRRC's suit must be dismissed on grounds of sovereign immunity.

## II. THE CONSENT DECREE DOES NOT AUTHORIZE RIRRC's SUIT.

### A. RIRRC's Lawsuit Violates Its Prior Promise Not To Sue The United States.

RIRRC argues that the Consent Decree provides a sufficient jurisdictional basis for its suit against EPA and that there is "no merit" to the United States' suggestion "that this matter be brought by motion in the same action as the Consent Decree." Pl.'s Mem. 11. Nothing could be further from the truth. In fact, RIRRC's predecessor expressly promised not to sue EPA. Specifically, as consideration and inducement to the United States to resolve and settle its enforcement suit, RISWMC promised in the 1996 Consent Decree "not to assert any claims or

---

[8] See Dalm, 494 U.S. at 610-11 (denying "recoupment exception" to sovereign immunity to a plaintiff taxpayer where, in a prior, separate action — for which jurisdiction was proper in the federal Tax Court — the taxpayer litigated an income tax deficiency claim brought by the government and neglected to raise a recoupment claim); cf. Peacock v. Thomas, 516 U.S. 349, 355 (1996) ("In a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction.").

[9] Cf. Peacock, 516 U.S. at 355 ("[O]nce judgment was entered in the original . . . suit, the ability to resolve simultaneously factually intertwined issues vanished.").

causes of action against the United States with respect to the Site or this Consent Decree, including, but not limited to . . . ." Consent Decree ¶ 97 (attached hereto under the tab marked "B").[10] By initiating this action against EPA, RIRRC has done just what this enforceable Decree language prohibits. Thus, immediate dismissal is warranted.

B. Equitable Enforcement Jurisdiction Cannot Supercede Constitutional And Congressional Limitations On Jurisdiction.

In addition to the above covenant not to sue EPA, it is a bedrock principle that "federal courts are courts of limited jurisdiction, [and] they can act only where the Constitution and Congress endow them with some affirmative ground to do so." U.S.I. Properties Corp. v. M.D. Constr. Co., 230 F.3d 489, 499 (1st Cir. 2000). Thus, there is nothing within the Consent Decree, within a court's inherent "enforcement jurisdiction," or within the Federal Rules of Civil Procedure, that can afford jurisdiction that does not otherwise exist by law.[11] Accordingly,

[10] This "Covenants By Settling Defendant" portion of the Decree contains a reservation of rights, but that reservation is clearly inapplicable to this case. See Attach. B at Para. 97.

[11] See id. (discussing limits of enforcement jurisdiction and recognizing that "[t]he doctrine of enforcement jurisdiction is "a judicial creation"); Futura Dev. of P.R., Inc. v. Estado Libre Asociado de P.R., 144 F.3d 7, 9 n.1 (1st Cir. 1998) ("enforcement jurisdiction remains a creature of common law"); Merrill Lynch, Pierce, Fenner & Smith v. Jacks, 960 F.2d 911, 913 (10th Cir. 1992) (district court's plenary power to see that its orders are obeyed does not allow it to abrogate federal sovereign immunity); Fed. R. Civ. P. 13(d) (rule permitting counterclaim does not supercede federal sovereign immunity); Fed. R. Civ. P. 82 (Federal Rules cannot expand jurisdiction). Critically, enforcement jurisdiction "flow[s] from . . . original jurisdiction over the action, . . . [and thus] may well vary with the nature of the underlying basis for federal jurisdiction and the nature of the postjudgment claims made." U.S.I. Properties, 230 F.3d at 496 (emphasis added). In the instant case, therefore, this Court's enforcement jurisdiction is derivative of the jurisdiction that the Court had over the United States' enforcement suit. And because in the original action Judge Pettine unquestionably lacked jurisdiction to entertain unrelated, declaratory relief claims against the United States such as those asserted by RIRRC today, the Court today cannot rely on enforcement jurisdiction as the basis for RIRRC's suit against EPA.

whether RIRRC attempts to enforce the Consent Decree through a declaratory judgment counterclaim in the original action, or through this collateral action, the jurisdictional limits presented by sovereign immunity and Article III standing, as well as those set forth in Section 113(h) of CERCLA, must control the extent to which the action can proceed. Those limitations — coupled with the well-established prudential principle discouraging judges from interpreting or applying orders or decrees issued by another judge, and the promise by RISWMC not to sue the United States — militate in favor of dismissal of the Complaint against EPA. Specifically, to the extent that RIRRC seeks merely a judicial construction of the terms of the Decree,[12] it may file a motion to that effect in the original action, see Consent Decree ¶ 110,[13] the outcome of which might then be enforced against third parties by way of a third-party complaint.

