UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND RESOURCE RECOVERY
CORPORATION,
                          Plaintiff,

        v.                                                    CA 05-451ML

RHODE ISLAND DEPARTMENT OF
ENVIRONMENTAL MANAGEMENT, by and
through its Director, W. MICHAEL SULLIVAN,
and UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, NEW ENGLAND
REGION, by and through its Regional
Administrator, ROBERT W. VARNEY,
                          Defendants.

MEMORANDUM AND ORDER

        This matter is before the Court on Defendant United States Environmental Protection

Agency's ("EPA") Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(5) of the Federal

Rules of Civil Procedure.  For the reasons stated below, Defendant EPA's Motion is granted.

I. Background

        Nearly ten years ago, in October 1996, then-Senior U.S. District Judge Raymond J.

Pettine approved and entered a Consent Decree agreed to by EPA and Rhode Island Solid Waste

Management Corporation ("RISWMC"), the predecessor of Rhode Island Resource Recovery

Corporation ("RIRRC"), to resolve the problem of groundwater contamination in the area

1

surrounding the Central Landfill Superfund Site in Johnston, Rhode Island.  Relevant provisions

of the Consent Decree include its "retention of jurisdiction" section, which provides that the

court that approved the Decree would retain jurisdiction

> over both the subject matter of this Consent Decree and the Settling Defendant for
> the duration of the performance of the terms and provisions of this Consent
> Decree for the purpose of enabling any of the Parties to apply to the Court at any
> time for such further order, direction, and relief as may be necessary or
> appropriate for the construction or modification of this Consent Decree, or to
> effectuate or enforce compliance with its terms, or to resolve disputes in
> accordance with Section XX (Dispute Resolution) hereof.

(Consent Decree ¶ 110.)  The "dispute resolution" section referenced above provides that the

dispute resolution procedures articulated in the Decree shall be "the exclusive mechanism to

resolve disputes between EPA and Settling Defendant arising under or with respect to this

Consent Decree."  (Consent Decree ¶ 73.)  The procedures outlined in this section describe a

period of informal dispute resolution giving way to a more formal administrative process, with

judicial appeal as the final review mechanism.  (Consent Decree ¶¶ 74-80.)

    One of the remedial activities required by the Consent Decree was the construction by

RIRRC of an impermeable cap over one section of the landfill.  In its completion of the cap,

RIRRC used processed bottom ash ("PBA"), some of which was generated outside of Rhode

Island.  RIRRC used the PBA as a fill material to layer between the landfill waste and the

impermeable cap.

    On or about August 16, 2005, the Rhode Island Department of Environmental

Management ("RIDEM") issued a Notice of Intent to Enforce to RIRRC in which it indicated the

use of out-of-state PBA violated state law.  In October 2005, RIDEM obtained a search warrant

from the Rhode Island District Court which authorized it to enter the Central Landfill and take

2

samples of the fill materials. RIRRC alleges in its Complaint that while taking these samples, RIDEM tore the impermeable cap, thereby exacerbating the release of hazardous substances from the site. According to RIRRC's Complaint, RIDEM has taken the position that RIRRC's use of out-of-state PBA constitutes unlawful disposal of out-of-state waste in violation of R.I. Gen. Laws § 23-19-13.1(a) (2000) and disposal at an unlicensed solid waste management facility in violation of R.I. Gen Laws § 23-18.9-5 (1995).

Plaintiff RIRRC filed its Complaint in this Court on October 26, 2005. It seeks a declaratory judgment stating essentially that RIDEM is barred and preempted from enforcing state laws and regulations within the Central Landfill Superfund Site, and that the sole remedy RIDEM has against RIRRC is to appeal to EPA to enforce the Consent Decree. RIRRC seeks no relief from EPA, nor alleges any wrongdoing on its part; it asserts only that EPA has an interest in the proceeding which requires it to be named in the declaratory judgment action. Along with the Complaint, RIRRC filed a Motion for Preliminary Injunction, requesting the Court enjoin RIDEM from requiring RIRRC to obtain permits, licenses or state approval for its remediation work at the site, from entering the landfill site, and from commencing any kind of proceeding (civil, administrative, or criminal) against RIRRC concerning the landfill site. Defendant RIDEM filed its Answer on November 15, 2005, but has yet to file an opposition to the Motion for Preliminary Injunction. Defendant EPA filed a Motion to Dismiss on December 27, 2005. The Court limits its discussion to the Motion to Dismiss filed by Defendant EPA.

