**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RHODE ISLAND RESOURCE RECOVERY CORPORATION** | : | |
| **Plaintiffs** | : | |
| vs. | : | **C.A. No. 05-451ml** |
| **THE RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, by and Through its Director, W. MICHAEL SULLIVAN and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, NEW ENGLAND REGION, by and through its Regional Administrator, ROBERT W. VARNEY,** | : | |
| **Defendants** | : | |

**OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION**

The State of Rhode Island (howsoever denominated in the caption) hereby objects to the Motion for Preliminary Injunction.

Respectfully Submitted,

STATE OF RHODE ISLAND
By its Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Michael Rubin, #3656
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Extension 2116
(401) 222-3016 (fax)

**CERTIFICATION**

I, the undersigned, hereby certify that a copy of the foregoing was mailed to those listed below, on this 22nd day of March, 2006.

Patricia K. Rocha, Esq.
R. Bart Totten, Esq.
Kristen W. Sherman, Esq.
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

John A. Langlois, Esq.
Deputy Chief Legal Counsel
DEM – Office of Legal Services
235 Promenade Street
Providence, RI 02908

Richard A. Sherman, Esq.
Raymond M. Ripple, Esq.
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RHODE ISLAND RESOURCE RECOVERY CORPORATION** | : | |
| **Plaintiffs** | : | |
| **vs.** | : | **C.A. No. 05-451ml** |
| **THE RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, by and Through its Director, W. MICHAEL SULLIVAN and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, NEW ENGLAND REGION, by and through its Regional Administrator, ROBERT W. VARNEY,** | : | |
| **Defendants** | : | |

**STATE OF RHODE ISLAND'S**
**MEMORANDUM IN SUPPORT OF OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

Regardless of the underlying merits of any pending or future prosecution, a great principle is at stake: a federal court may not pre-emptively enjoin a state criminal prosecution and related activities. The injunction motion essentially seeks to have this Court do this and must, therefore, be denied in full.

## FACTS AND PROCEEDINGS

On May 16, 1996, the Plaintiff and the United States, executed a Consent Decree to which Rhode Island was not a party, requiring the plaintiff to clean up hazardous substances present on a portion of the Central Landfill, owned and operated by the plaintiff in Johnston, Rhode Island.

On or about August 16, 2005, Rhode Island issued a Notice of Intent to Enforce to the Plaintiff, concerning the use of ash at the site. Thereafter, on October 12, 2005, Rhode Island obtained a search warrant from the Rhode Island District Court authorizing Rhode Island to enter onto the site and to obtain samples of ash and soils. The State did so.

The Plaintiff argues that its use of ash is legal, partly on federal pre-emption grounds and partly on grounds of a letter (the O'Neil letter) by the Rhode Island Attorney General dated 1989.

Plaintiff now moves for a preliminary injunction prohibiting the State from (1) requiring plaintiff to obtain a state permit with respect to the site; (2) entering onto the site; and (3) commencing or engaging in any civil, administrative or criminal proceeding with respect to the site.

## ARGUMENT

### I. YOUNGER v. HARRIS REQUIRES THIS COURT TO DENY THE INJUNCTION SINCE, FOR THE PURPOSES OF THAT CASE, A STATE CRIMINAL PROCEEDING IS PENDING BY VIRTUE OF THE ISSUANCE OF A SEARCH WARRANT

#### A. Younger Bars Federal Injunctions Against Pending State Criminal Proceedings.

In Younger v Harris, 401 U.S. 37 (1971), the Court held that injunctive relief is generally barred in cases involving pending state criminal prosecutions. The Court proceeded to explain that there is ordinarily no irreparable injury if the threat to plaintiff's federally protected rights can be eliminated by the defense of a single criminal prosecution, and "even irreparable injury is insufficient unless it is 'both great and immediate". *Id.* at 45. The Court said that the possibility of a "chilling effect" does not in and of itself justify federal intervention. *Id.* at 50. A federal

injunction can run against a pending state criminal prosecution only on a "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Id.* at 54.