RIRRC's rebuttal to this approach — that it "would elevate form over substance" (Pl.'s Mem. 11) — ignores the fact that "a distinction that has jurisdiction as its central concept is not meaningless." United States v. Dalm, 494 U.S. at 606. A suit against the United States raises issues of jurisdiction that are different than those present upon a motion by a defendant in an enforcement action that was brought by the United States, over which the court already has

---

[12] As discussed in our opening brief (U.S. Mem. 17-19), and here below, however, the Complaint as presently constituted seeks more than a mere judicial construction of the terms of the Decree. RIRRC seeks judicial review concerning the manner and legality of its performance of the ongoing response action under CERCLA, the Consent Decree, and state law. Such judicial review is barred by Section 113(h) of CERCLA.

[13] See, e.g., United States v. Knote, 818 F. Supp. 1280, 1284 (E.D. Mo. 1993) (CERCLA consent decree) ("This Court had subject matter jurisdiction to adjudicate the EPA's original complaint, it had jurisdiction to approve and enter the Consent Decree, and by virtue of the Consent Decree, this Court has continuing jurisdiction to entertain the defendant's motion to enforce the Consent Decree.") (emphasis added), aff'd 29 F.3d 1297 (8th Cir. 1994). RIRRC of course has not chosen to pursue this avenue.

jurisdiction. See p. 9 n.12, supra. Moreover, "federal sovereign immunity is an immunity from suit, not simply a defense to liability on the merits." In re Sealed Case, 192 F.3d 995, 999 (D.C. Cir. 1999) (citing FDIC v. Meyer, 510 U.S. 471, 475 (1994)). As such, the prerogatives of immunity are effectively nullified by the mere exercise of jurisdiction over the sovereign, not only by an adverse final judgment against the sovereign.[14]

## III. SECTION 113h BARS THE CLAIM BECAUSE IT WOULD FORCE EPA INTO LITIGATION CONCERNING THE MANNER AND LEGALITY OF RIRRC'S PERFORMANCE OF THE ONGOING RESPONSE ACTION.

RIRRC's suit is a barred "challenge" within the meaning of Section 113(h) of CERCLA because it seeks far more than a "simple" judicial construction and application of a prior court order. The suit asserts a theory of federal conflict preemption, Compl. ¶ 36, but that argument cannot be made in a factual vacuum; there must at least be a judicial determination on, inter alia, the fact-specific question of whether RIRRC has performed the response action in a manner consistent with the Consent Decree, the Record of Decision ("ROD"), and the Statement of Work ("SOW"). This is so because the shield ostensibly offered by federal preemption may well not exist if RIRRC is found to have performed the response action in a manner inconsistent with the

[14] RIRRC also maintains (Pl.'s Mem. 13-15) that it has demonstrated a live, actual controversy between RIRRC and RIDEM concerning the applicability of State laws to the on-Site response action in light of CERCLA and the Consent Decree, and that EPA's "interest" in this controversy is sufficient to establish Article III standing to sue EPA. By failing to allege any harm caused or threatened by EPA actions or inactions, RIRRC has failed to demonstrate standing to sue EPA, N.H. Hemp Council, Inc. v. Marshall, 203 F.3d 1, 4 (1st Cir. 2000), and that jurisdictional defect is not obviated by the demonstration of standing to sue another party, such as RIDEM. See Diamond v. Charles, 476 U.S. 54, 64-65 (1989). RIRRC is also wrong to contend (Pl.'s Mem.14) that it may await EPA's answer to the Complaint before it is required to demonstrate standing or specify the nature of EPA's interest in this matter. Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). Nor may RIRRC rely (Pl.'s Mem. 18-19) on the United States' position in another lawsuit involving distinct issues and facts, to demonstrate standing or interest.