## II. Standard of Review

In challenges to subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules

3

of Civil Procedure, the plaintiff bears the burden of establishing jurisdiction. <u>Thomson v.</u>
<u>Gaskill</u>, 315 U.S. 442, 446 (1942). In what is often called a "sufficiency challenge" under Rule
12(b)(1), Defendant EPA does not target the factual basis of Plaintiff's complaint, but rather asks
the Court to determine whether, with all reasonable inferences drawn in Plaintiff's favor, the
factual allegations propound an adequate basis for subject matter jurisdiction. <u>Valentin v.</u>
<u>Hospital Bella Vista</u>, 254 F.3d 358, 363 (1st Cir. 2001).

Defendant's request for dismissal pursuant to Rule 12(b)(5) asks the Court to terminate
the action as to EPA for insufficient service of process. Because Defendant EPA has challenged
the service here, the burden lies with Plaintiff to demonstrate sufficient process and service.
<u>Suegart v. U.S. Customs Service</u>, 180 F.R.D. 276, 278 (E.D. Pa. 1998).

### III. Discussion

### 1. Insufficient Service of Process

EPA's claim that service was not properly effected is supported by Plaintiff's failure to
document that the United States Attorney General was served, as is required by Rule 4(i)(1)(B)
of the Federal Rules of Civil Procedure. At oral argument on February 6, 2006, counsel for
Plaintiff represented that the error in service has been cured. In view of the Court's ruling on the
Rule 12(b)(1) claim, the Court need not tarry on this issue.

### 2. Lack of Subject Matter Jurisdiction

The basis of EPA's claim of lack of subject matter jurisdiction is Plaintiff's failure to
identify a waiver of sovereign immunity that would open EPA up to suit. As a rule, and with

very few exceptions, the sovereign is immune from suit "absent a waiver that must be 'unequivocally expressed in statutory text.'" <u>Marina Bay Realty Trust LLC v. United States</u>, 407 F.3d 418, 422 (1st Cir. 2005) (<u>citing</u> <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996)). Plaintiff's Complaint alleges federal jurisdiction based on the following three sources of jurisdiction:

1.  Section 110 of the Consent Decree entered in the 1996 litigation;

2.  Section 113(b) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended 42 U.S.C. § 9613(b); and

3.  28 U.S.C. § 1331.

To address the last basis for jurisdiction first, although 28 U.S.C. § 1331 confers federal question jurisdiction on federal District Courts, it does not by itself constitute a waiver of the United States' sovereign immunity from suit. <u>Berman v. United States</u>, 264 F.3d 16, 20 (1st Cir. 2001)("General jurisdictional statutes such as 28 U.S.C. § 1331 . . . do not waive sovereign immunity and therefore cannot be the basis for jurisdiction over a civil action against the federal government."). Plaintiff cannot, therefore, base its claims of federal jurisdiction on this statute.

Section 113(b) of CERCLA reads, in relevant part, "the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter . . ." 42 U.S.C. § 9613(b). By its own terms, then, CERCLA seems to grant subject matter jurisdiction over the instant proceeding. Nevertheless, this section does not operate to waive the sovereign immunity of the United States. <u>B.R. MacKay & Sons, Inc. v. United States</u>, 633 F. Supp. 1290, 1296 (D. Utah 1986). Plaintiff's reliance on this general grant of jurisdiction to support a claim of waived sovereign immunity is misplaced. Plaintiff must instead point to a specific waiver of sovereign immunity before it may proceed against EPA in this instance. <u>Id.</u>

5

Finally, Plaintiff looks to the Consent Decree itself to get it over the sovereign immunity hurdle. While Plaintiff enumerates only Section 110 of the Consent Decree in the allegations of jurisdiction in its Complaint, in its argument, Plaintiff primarily relies on its claim that EPA waived its sovereign immunity first by suing Plaintiff in this Court, and then by entering into the Consent Decree.

Plaintiff briefly refers to Section 110 of the Consent Decree in its Memorandum of Law in Support of Opposition to United States' Motion to Dismiss as part of its introductory statements but does not fully articulate how that section would open EPA to suit in instant case. The section itself, titled "Retention of Jurisdiction," states that the court that approved the Decree would retain jurisdiction "over both the subject matter of this Consent Decree and the Settling Defendant . . . for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XX (Dispute Resolution) hereof." (Consent Decree ¶ 110.) As is clear from the language of the provision, this section authorizes only parties to the Consent Decree to seek enforcement, modification or construction of the agreement by the court, or to engage the dispute resolution mechanisms stipulated in the Consent Decree, which call for an extensive administrative process before any judicial review may take place.