**B. A State Criminal Prosecution Is Deemed Pending Where A Search Warrant Has Been Issued.**

Notwithstanding the broad sweep of its reasoning, discussed below, the bare holding of the Younger case, as reiterated in Samuels v. Mackell, 401 U.S. 66 (U.S. 1971), is that "a federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except in very unusual situations . . .." *Id.* at 69. Thus, the specific narrow holding of Younger, taken literally, applies only where the state proceeding is already pending.

This requirement is met here. It has been directly held that a "pending state proceeding" has begun when the state attorney general executes a search warrant authorized by a judge during a criminal investigation, prior to arrest or indictment. Nick v. Abrams, 717 F.Supp. 1053, 1056 (S.D.N.Y. 1989).

As another example, in Kaylor v. Fields, 661 F.2d 1177 (1981), the Eighth Circuit held that a federal court, sitting in equity, should decline to hear a constitutional challenge once subpoenas have been issued pursuant to a prosecutor's subpoena power. Similarly, courts have abstained from hearing actions once there have been grand jury subpoenas. See, *e.g.*, Craig v. Barney, 678 F.2d 1200 (4th Cir.), *cert. denied,* 459 U.S. 860 (1982); Texas Ass'n of Business v. Earle, 388 F.3d 515 (5th Cir. 2004); Law Firm of Daniel P. Foster, P.C. v. Dearie, 613 F.Supp. 278, 280 (E.D.N.Y.1985); Notey v. Hynes, 418 F.Supp. 1320, 1326 (E.D.N.Y. 1976).

Finally, common sense dictates that a criminal investigation is an integral part of a criminal proceeding. Without subpoenas, grand jury investigations and searches pursuant to search warrants, prosecutors seldom could amass the evidence necessary to commence criminal actions. Permitting the targets of state criminal investigations to seek injunctions in federal

court, after subpoenas or search warrants (albeit prior to their indictment or arrest), would do as much damage (and, perhaps, even more damage considering that the states would be deprived of the power to even discover crimes) to the principles of equity, comity, and federalism as allowing federal courts to enjoin ongoing state criminal trials; this logic gains force when one considers that such trials are merely the fruits of such subpoenas or search warrants. Cf. Barr v. Abrams, 641 F.Supp. 547, 554 (S.D.N.Y.1986) ("Federal courts cannot permit the civil rights action to be used as a combative defense against a state criminal prosecutor's conduct of an investigation."), *aff'd*, 810 F.2d 358 (1987).

## II. THE POLICIES ANIMATING YOUNGER v. HARRIS REQUIRE THIS COURT TO DENY THIS INJUNCTION EVEN IF THE COURT BELIEVES THAT NO FORMAL PROSECUTION HAS YET COMMENCED

Even assuming, *arguendo*, that the activities at issue here do not fit into the holding of Younger, due to any factor of timing (any supposed lack of a pending state prosecution), the underlying policies of that precedent still militate strongly against injunctive relief.

### A. As Background, Younger Rests On Profound Principles Of Equity, Comity, And Federalism.

The Court's specific ruling, in Younger v Harris, 401 U.S. 37 (1971), that it is improper for a federal court to enjoin an ongoing state court criminal prosecution is not the only import of the opinion. The theoretical underpinnings are highly instructive.

The Court so ruled because of "the fundamental policy against federal intervention with state criminal proceedings" and "the absence of the factors necessary under equitable principles to justify federal intervention." *Id.* at 46. The Court gave the name, "Our Federalism," to the concept of comity that was at the heart of its decisions in Younger. Justice Black wrote that, as between the federal and state courts, the traditional equitable reluctance to interfere with criminal prosecutions was reinforced by an even more vital consideration:

> [T]he notion of 'comity', that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as 'Our Federalism,' and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of 'Our Federalism.' . . . What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Government, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan, 'Our Federalism,' born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future.

*Id.* at 44-45.