remedy called for under the Consent Decree and the ROD.[15] While RIRRC for obvious reasons assumes away the answer to this question — and further assumes that EPA (if not the Court) has likewise determined already that RIRRC's ongoing performance of the response action is fully consistent with the requirements contained in the Consent Decree, ROD, and SOW[16] — EPA has not in fact done so. In this sense, RIRRC's suit seeks judicial review of an EPA enforcement activity (e.g., an administrative determination of whether RIRRC is performing the response action in accordance with applicable law), well before any such administrative enforcement activity or determination has even taken place. At bottom, RIRRC wishes to litigate the applicability of a state law to the ongoing response action. The assumed outcome of that litigation does not control whether or not the issue to be litigated is a "challenge" within the meaning of Section 113(h). The issue is either a challenge or it is not, and that question is not determined in limine by the challenger's view of the likely outcome of the issue.[17]

---

[15] See Consent Decree, ¶ 14 (Attachment B hereto) ("Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD and the SOW.").

[16] See, e.g. Pl.'s Br. 16 ("In essence, this case does not challenge EPA's cleanup efforts so much as it seeks to allow those cleanup efforts to proceed as planned and agreed upon by EPA and as ordered by this Court.") (emphasis added and deleted from original).

[17] The argument that this suit should proceed notwithstanding Section 113(h), because the suit would not "hamper" or slow down ongoing cleanup efforts (Pl.'s Mem. 16 n.9), ignores the line of cases cited in the United States' opening brief (U.S. Mem. 15 & n.20), including the First Circuit's en banc decision in Reardon v. United States, 947 F.2d 1509 (1st Cir. 1991). The proper inquiry is whether suits such as RIRRC's, if allowed, would result in piecemeal litigation and force EPA to divert its enforcement resources away from the cleanup in order to simply protect its right to implement the chosen remedy. Id. Undoubtedly, if performing responsible parties such as RIRRC were allowed to seek judicial review whenever they wanted to obtain assurances in the form of declaratory judgments that they were in compliance with CERCLA and a consent decree (and protected from state law) when implementing the selected remedy, that (continued...)

## IV. DISMISSAL IS WARRANTED BECAUSE RIRRC HAS NOT DEMONSTRATED THAT THE ATTORNEY GENERAL WAS PROPERLY SERVED.

In an effort to show that service of process be performed on the Attorney General of the United States, RIRRC presents a certified mail receipt indicating that mailing was performed on the office of the United States Attorney for the District of Columbia. See Pl.'s Mem., Attach. B.

This does not demonstrate that the Attorney General was properly served. Rule 4(i)(1)(B) plainly requires "sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States at Washington, District of Columbia." The United States Attorney for the District of Columbia is not the Attorney General, and Rule 4(i) does not permit service on one of many federal offices or Department of Justice components that are located in the District of Columbia. Accordingly, dismissal of the Complaint against EPA is warranted pursuant to Rule 12(b)(5).

## CONCLUSION

For the foregoing reasons, and those set forth in the United States' opening memorandum, the Court should grant the United States' motion to dismiss the Complaint against EPA.

---

[17](...continued)
could result in a wave of lawsuits by performing parties, and severely divert EPA's resources away from the ongoing cleanup.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

Dated: February 2, 2006

STEPHEN E. CROWLEY
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986
Tel: (202) 514-0165
Fax: (202) 514-8865
Stephen.Crowley@usdoj.gov

Attorneys for the United States

Of Counsel:

M. Gretchen Muench
Senior Enforcement Counsel
U.S. Environmental Protection Agency – Region I
One Congress Street, Suite 1100
Boston, MA 02114-2023
Tel: (617) 918-1896

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 2nd day of February, 2006, served a true and correct copy of the foregoing REPLY MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION TO DISMISS on all counsel of record, by first-class mail, postage prepaid, as follows:

Patricia K. Rocha
Adler Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

Richard W. Sherman
Raymond M. Ripple
Edwards Angel Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

John A. Langlois
RIDEM Office of Legal Services
235 Promenade Street, 4th Floor
Providence, RI 02908-5767