Pursuant to Section 110, then, Plaintiff can only apply to the Court for relief from EPA pursuant to the Consent Decree, and only for the limited purposes articulated above. The instant action does seem to seek, at least in part, a construction of the Consent Decree, but not as a motion in the original action, and not as against EPA. These flaws are not superficial; there is a

6

real difference between naming EPA an interested party in a separate declaratory judgment action and moving for a construction of the Consent Decree under the original action.  In essence, Plaintiff seeks an order asserting the supremacy of the Consent Decree over state law, and this kind of challenge is not provided for either in Section 110 or anywhere else in the decree. Because Plaintiff is not seeking the kind of relief envisioned by Section 110, and is not requesting it in the form Section 110 allows, the "retention of jurisdiction" provision of the Consent Decree does not operate as a waiver of EPA's sovereign immunity.

Plaintiff's argument does not rely solely on the narrow ground of Section 110 of the Consent Decree; rather, it enlists the existence of the Consent Decree, and the suit that brought it into being, as evidence that EPA has voluntarily waived immunity on this issue.  Plaintiff makes this appeal in two versions, one as broad as the other is narrow; neither, however, operates successfully in this instance.  The first part of Plaintiff's argument is a broad claim that "wherever the government brings suit, it waives immunity, but only to the extent of the subject matter of the suit." (Pl.'s Mem. Supp. Opp'n 8.)  While there is a logic in the claim that "when a sovereign voluntarily seeks the aid of the courts for collection of its indebtedness it takes the form of a private suitor and thereby subjects itself to the full jurisdiction of the court[,]" United States v. Shaw, 309 U.S. 495, 501-502 (1940)(rejecting this argument), there is not support for this position in the case law.  The settled position of courts on this question is that "[t]he filing of a suit in the name of the United States does not in itself amount to a waiver of sovereign immunity, subjecting the United States to an affirmative adverse judgment on a counterclaim filed by the defendant in such suit." Waylyn Corp. v. United States, 231 F.2d 544, 547 (1st Cir. 1956).  The mere fact that EPA filed suit in the 1996 action does not clear the hurdle of sovereign

7

immunity for Plaintiff.

The narrower version of Plaintiff's argument is that EPA waived its sovereign immunity pursuant to the common law "recoupment theory" of waiver. "Recoupment is a common law, equitable doctrine that permits a defendant to assert a defensive claim against a plaintiff, arising from the same contract or transaction as plaintiff's claim, to reduce the amount of the damages recoverable by plaintiff." Berger v. North Miami, 820 F. Supp. 989, 991 (E.D. Va. 1993). In the sovereign immunity context, "recoupment theory" allows a defendant sued by the United States to assert matters in recoupment if they arise out of the same transaction or occurrence which is the subject matter of the government's suit, and only to the extent of defeating the government's claim, not to the extent of a judgment against the government which is affirmative. Frederick v. United States, 386 F.2d 481, 488 (5th Cir. 1967).

In the instant case, it is not at all clear to the Court that RIRRC's suit, in which it seeks to join EPA as an interested party, is a recoupment action. Plaintiff argues that its declaratory judgment action, which seeks primarily to stop the state from enforcing its laws on the Superfund Site and to assert the supremacy of the Consent Decree in establishing the obligation of the Plaintiff with respect to that site, is nevertheless in the nature of a countersuit against EPA, arising from the same set of facts that grounded EPA's suit in 1996. Plaintiff's argument on this point is quite thin, and hangs on generalities and references to fairness. Plaintiff avoids the facts of this dispute, which indicate that this action does not arise out of the same transaction or occurrence as EPA's action in 1996, nor is it in the nature of a counterclaim which seeks only to reduce the amount of EPA's recovery without requesting an affirmative judgment against EPA. The facts required to resolve this dispute, which concerns whether RIRRC is subject to state law

8

with regard to the Superfund Site, are not the same facts involved in the original litigation, which

concerned whether RIRRC was liable for costs incurred by EPA in response to the release of

hazardous substances at the Superfund Site and whether RIRRC was required to perform

remediation at the Superfund Site.  The instant action is, therefore, not a counterclaim for

recoupment and does not qualify for the recoupment theory of waiver.  Without a waiver of

sovereign immunity, Plaintiff cannot bring EPA within the jurisdiction of this Court.


IV.  Conclusion

For the reasons stated above, Defendant EPA's Motion to Dismiss is GRANTED.


SO ORDERED.

_Mary M. Lisi_

Mary M. Lisi

United States District Judge

March  7  , 2006