Thus, the overall background for Younger is, of course, the system of "dual sovereignty" established by the Constitution, a concept that the Court has perennially reinforced in the years since Younger. See, e.g., Gregory v. Ashcroft, 501 U.S. 452, 457 (1991); Printz v. United States, 521 U.S. 898, 918-20 (1997). Although the states surrendered many powers to the new federal government, they retained "residuary and inviolable sovereignty." THE FEDERALIST NO. 39, at 245 (J. Madison). As this Court has stated, such principle undergirds "the fundamental principle of comity between federal courts and state government . . .." Tomaiolo v. Transam. Corp., 131 F. Supp. 2d 280, 289 (D.R.I. 2001), aff'd 281 F.3d 1 (1st Cir. 2002). See also Mitchum v. Foster, 407 U.S. 225, 243 (1972) ("principles of equity, comity, and federalism must nonetheless restrain a federal court").

**B. The Younger Policies Apply To Pre-Indictment Situations.**

It follows that Younger's concerns are broadly applicable. Although, classically, Younger applies to formally pending state prosecutions (which, the State argues, *supra*, is the actual situation here), the scope of the judicial policy that the case represents is not so limited. The relief that Younger denied is at least functionally equivalent to the request being made by the plaintiff here. Based solely on plaintiff's actions in Rhode Island (including acts other than a mere violation of the out-of-state waste ban), plaintiff could be the subject of a Rhode Island investigation. Plaintiff now asks this Honorable Court to prevent any such investigation. Thus plaintiff seeks to immunize itself from even the *discovery* of its misdeeds. Thus, even if (notwithstanding the arguments made earlier in this Memorandum) Younger does not directly dictate that this Court must deny the motion, the underlying policies of comity and federalism strongly counsel against any such injunction as an injudicious attempt to interfere with the judicial and pre-judicial processes of a sovereign state.

**a. The Younger policy applies to pre-prosecution investigative activities.**

The policy behind the rule is *not* limited to cases such as Younger itself, in which the lower court had enjoined the district attorney from further prosecution of a then-pending action against the plaintiff. By its reasoning, the purpose of the rule also applies whenever the orderly course of state prosecutions would be seriously hindered by piecemeal federal determination of issues that arise during the course of state proceedings.

Younger itself contains the seeds of this expansion. *First*, is the explicit insistence of the Court, that it was leaving open the possibility that federal courts might abstain if there were no pending state prosecution at the time the federal action began. *Second*, the principal precedent on which the Court relied, the case Fenner v. Boykin, 271 U.S. 240 (1926), dealt, as Younger

itself recognized, with "state criminal proceedings not yet formally instituted" and the Court went on to cite five other cases "involving [mere] threatened prosecutions." *Id.* at 45. This is reinforced in later cases.

1. The Steffel case

The question of injunctive relief regarding pre-prosecution activity was largely resolved by strong implication in Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209 (1974). Steffel allowed a declaratory relief claim to go forward in the pre-prosecutorial setting, though only on limited grounds. The Court, in Steffel, relied heavily on the proposition that declaratory relief is quite different from injunctive relief. Steffel laid heavy emphasis on the distinction between a declaratory judgment and an injunction, and suggested, referring to the considerations contained in Younger, that an injunction should generally not be issued even where no state action is pending. The Court was unanimous in Steffel.

Thus, strong *dicta* guides us with respect to the situation when no formal state prosecution is pending. This *dicta* tells us that injunctive relief in favor of a federal plaintiff claiming a genuine threat of enforcement is appropriate only in the rarest of circumstances. Thus, even if, strictly speaking, under the Younger doctrine, the pendency of formal state charges as of the time that the federal action is commenced were a critical factor, injunctive relief is usually inappropriate. If there is no pending state action (and assuming there were a sufficient threat of action to satisfy the predicate requirements of a genuine case or controversy), the federal court could consider a request for a declaratory judgment without regard to the Younger restrictions but, absent an extraordinary showing, should not also give preliminary, much less permanent, injunctive relief.

2. The O'Shea case

The spirit of the *dicta* in Steffel was apparently at work in another case decided during the same term. In O'Shea v. Littleton, 414 U.S. 488 (1974), the suit challenged alleged racial discrimination by the state court in setting bond, sentencing, and imposing jury fees. The attack was aimed at any criminal prosecutions that might be brought. The Court held that this "would indirectly accomplish the kind of interference that Younger v. Harris, and related cases, sought to prevent." *Id.* at 500. The Court continued:

> [T]he Court of Appeals misconceived the underlying basis for withholding federal equitable relief when the normal course of criminal proceedings in the state courts would otherwise be disrupted. The objection [to such disruption] is to unwarranted **anticipatory** interference in the state criminal process by means of continuous or piecemeal interruptions of the state proceedings by litigation in the federal courts; the object is to sustain the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.

*Id.* at 500 (emphasis added). The Court further stated:

> An injunction of the type contemplated by respondents and the Court of Appeals would disrupt the normal course of proceedings in the state courts via resort to the federal suit for determination of the claim ***ab initio***, just as would the request for injunctive relief from an ongoing state prosecution against the federal plaintiff which was found to be unwarranted in Younger.

*Id.* at 501 (emphasis added). In the same vein is the Rizzo case discussed in the next subsection.

In sum, while the Court has never explicitly extended the Younger rule, itself, to threatened prosecutions, its rationale has effectively closed the door of the federal courthouse to all injunctive challenges to state pre-prosecutorial activities, except in extraordinary circumstances.

3. The Rizzo case

O'Shea was extended two years later in Rizzo v. Goode, 423 U.S. 362 (1976). In Younger, the Court had spoken in terms of the relation between the federal court and state court proceedings. Thus, at first blush, it might have been thought to have relevance only when a federal action would interfere with the judicial branch of the state government. If so limited, then state executive action (such as investigation) leading to an indictment would be fully enjoinable. In actuality, the doctrine's philosophy has not been so limited. In this particular leading case, the Court held that the concept must also be taken into account when relief is sought against those in charge of an the executive branch of state or local government (such as agency heads with investigative powers):

> Thus the principles of federalism which play such an important part in governing the relationship between federal courts and state governments, though initially expounded and perhaps entitled to their greatest weight in cases where it was sought to enjoin a criminal prosecution in progress, have not been limited either to that situation or indeed to a criminal proceeding itself. We think these principles likewise have applicability where injunctive relief is sought not against the judicial branch of the state government, but against those in charge of an executive branch of an agency of state or local governments such as respondents have.

*Id.* at 561. In sum, recognition of the need for proper balance between state and federal authority strongly counsels restraint in issuance of injunctions against state officers engaged in the administration of the states' criminal laws.

**C. Younger Applies To State Civil Actions Brought By Public Authorities.**

The Court's concern for comity and federalism has led it to expand the protection of Younger beyond state criminal prosecutions, to civil enforcement proceedings. Huffman v. Pursue, Ltd., 420 U.S. 592, 604-05 (1975); Trainor v. Hernandez, 431 U.S. 434, 444 (1977); Moore v. Sims, 442 U.S. 415, 423 (1979). Thus, the Court has held that the Younger policies

are "fully applicable to noncriminal judicial proceedings when important state interests are involved." Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). Since civil actions are on the same footing as criminal investigations, the Younger policies strongly suggest restraint.

Therefore, the entire request should be denied — not just the request insofar as it relates to criminal prosecution.

## III. BURFORD REQUIRES THIS COURT TO DENY THIS INJUNCTION

In Burford v. Sun Oil Co., 319 U.S. 315 (1943), a federal district court, sitting in equity, was confronted with a Fourteenth Amendment challenge to the reasonableness of the Texas Railroad Commission's grant of an oil drilling permit. Because the exercise of equitable federal jurisdiction alongside state-court review had repeatedly led to "[d]elay, misunderstanding of local law, and needless federal conflict with the state policy," *Id.* at 327. The Court concluded that "a sound respect for the independence of state action require[ed] the federal equity court to stay its hand." *Id.* at 334.

From this case, and from others that relied upon it, the Court has distilled the principle now commonly referred to as the "Burford doctrine." If timely and adequate state-court review is available, then a federal court, sitting in equity, must decline to interfere with the proceedings or orders of state administrative agencies when either of two conditions are met: (1) there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; *or* (2) the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 814 (1976).

The present case, likewise, involves a state-law claim (the O'Neil letter defense) as well as federal claims that are "entangled in a skein of state-law that must be untangled before the federal case can proceed." McNeese v. Board Of Education for Community Unit School Dist. 187, Cahokia, 373 U.S. 668, 674 (1963). Burford is partly concerned with protecting complex state administrative processes from undue federal interference. More importantly, Burford calls upon federal courts to eschew consideration of an accusation (in the injunctive relief context) that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors. Federal adjudication of this sort of pre-emption claim would disrupt the State's attempt to ensure uniformity in the treatment of an "essentially local problem," Alabama Public Service Commission v. Southern Ry. Co., 341 U.S. 341, 347 (1951). Burford abstention is justified in these circumstances.

## IV. THE ANTI-INJUNCTION ACT IS A BAR

The Anti-Injunction Act, 28 U.S.C. § 2283, further complicates the plaintiff's attempt to justify an injunction. That statute provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments". A federal court may not enjoin a state proceeding unless the injunction falls within one of the three exceptions (none of which apply here; it is to be specifically noted that the State was not a party to the consent decree). While the statute does not apply to § 1983 action, here the complaint's express terms demonstrate that the plaintiff does not rely on that Civil Rights Act.

It must be noted that, while the Act only applies to pending proceedings, this requirement is met here in light of the existence of the search warrant. This argument is directly and logically linked to the argument made in heading I (with respect to the applicability of Younger).

## V. IF APPLICATION OF YOUNGER, BURFORD OR THE ANTI-INJUNCTION ACT IS PREMATURE, THEN THE MOTION DEFINITELY FAILS AS A PART OF A CLAIM BROUGHT WITHOUT STANDING

In the event that the plaintiff escapes abstention (on the grounds that no formal charges have been filed), then the plaintiff at hand still almost certainly lacks standing since any possibility of charges is merely speculative. One need look no further than Younger v. Harris, *Supra*, itself to find the source of plaintiff's dilemma. In addition to its famous announcement of the abstention rule, Younger also included a lesser-known holding refusing jurisdiction to yet-uncharged putative state defendants who seek federal relief.

In Younger, four plaintiffs (one of whom was Harris, whose name appears in the citation to the case) had obtained an injunction in the lower court against prosecutions under the California Criminal Syndicalism Act on the grounds that it was void for vagueness and overbreadth.

The Court found that three of the four plaintiffs lacked standing, as they did not have an actual, live controversy with the state and its prosecutors. Two of them were members of the Progressive Labor Party, which advocates change in industrial ownership and political change. They alleged that they felt inhibited in advocating the program of their political party through peaceful means because of the presence on the statute books of the Criminal Syndicalism Act. A third was a history instructor who alleged that he was uncertain whether his normal practice of teaching his students about the doctrines of Karl Marx might subject him to prosecution for violation of the statute. The Court refused to accept these three as proper plaintiffs:

> If these three had alleged that they would be prosecuted for the conduct they planned to engage in, and if the District Court had found this allegation to be true--either on the admission of the State's district attorney or on any other evidence--then a genuine controversy might be said to exist. But here appellees Dan, Hirsch, and Broslawsky do not claim that they have ever been threatened

> with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible. They claim the right to bring this suit solely because, in the language of their complaint, they "feel inhibited." We do not think this allegation even if true, is sufficient to bring the equitable jurisdiction of the federal courts into play to enjoin a pending state prosecution. A federal lawsuit to stop a prosecution in a state court is a serious matter. And persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs in such cases.

*Id.* at 42. Only Plaintiff Harris was actually being prosecuted under the Criminal Syndicalism Act, and only in his case did the Court reach the merits. In sum, through Younger and the companion cases, the Court has lain down rigid rules of standing and refused to accept, as appropriate plaintiffs, those persons who had not been directly threatened with prosecution, on the grounds that their fears of prosecution were necessarily imaginary or speculative.

## VI. THE CLAIM IS NOT PROPERLY PLED IN ORDER TO QUALIFY FOR THE *EX PARTE* YOUNG EXCEPTION TO SOVEREIGN IMMUNITY

Plaintiff itself essentially pleads, in paragraph 4 of its Complaint, that the defendant Rhode Island Department of Environmental Management is a state agency created by an act of the Rhode Island General Assembly. It is self-evident that the Rhode Island Department of Environmental Management has no legal existence separate and apart from the State of Rhode Island. The naming of the Department of Environmental Management must be treated as the naming of the State itself.

This violates the Eleventh Amendment and this violation is not saved by the addition of "by and through" language in the caption. There is no allegation in the body of the Complaint pertaining to Director Sullivan. The *Ex parte* Young exception to the ban on private suits against states in federal court is not met. See *Ex Parte* Young, 209 U.S. 123 (1908). The absence of any naming of the director in the allegations of the complaint is fatal.

Aside from this defect, even the caption is not formulated to meet the requirements of *Ex parte* Young exception to sovereign immunity. The "by and through" formulation is in defiance of *Ex Parte* Young, 209 U.S. 123 (1908).

The entire *raison d'être* of *Ex Parte* Young is a suit against state officials in their *official* capacities. As simply re-stated in a case with similarities to the matter at bar:

> To pursue its claim for relief, Midwestern relies primarily on the doctrine of *Ex parte* Young to obtain injunctive and declaratory relief against the five Commissioners in their **official capacities**. Under *Ex parte* Young, an individual state officer may be sued in his or her **official capacity** to enjoin a prospective action under state law that would violate the Constitution. 209 U.S. 123, 159-60 (1908). . . . The doctrine is a species of legal fiction, but it is a venerable legal fiction that plays a central role in the relationship between federal law and state governments.

Midwestern Gas Transmission Co. v. McCarty, 120 F.Supp.2d 1155, 1163 (S.D. Ind. 2000).

This restatement of the doctrine flows naturally from the pronouncements of the Supreme Court:

> Thus, implementation of state policy or custom may be reached in federal court only because **official-capacity** actions for prospective relief are not treated as actions against the State. *See* ***Ex parte*** **Young**, 209 U.S. 123 (1908).

Kentucky v. Graham, 473 U.S. 159, 167 (1985) (emphasis added). Driving home the point, the Court later reiterated:

> "**[O]fficial-capacity** actions for prospective relief are not treated as actions against the State." Kentucky v. Graham, 473 U.S., at 167, n. 14; ***Ex parte*** **Young**, 209 U.S. 123, 159-160 (1908).

Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) (emphasis added).

Building on these rulings, one court has recapitulated:

> But under the doctrine announced in the landmark case of ***Ex parte*** **Young**, 209 U.S. 123, 158-59 (1908), a state official sued in his

> **official capacity** is generally not regarded as the state . . . and the case may proceed in federal court.

MacDonald v. Village of Northport, 164 F.3d 964, 970 (6th Cir. 1999) (emphasis added; citation omitted). And, another court has said:

> Under the ***Ex parte* Young** legal fiction, when an official of a state agency is sued in his **official capacity** for prospective equitable relief, he is generally not regarded as "the state" for purposes of the Eleventh Amendment and the case may proceed in federal court.

ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1188 (10th Cir. 1998).

Unanimous precedent rejects the novel pleading formulation adopted by the caption employed by the plaintiff.

In any event, regardless or the caption, the body of the complaint is deficient.

**VII THERE IS NO LIKELIHOOD OF SUCCESS ON THE MERITS DUE TO THE REASONS TO BE DETAILED LATER IN THE FORTHCOMING MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS**

A brief detailing non-pre-emption will be filed shortly containing grounds for dismissal.

Respectfully Submitted,

STATE OF RHODE ISLAND
By its Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Michael Rubin, #3656
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Extension 2116
(401) 222-3016 (fax)

**CERTIFICATION**

I, the undersigned, hereby certify that a copy of the foregoing was sent regular mail, postage pre-paid to those listed below, on this 22nd day of March, 2006.

Pamela Lopes

Patricia K. Rocha, Esq.
R. Bart Totten, Esq.
Kristen W. Sherman, Esq.
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

Richard A. Sherman, Esq.
Raymond M. Ripple, Esq.
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903

John A. Langlois, Esq.
Deputy Chief Legal Counsel
DEM – Office of Legal Services
235 Promenade Street
Providence, RI 02908