UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RHODE ISLAND RESOURCE RECOVERY CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT<br><br>Defendant. | ) | C.A. No. 05-451-ML |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and LR Cv. 56(a) of the Local Rules of this Court, Plaintiff Rhode Island Resource Recovery Corporation hereby submits its Motion for Summary Judgment. Plaintiff's Memorandum of Law In Support of its Motion for Summary Judgment is filed contemporaneously herewith.

Therefore, Plaintiff respectfully requests that its Motion for Summary Judgment be granted.

RHODE ISLAND RESOURCE
RECOVERY CORPORATION

By its Attorneys,

Patricia K. Rocha (#2793)
R. Bart Totten (#5095)
Jeffrey Techentin (#6651)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
(401) 351-4607 (Fax)
Dated: May 8, 2006

Richard A. Sherman /JKT
Richard A. Sherman (#1190)
Raymond M. Ripple (#6489)
EDWARDS ANGELL
PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on 8th of May, 2006, I caused a true and accurate copy of the within Motion for Summary Judgment to be served by hand delivery to the following counsel of record:

John Langlois, Esq.
R.I. Department of Environmental Management
Office of Legal Services
235 Promenade Street
Providence, RI 02908

Michael Rubin, Esq.
Special Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903

Kathleen A. Maloney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RHODE ISLAND RESOURCE RECOVERY CORPORATION | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 05-451-ML |
| RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Rhode Island Resource Recovery Corporation, formerly known as the Rhode Island Solid Waste Management Corporation (the "Corporation") hereby submits this Memorandum of Law in Support of its Motion for Summary Judgment on the count for declaratory judgment in the Complaint.[1]

From 1996 until the present day, the Corporation has actively been complying with the federal Consent Decree it entered into with the United States Environmental Protection Agency

---

[1] Although this Motion seeks summary judgment in the sole count of the Complaint (for declaratory judgment), it does not seek the permanent injunctive relief prayed for in the Complaint. Rather, by this Motion, the Corporation seeks only a declaratory judgment. The Corporation expects that, subject to its rights of appeal, the Defendant will abide by the terms of such a declaration and that injunctive relief would not be necessary. Accordingly, the Corporation anticipates that in the event that this Motion is granted, the Court need not address the issue of injunctive relief on either a preliminary or permanent basis.

The Defendant has recently filed its Memorandum of Law in opposition to the Corporation's motion for preliminary injunctive relief in which it argues that injunctive relief is inappropriate in this case based chiefly on abstention principles. Because the within Motion does not seek injunctive relief, those principles have no application here. See, e.g., State of Rhode Island's Memorandum in Support of Objection to Motion for Preliminary Injunction at 7 (noting the difference between declaratory relief and injunctive relief in abstention analysis). However, the Corporation did file a reply memorandum on April 10, 2006 with respect to its motion for preliminary injunctive relief in which it demonstrated that the requested injunction would be proper, reasonable and warranted.

("EPA"). This Consent Decree, which was entered as an Order of this Court on October 2, 1996, requires the remediation of the federal Superfund site that the Corporation owns in Johnston, Rhode Island. The Consent Decree sets forth the activities necessary to remediate the Superfund site in compliance with applicable federal and state environmental laws and regulations. The Consent Decree specifically provides, *inter alia*, that the Corporation is not required to obtain any permits to perform <u>any</u> portion of its remediation activities performed entirely on-site.

The Consent Decree requires the Corporation to cap the Superfund site. The Corporation utilized, among other materials, incinerator bottom ash from the SEMASS facility in Massachusetts as a sub-base for the cap. Despite the foregoing provision of the Consent Decree and federal law, on or about August 11, 2005, the Rhode Island Department of Environmental Management ("RIDEM") issued a Notice of Intent to Enforce ("NOI"), requiring that the Corporation cease use of incinerator bottom ash and provide RIDEM with all analytical results relating to the ash. Subsequently, on or about October 12, 2005, RIDEM obtained and executed a search warrant upon the site, alleging that the Corporation's use of this incinerator ash violates a state law that makes criminally punishable the disposal of solid waste generated outside the State of Rhode Island. RIDEM further alleged that the Corporation's use of this incinerator ash at the Superfund site constitutes disposal of refuse at other than a RIDEM licensed facility.

On October 26, 2005, the Corporation initiated the instant litigation seeking two forms of relief. For the purposes of this motion, the Corporation seeks a declaration from this Court that RIDEM does not have the right, power, or authority to compel the Corporation to obtain from it any permit, license, or approval for any remediation activities at the site on the grounds that (1) only those laws and regulations specifically set forth in the Consent Decree govern any remediation activities conducted entirely on-site, (2) federal preemption precludes the

Prior to reaching agreement on the terms of the Consent Decree, the Corporation completed a remedial investigation and feasibility study[3] with respect to the nature and extent of soil and groundwater contamination at the Superfund Site. (Plaintiff's Statement at ¶ 6). Additionally, in 1994, following notice and a period of public comment, the EPA issued a Record of Decision ("ROD") for the Superfund Site, which sets forth EPA's final decision regarding the required remedial action for the Superfund Site.[4] (Id. at ¶ 7). The ROD called for, *inter alia*, the construction of a multi-layer, impermeable Resource Conservation and Recovery Act ("RCRA") C-cap (hereinafter "RCRA C-cap") over the Superfund Site. (Id. at ¶ 9). During the process of development of the ROD, RIDEM reviewed the various remedial alternatives and indicated, by signing a declaration of concurrence, that it supported the selected remedy contained in the ROD. (Id. at. ¶ 8). RIDEM's declaration of concurrence was formally incorporated into the ROD as Appendix C thereto. (Id.). The Consent Decree incorporated the ROD as Appendix A thereto and required that the Corporation perform the remedial actions set forth therein, including the construction of the RCRA C-cap. (Id. at ¶ 10).

Section 8.a of the Consent Decree further provides, in order to facilitate remediation of the Superfund Site, as follows:

> *As provided in Section 121(e) of CERCLA and § 300.400(e)(1) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site.* Where any portion of the Work

---

[3] A remedial investigation and feasibility study determines the nature and extent of contamination at a site, assesses the risks, and evaluates alternative remedial actions. See 40 C.F.R. § 300.400(d), (e).

[4] Federal regulations governing the selection and implementation of response actions are set forth in the NCP. See 40 C.F.R. Part 300. According to the NCP, following the completion of the remedial investigation and feasibility study, EPA identifies a preferred alternative and presents it to the public for review and comment in a proposed plan. 42 U.S.C. § 9617(a); 40 C.F.R. § 300.430(f)(2), (3). EPA then reviews and responds to the comments, and consults with the affected state and other agencies where appropriate, before making a final remedy selection decision. 42 U.S.C. § 9617(b); 42 U.S.C. § 9621(f). This final remedy selection decision is documented in an ROD, which is made available to the public before beginning any remedial action. See 42 U.S.C. § 9617(b); 40 C.F.R. § 300.430(f)(4) – (6).

> requires a federal or state permit or approval, Settling Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

(Id. at ¶ 11) (emphasis added).

This language from the Consent Decree reflects federal environmental law set forth in CERCLA and its implementing regulations. (Id.). Section 121(e)(1) of CERCLA provides that "no Federal, State, or local permit shall be required for the portion of any removal or remedial action conducted entirely onsite, where such remedial action is selected and carried out in compliance with this section." 42 U.S.C. § 9621(e)(1). Moreover, the pertinent federal regulation, entitled "Permit Requirements," states as follows:

> No federal, state, or local permits are required for on-site response actions conducted pursuant to CERCLA sections 104, 106, 120, 121, or 122. The term *on-site* means the areal extent of the contamination and all suitable areas in very close proximity to the contamination necessary for implementation of the response action.

40 C.F.R. § 300.400(e)(1).

**2. Rhode Island state laws.**

The Rhode Island General Assembly has enacted the following two provisions relating to the disposal of solid waste (the "State Disposal Laws"). R.I. Gen. Laws § 23-18.9-5(a), enacted in 1987, provides that "[n]o person shall dispose of solid waste at other than a solid waste management facility licensed by the director, except as otherwise provided in this chapter." Moreover, R.I. Gen. Laws § 23-19-13.1(a) of the Rhode Island General Laws, first enacted in 1980, provides as follows:

> No person, firm, corporation, transfer station, or any other entity engaged in the business of collecting, disposing, sorting, recycling, processing, manufacturing, or remanufacturing of solid waste shall deposit or cause to be deposited solid waste that is generated or collected outside the territorial limits of this state at the central

> landfill.[5] Each deposit in violation of the provisions of this subsection shall be punishable by imprisonment for up to three (3) years and/or a fine not to exceed five thousand dollars ($5,000).

Also to be included in the definition of State Disposal Laws herein is the Revised Final Interim Alternate Cover Materials Policy ("Policy") issued by RIDEM that provides in Section 6.2.1.7 that incinerator ash "will be considered for use as daily cover material only." (Plaintiff's Statement at ¶ 25). The Policy permits the use of incinerator ash (without reference to the source of the waste combusted to produce such ash) as daily cover [6] if a permit or approval is obtained from RIDEM for such use. (Id.)

## B. FACTUAL BACKGROUND

The material issues of fact regarding the Corporation's claims for relief in this case are undisputed.

Prior to the construction of the RCRA C-cap at the Superfund Site, the Corporation utilized various fill materials, including but not limited to processed bottom ash ("PBA"), from both in-state and out-of-state sources in order to fill voids in, reshape, and level out the area of the Superfund Site to be capped. (Plaintiff's Statement at ¶ 12). This activity was necessary in order to construct properly the RCRA C-cap required under the terms of the Consent Decree. (Id.). The use of the PBA was consistent with the law governing this remediation. The controlling law is incorporated in and is part of the Consent Decree that specifically includes the ROD and the Scope of Work ("SOW"). (Id.). Moreover, the Corporation's use of the PBA was

---

[5] Although not advanced as a basis for granting summary judgment, it should be noted that this prohibition on deposit of out-of-state materials (R.I.G.L. § 23-19-13.1), on which RIDEM relies principally for its contention that the Corporation has acted unlawfully, pertains only to the deposit of solid waste "at the central landfill." The Superfund Site is not an operating part of the Central Landfill. Consequently, the use of incinerator ash at the Superfund Site cannot, by definition, run afoul of R.I.G.L. § 23-19-13.1.

[6] If R.I.G.L. § 23-19-13.1 prohibits the disposal of all out-of-state waste at the Central Landfill, as claimed by RIDEM, then this Policy by its terms violates such statutory prohibition.

performed with the actual knowledge of the EPA. (Id. at ¶ 14). The Corporation provided to RIDEM all information that it requested concerning the PBA used for subgrade on-site. (Id. at ¶ 13).[7]

On August 16, 2005, RIDEM issued a Notice of Intent to Enforce ("NOI") to the Plaintiff in which it threatened to apply the State Disposal Laws against the Corporation concerning the use of PBA at the Superfund Site. (Id. at ¶ 15).[8] The Corporation ceased its use of PBA for subgrade purposes at the Superfund Site two weeks before it received the NOI and so advised RIDEM. (Id. at ¶ 16). The Corporation ceased use of the PBA at this time because it had enough material to complete the project. (Id.).

On October 12, 2005, RIDEM obtained a search warrant from a Rhode Island district court, authorizing RIDEM to enter upon the Superfund Site and to obtain samples of the PBA and soil. (Id. at ¶ 17). During the execution of the search warrant, RIDEM excavated down through the RCRA C-cap, tearing it in a number of places and leaving the materials below the torn cap exposed to the elements.[9] (Id. at ¶ 18).

RIDEM has notified the Corporation that it does not have a permit or approval from RIDEM to use PBA as "controlled fill" at the Superfund Site, and that by implication one is required at the Superfund Site. (Id. at ¶¶ 20 – 21). RIDEM has further indicated that the

---

7 The Corporation required that SEMASS provide on a monthly basis sampling analyses of the PBA in accordance with applicable EPA testing protocols. Such analyses showed that the PBA did not exceed the applicable TCLP (Toxicity Characteristic Leaching Procedures) limits.

8 The Corporation's use of PBA at the Superfund Site was also well-known to RIDEM, who attended and participated in weekly meetings on the Corporation's remediation activities, at many of which the Corporation's purchase, receipt and use of PBA for the RCRA C-cap subgrade was actively discussed. Despite this actual knowledge, RIDEM did not express any objection to the use of PBA at the Superfund Suite or indicate in any way that it considered such use contrary to Rhode Island law until issuing the NOI, well after the Corporation completed its use of the PBA as subgrade. (Plaintiff's Statement at ¶¶ 14, 16). Moreover, in light of the federal preemption discussed infra, DEM has no standing to object to the use of PBA at the Superfund Site.

9 RIDEM has made no attempt to repair the torn RCRA C-cap. (Id. at ¶ 19).

Corporation's use of PBA as "controlled fill" at the Superfund Site constitutes an unlawful disposal of out-of-state generated solid waste at the Central Landfill in violation of R.I. Gen. Laws § 23-19-13.1(a), as well as disposal at an unlicensed solid waste management facility in violation of R.I. Gen. Laws § 23-18.9-5. (Id. at ¶ 22).[10]

## III. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party shall be entitled to summary judgment:

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

When ruling on a motion for summary judgment, the court must review the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the nonmoving party's favor. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002); Mesnick v. General Electric Co., 950 F.2d 816, 820 (1st Cir. 1991). For the reasons set forth below, the Corporation is entitled to judgment as a matter of law on its request for declaratory judgment.

---

[10] Although not presented as an independent ground for the entry of summary judgment, there is no question that RIDEM's attempt to characterize the Corporation's activities as unlawful is inconsistent with the prior positions of both RIDEM and the Rhode Island Attorney General's office. The Corporation has regularly used PBA generated out-of-state as daily cover at the Central Landfill with the full knowledge of RIDEM without being required to obtain any permits therefore from RIDEM.

RIDEM's earlier position – that the Corporation may freely use PBA as daily cover material without running afoul of the prohibition on the deposit of out-of-state waste at the Central landfill – is consistent with the written opinion of the Rhode Island Attorney General In Opinion No, 89-07-36 dated July 26, 1989, the Office of the Attorney General reviewed the Corporation's use of PBA as cover material and concluded that because the ash was being used as an extender for clean soil cover material, which was used in lieu of purchasing a like quantity of ground-cover material, the ash was not "waste" within the meaning of R.I.G.L. § 23-19-13.1. (Plaintiff's Statement at ¶ 24).

## IV. ARGUMENT

### A. THE CORPORATION IS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE FEDERAL LAW, NOT THE STATE DISPOSAL LAWS, GOVERNS THE SITE

CERCLA, as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (1986) ("SARA"), sets forth a comprehensive scheme for cleaning up releases and addressing threatened releases of hazardous substances. CERCLA's "primary purposes is the prompt cleanup of hazardous waste sites." Walls v. Waste Resources Corp., 761 F.2d 311, 318 (6th Cir. 1985). The EPA Administrator has been given the discretion to determine what is "necessary to protect public health or welfare or the environment." 42 U.S.C. § 9601(a)(1).

In September 1993, the EPA notified the State, through RIDEM, of negotiations with a potentially responsible party (*i.e.*, the Corporation) regarding remedial design and remedial action for the Superfund Site, and the EPA provided the State with the opportunity to participate in such negotiations in accordance with the NCP and Section 121(f)(1)(F) of CERCLA. (Id. at ¶ 6). The Corporation completed a Remedial Investigation report for the Superfund Site in June, 1993, and a Feasibility Study in December, 1993. (Id.).

During the process of development of the ROD, EPA was required to and did solicit from RIDEM its review of various alternative remedies for the Superfund Site and RIDEM's position on what applicable state standards and regulations ("ARARs") should be contained in the ROD.

42 U.S.C § 9621(f).[11] RIDEM did review the various alternative remedies for the Superfund Site, and it indicated, by signing a declaration of concurrence, that it agreed with the remedy selected by EPA and contained in the ROD. (Plaintiff's Statement at ¶ 8). RIDEM's declaration of concurrence was formally incorporated in the ROD as Appendix C thereto. (Id.). However, in the course of its participation in the development of the ROD, RIDEM did not request that the State Disposal Laws be incorporated into the ROD and the applicable standards and regulations contained therein, and EPA did not include the State Disposal laws in the ROD. Rather RIDEM merely concurred with the ROD as it now exists. (Id.)

The Consent Decree incorporates the ROD and requires the Plaintiff to perform the remedial actions set forth therein, including construction of the RCRA C-cap. (Id. at ¶ 10). Section 8.a of the Consent Decree specifically provides as follows:

> *As provided in Section 121(e) of CERCLA and § 300.400(e)(1) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site.* Where any portion of the Work requires a federal or state permit or approval, Settling Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

(Id. at ¶ 11) (emphasis added).

The SOW, which is Appendix B to the Consent Decree, specifically states that the capping portion of the remedy has been designed to meet all applicable laws and will be constructed in compliance with all statutes and regulations identified in Sections X and XI of the ROD. (Id. at ¶ 12). The State Disposal Laws were not incorporated in the SOW or the ROD.

The language of CERCLA and the legislative history of that act indicate that once the consent decree is entered by a federal court – giving the decree the force of law – alternative

---

[11] See also EPA Office of Solid Waste and Emergency Response ("OSWER") Directive 9355.7-03, dated February 19, 1992, which states in pertinent part at page 6 that with respect to the determination by EPA of ARARs, "consultation with the appropriate State . . . agency is required."

state remedies may not be pursued.[12] See 42 U.S.C § 9621(f); U.S. v. Akzo Coatings of America, Inc., 949 F.2d 1409, 1454 (6th Cir. 1991). If the laws relating to the remedy "do not become embodied in the consent decree by virtue of the state's provisions for incorporation of state ARARs, the state may only enforce against the PRPs the remedies adopted in the decree, and no others." Id. at 1454.

Therefore, based on the foregoing, it is clear that the State Disposal Laws do not and may not as a matter of law govern any remediation activity conducted entirely on the Superfund Site.

**B. THE PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE GROUNDS THAT THE STATE DISPOSAL LAWS ARE PREEMPTED WITH RESPECT TO ITS ON-SITE REMEDIATION ACTIVITIES**

The Supremacy Clause of the United States Constitution provides that federal law "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any States to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. On account of this language, "state law that conflicts with federal law is a nullity." Mass. Assoc. of Health Main. Organizations v. Ruthardt, 194 F.3d 176, 178 (1st Cir. 1999) (citing Maryland v. Louisiana, 451 U.S. 715, 746 (1981)); see New Hampshire v. Ramsey, 366 F.3d 1, 30 (1st Cir. 2004) (noting that "to the extent that state laws directly conflict with the requirements of federal law, the Supremacy Clause requires that they be given no effect."). State laws may be preempted by federal regulations as well as by federal statutes, Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 699 (1984), and several courts have held that EPA consent decrees and administrative orders may also preempt state law. See Feikema v. Texaco, Inc., 16 F.3d 1408, 1416 (4th Cir. 1994); United States v. Akzo Coatings of America, 949 F.2d at 1454; United States v. City and County of Denver, 916

[12] "When a site is cleaned up in accordance with section 121, including requirements relating to State involvement, a state may not then bring a separate action in State court to impose additional or more stringent state standards." 132 Cong. Rec. H 9, 576 (October 8, 1986).

F. Supp. 1058, 1062-63 (D. Col. 1996), aff'd, 100 F.3d 1509 (10th Cir. 1996).[13] CERCLA, as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (1986) ("SARA"), sets forth a comprehensive scheme for cleaning up releases and addressing threatened releases of hazardous substances. CERCLA's "primary purpose is the prompt cleanup of hazardous waste sites." Walls v. Waste Resources Corp., 761 F.2d 311, 318 (6th Cir. 1985). The EPA Administrator has been given the discretion to determine what is "necessary to protect public health or welfare or the environment." 42 U.S.C. § 9601(a)(1).

As this court has previously noted, the Supreme Court generally distinguishes between express and implied theories of preemption. Southern Union Co. v. Lynch, 321 F. Supp. 2d 328, 337 (D.R.I. 2004) (citing Pharmaceutical Research & Mfrs. of Am. v. Concannon, 249 F.3d 66, 74 (1st Cir. 2001)); see Ruthardt, 194 F.3d at 179. Express preemption applies where "Congress has specifically stated its intent that a federal statute should supersede any state law on the same subject." Southern Union v. R.I. Div. of Pub. Utils. and Carriers, 2006 WL 319282, at *2 (D.R.I. February 10, 2006). Implied preemption prohibits the application of state law where Congress's intent that such laws be preempted by federal law or regulation may be inferred. Id. (citing Southern Union Gas Co. v. R.I. Div. of Pub. Utils. And Carriers, 306 F. Supp. 2d 129, 133 (D.R.I. 2004)). The Supreme Court has articulated two basic scenarios justifying implied preemption:

> 1. Where the scheme of federal regulation is so comprehensive so as to make it a reasonable inference that Congress intended to occupy the field; and
>
> 2. Where Congress has not completely displaced state or local law,

[13] This Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, to examine whether, in fact, state laws and regulations are preempted by federal law. See, e.g., Aroostook Band of Micmacs v. Ryan, 404 F.3d 48, 56-57 (1st Cir. 2005) ("the Supreme Court has long recognized a federal cause of action for allegations that a state officer's enforcement of state law would violate federal rights.").

> but there is an actual conflict between the federal and state or local law, the federal law prevails in two situations:(a) where the two schemes make it a "physical impossibility" to comply with both the federal and state/local regulations, Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43 (1963), or (b) because the state or local law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67 (1941).

City of Denver, 916 F. Supp. 1058, 1062 (D. Colo. 1996). For either express or implied preemption, the relevant question is "whether Congress intended that federal regulation supersede state law." Southern Union, 2006 WL 319282, at *2.

R.I. Gen. Laws § 23-18.9-5(a) is expressly preempted by the state's failure to identify in the ROD or SOW the statute and policy at issue as a state standard that is legally applicable or relevant and appropriate, as discussed in Section IV.A above. Further, R.I. Gen. Laws § 23-18.9-5(a) is expressly preempted by the permit requirement exemption set forth in the Consent Decree, 42 U.S.C. § 9621(e)(1), and 40 C.F.R. § 300.400(e)(1). Alternatively, even if express preemption does not apply to R.I. Gen. Laws § 23-18.9-5(a), RIDEM's procurement and execution of the search warrant on the grounds that the Plaintiff has violated the State Disposal Laws presents a conflict with the language of the Consent Decree, 42 U.S.C. § 9621(e)(1), and 40 C.F.R. § 300.400(e)(1), in that the State Disposal Laws stand as an obstacle to the full accomplishment of remediation of waste at the Superfund Site and the goals of Congress.[14] Finally, for independent, but similar reasons, R.I. Gen. Laws § 23-19-13.1(a) and the Policy are preempted due to their conflict with 42 U.S.C. § 9621(e)(1), 40 C.F.R. § 300.400(e)(1) and Section 8.a of the Consent Decree.

---

[14] The Plaintiff does not claim that R.I. Gen. Laws § 23-18.9-5(a) and R.I. Gen. Laws § 23-19-13.1(a) are void generally. Instead, the Plaintiff contends that these statutes are unenforceable only with regard to the remedial activities conducted at the Superfund Site.

**1. The Corporation's Obligation to Comply with R.I. Gen. Laws § 23-18.9-5(a) is Expressly Preempted by 42 U.S.C. § 9621(e)(1), 40 C.F.R. § 300.400(e)(1), And Section 8.a of The Consent Decree.**

With limited exceptions (which do not apply in this case), the federal district courts have exclusive, original jurisdiction over "all controversies arising under CERCLA." 42 U.S.C. § 9613(b).

The Corporation submits that its obligation to comply with the licensing requirements of R.I. Gen. Laws § 23-18.9-5(a) with respect to its remediation activities at the Superfund Site is expressly preempted by federal law. "Federal law preempts state law explicitly if the language of the federal statute reveals an express intent to do so." City of Denver, 100 F.3d 1059, 1512 (10th Cir. 1996) (citing Barnett Bank of Marion County v. Nelson, 517 U.S. 25 (1996)). Preemption questions require an examination of congressional intent, which is best obtained by looking to the text of the statute itself. See Southern Union, 321 F. Supp. 2d at 338. When determining Congress' intentions, the Supreme Court has held that a court must not only consider the statute itself, but also the federal regulations that implement and explain it. See id. (citing Capital Cities, 467 U.S. at 699).

CERCLA exempts remedial actions (such as the one conducted at the Superfund Site) that are "conducted entirely on-site" from all federal, state, and local permit requirements. 42 U.S.C. § 9621(e)(1); see Monterey Bay Unified Air Pollution Control Dist. v. U.S. Dept. of the Army, 176 F. Supp. 2d 979, 990 (N.D. Cal. 2001). Specifically, the statute provides that "no Federal, State, or local permit shall be required for the portion of any removal or remedial action conducted entirely onsite . . . ." 42 U.S.C. § 9621(e)(1). Both the Consent Decree and CERCLA's implementing regulations reiterate this exemption. (Plaintiff's Statement at ¶ 11). These three bodies of federal law, both individually and collectively, explicitly preempt any state

law that imposes a permitting requirement upon a party conducting remediation activities entirely on-site at the Superfund Site.

Although the First Circuit Court of Appeals has never addressed the issue, at least one federal appeals court has referred to the permit exemption in 42 U.S.C. § 9621(e)(1) as constituting an express preemption provision. See City of Denver, 100 F.3d at 1512-13. In City of Denver, the United States obtained summary judgment on the grounds that a Denver zoning ordinance was preempted by CERCLA. The City of Denver had issued a cease and desist order upon a Superfund site's owner, asserting violations of Denver's zoning ordinances that prohibit the maintenance of hazardous waste in areas zoned for industrial use. See 100 F.3d at 1512. On appeal, the City of Denver argued that Congress did not intend to preempt local zoning ordinances. In support of this argument, Denver argued that because CERCLA contains an express preemption provision in 42 U.S.C. § 9621(e)(1), the United States could not rely on an implied conflict preemption analysis that went beyond the scope of the express preemption provision. City of Denver, 100 F.3d at 1513. In rejecting this analysis and affirming the district court's conflict preemption analysis, the court acknowledged the express nature of the preemption contained in 42 U.S.C. § 9621(e)(1), while simultaneously concluding that the express preemption provision did not preclude finding additional, implied preemption:

> Instead, Cipollone holds that implied preemption is precluded by an express preemption clause only when that clause provides a "reliable indicium of congressional intent with respect to state authority." In this case, the district court *held that the express preemption provision in § 9621(e)(1)* is not sufficiently "reliable indicium" of Congress's intent.

Id. (citations omitted) (emphasis added). In other words, because Congress did not manifest a clear intent that the express preemption provision limited the preemptive impact of CERCLA,

courts are free to examine whether implied preemption principles justify the federal law's further preemption of state law and regulations.

In this case, RIDEM issued its NOI and obtained and executed the search warrant on the grounds that the Corporation's use of PBA as fill material at the Superfund Site constitutes the unlawful disposal of waste at other than a solid waste management facility licensed by the Director. In the affidavit in support of its reasons for obtaining the search warrant, Kurt Schatz, RIDEM's Chief of the Office of Criminal Investigation, attested that "it appears that RIRRC has been using the [incinerator] ash as control fill for several years without prior approval from the [RI]DEM . . . ." (Plaintiff's Statement at ¶ 23). Mr. Schatz further attested that "a review of the [Office of Waste Management ("OWM")] files indicates that the OWM had never granted approval or received a request from RIRRC seeking approval of [incinerator] ash in the capping project." (Id.). However, it is these types of approvals that 42 U.S.C. § 9621(e)(1) and the Consent Decree explicitly state are not needed with respect to remediation activities occurring on-site. Therefore, Plaintiff is entitled to judgment as a matter of law that, with respect to remediation activities occurring entirely on-site, R.I. Gen. Laws § 23-18.9-5(a) is explicitly preempted.

2. **The Corporation's Obligation to Comply with R.I. Gen. Laws § 23-18.9-5(a) is Preempted Because it Conflicts With 42 U.S.C. § 9621(e)(1), 40 C.F.R. § 300.400(e)(1), and Section 8.a of The Consent Decree.**

Even if this Court does not conclude that R.I. Gen. Laws § 23-18.9-5(a) is expressly preempted by federal law, the Corporation's obligation to comply with this statute is preempted because it conflicts with 42 U.S.C. § 9621(e)(1), 40 C.F.R. § 300.400(e)(1), and Section 8.a of the Consent Decree. Conflict preemption exists when "'compliance with both federal law and state regulations is a physical impossibility' [or when] the state law stands 'as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress.'" Esso Standard Oil Co. v. Perez, C.A. No. 01-2012, 2005 WL 114080, at *8 (D.P.R. Jan. 20, 2005) (quoting Cal. Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 281 (1987)).

In State of New Jersey v. Gloucester Environmental Management Services, Inc., No. 84-0152, 2005 WL 1129763 (D.N.J. May 11, 2005), the court considered a conflict between a consent decree concerning the GEMS Landfill, and a site-specific statute enacted after the consent decree was entered. The consent decree required the construction of a groundwater extraction system that would discharge treated water to the municipal sewer system. The state statute effectively made compliance with the consent decree a violation of New Jersey law, for it prohibited the discharge of the treated water to the municipal sewer system. The court found that federal law - both the consent decree and CERCLA itself - preempted the state statute because the statute was an obstacle to the implementation of the consent decree, and an attempt to take the decision-making authority for the selection of the appropriate remedy from the hands of the EPA. Id. at *13. The court held that the New Jersey state law was preempted by federal law and of no further force and effect.

Although the state statute at issue in this case was not enacted solely to address conduct at the Superfund Site as was the case in Gloucester, when applied to this case, R.I. Gen. Laws § 23-18.9-5(a) has the similar effect of constituting an obstacle to the full remediation of the Superfund Site. CERCLA and its regulations, along with the Consent Decree, specifically state that the Plaintiff is not required to obtain any permits to conduct on-site remediation activities. CERCLA was enacted in order to streamline and expedite the remediation process at hazardous waste sites. See generally State of Ohio v. U.S. E.P.A., 997 F.2d 1520, 1549 (D.C. Dir. 1993). Prior to the entry of the Consent Decree, RIDEM had the opportunity to provide input regarding

the applicable laws and regulations that would apply to remediation of the Superfund Site. Despite that opportunity, however, RIDEM failed to take steps to ensure that the prohibitions and requirements of R.I. Gen. Laws § 23-18.9-5(a) should apply to the Site. See Gloucester, 2005 WL 1129763 at *13 – *14 (noting that resolving actions and the expediting of cleanups depends on the vigorous enforcement of consent decrees and that it would be contrary to CERCLA if a state were in a position to override CERCLA's remedial decisions).

Accordingly, because R.I. Gen. Laws § 23-18.9-5(a) conflicts with federal law in that it requires the Corporation to obtain a permit to use PBA at the Superfund Site, the Corporation's obligation to comply with R.I. Gen. Laws § 23-18.9-5(a) is preempted as a matter of law.

3. **R.I. Gen. Laws § 23-19-13.1(a) And The Policy Are Preempted by 42 U.S.C. § 9621(e)(1), 40 C.F.R. § 300.400(e)(1), and Section 8.a of The Consent Decree Because it Stands as an Obstacle to The Full Accomplishment of Remediation of the Superfund Site.**

RIDEM also contends that the Plaintiff's use of PBA as "controlled fill" at the Superfund Site violates R.I. Gen. Laws § 23-19-13.1(a), which prohibits the disposal of solid that is generated outside the State of Rhode Island. Moreover, RIDEM alleges in the affidavit in support of its search warrant that the Corporation's use of PBA as "controlled fill" is in violation of the Policy, which provides that PBA or other types of incinerator ash may be used only as daily cover material. The Plaintiff submits that enforcement of these prohibitions, to the extent RIDEM seeks to apply them to activities conducted at the Superfund Site, is tantamount to enforcing a permit requirement for the remedial action performed at the Superfund Site. It is therefore preempted by the Consent Decree and 42 U.S.C. § 9621(e) because it stands as an obstacle to the remediation of the Superfund Site.

RIDEM's decision to enforce R.I. Gen. Laws § 23-19-13.1(a) and the Policy with respect to the Superfund Site impedes the Plaintiff's ability to engage in an expeditious remediation of

the hazardous waste at the Superfund Site. Implicit in RIDEM's decision to rely on Section 23-19-13.1(a) and the Policy as grounds for execution of the search warrant is its position that the remedial activity at the Superfund Site cannot utilize PBA as "controlled fill" when it is obtained outside the State of Rhode Island.

Although the term "permit" is not defined in the Consent Decree, 42 U.S.C. § 9621(e), or otherwise in CERCLA, its meaning should not be limited to a piece of paper allowing a remedial action to proceed. See FDIC v. Meyer, 510 U.S. 471, 476, 114 S. Ct. 996, 1000 (1994) ("In the absence of . . . a definition, we construe a statutory term in accordance with its ordinary or natural meaning."). Instead, the permitting exemption in the Consent Decree and 42 U.S.C. § 9621(e) stands for the theory that it is not necessary to obtain the *permission* or *approval* of any authority in order to perform a remedial action under CERCLA. Accordingly, whether a state law requires the obtaining of a written permit to perform a remedial action, or whether a local law prohibits the remedial action, 42 U.S.C. § 9621(e) allows the remedial action to go forward unencumbered by the state restrictions.[15]

Indeed, cases interpreting 42 U.S.C. § 9621(e)(1) support this conclusion. See State of Ohio, 997 F.2d at 1549 (noting that "CERCLA provides for an overarching framework within which the federal Government, states, and PRPs can respond to hazardous waste releases. The statutory scheme is meant to transcend artificial geographical and legal distinctions in order to facilitate remedial action."); see generally Dedham Water Co. v. Cumberland Farms Dairy, Inc., 805 F.2d 1074, 1081 (1st Cir. 1986) (identifying as one of CERCLA's "essential purposes" that

---

[15] Importantly, the Plaintiff does not contend that the 42 U.S.C. § 9621(e) gives it the ability to engage in activities at the Central Landfill completely free of all state regulation. The Consent Decree and CERCLA only preempt conflicting state laws that affect the Plaintiff's remedial activities at the Superfund Site. The Plaintiff concedes, as it must, that the State Laws would apply to Plaintiff's conduct with respect to the remainder of the Central Landfill and its operations.

"Congress intended that the federal government immediately be given the tools necessary for a prompt and effective response to the problems of national magnitude resulting from hazardous waste disposal").

Here, the Plaintiff has been diligently remediating the hazardous waste at the Site pursuant to CERCLA and the Consent Decree, but RIDEM's enforcement of R.I. Gen. Laws § 23-19-13.1(a) and the Policy, as well as its execution of the search warrant, will hinder its ability to perform its remediation of the Superfund Site. This type of interference with a valid remedial action undertaken pursuant to CERCLA is the type of conduct that 42 U.S.C. § 9621(e)(1) is designed to prohibit.

Moreover, aside from the fact that R.I. Gen. Laws § 23-19-13.1(a) is preempted with respect to the Superfund Site on account of the Consent Decree and CERCLA, even assuming, *arguendo*, its application, the Plaintiff's use of the PBA does not constitute a violation of that law. On July 26, 1989, the Rhode Island Attorney General's Office issued an opinion letter regarding the Plaintiff's use of the PBA ("Opinion Letter"), opining that the use of out of state ash as a genuine supply product does not constitute a violation of R.I. Gen. Laws § 23-19-13.1(a). (Plaintiff's Statement at ¶ 24). The Opinion Letter states that:

> Your July 6, 1989 letter asks whether ash which is actually used by the landfill as a genuine supply product in the landfill's operations can be acquired by the landfill where that ash is produced from out-of-state sludge. You propose to use this ash, in a safe and sound manner, to serve as a ground cover in the Central Landfill in Johnston. The use of cover material, on a daily basis, is an ordinary part of your operations as a sanitary landfill facility. The answer to this questions is yes, the use of the ash for this purpose is legal. . . . Under these facts, the ash is not waste as defined in R.I. Gen. Laws § 23-19-13.1(a). Rather, it is a product which you acquire as a matter of ordinary business practice.

(Id.).

Despite this Opinion Letter, RIDEM relied on R.I. Gen. Laws § 23-19-13.1(a) as the basis for its search warrant.[16] Accordingly, regardless of whether R.I. Gen. Laws § 23-19-13.1(a) is preempted by CERCLA and Section 8.a of the Consent Decree, the Rhode Island Attorney General has concluded that the use of PBA at the Central Landfill (where R.I. Gen. Laws § 23-19-13.1 applies) as a genuine supply product is not a violation of state law. This court should be hard pressed to find that even though R.I. Gen. Laws § 23-19-13.1(a) did not apply to the Plaintiff's ordinary business activities at the Central landfill as far back as 1989, it somehow now applies to conduct undertaken to remediate hazardous waste at a CERCLA Superfund site, which is outside the geographic limitations of the strictures of the statute.

## C. RIDEM SHOULD BE ESTOPPED FROM ANY ATTEMPT TO APPLY STATE LAW THAT WAS NOT IDENTIFIED AS APPLICABLE IN A TIMELY MANNER

As described in Section IV.A above, EPA provided the State with the opportunity to participate in the negotiations of the ROD. RIDEM reviewed the ROD but did not identify or request the inclusion of the State Disposal Laws in the ROD as legally applicable or relevant and appropriate state standards that the selected remedy must comply with. Moreover, RIDEM filed its formal letter of concurrence with the ROD. (Plaintiff's Statement at ¶ 8).

The attempt by RIDEM to now enforce additional state requirements or prohibitions concerning the performance of the remedy contrary to federal statutory law and the Consent Decree almost ten years after the execution of the Consent Decree is inconsistent not only with federal law, but also creates a level of uncertainty that would adversely affect the operation of the CERCLA program by EPA, and be inconsistent with EPA's mandate to expeditiously clean

[16] Although both R.I. Gen. Laws § 23-19-13.1 and R.I. Gen. Laws § 23-18.9-5 are referenced in the affidavit in support of the search warrant, R.I. Gen. Laws § 23-19-13.1 is the only criminal statute referenced therein.

up hazardous waste sites. See OSWER Directive 9355.7-03, "Permits and Permit 'Equivalency' Processes for CERCLA On-site Response Actions," (Feb. 19, 1992).

Moreover, Section 23-18.9-5(a) was enacted in 1987, and Section 23-19-13.1 was enacted in 1980. Neither of these statutes was enacted after the Consent Decree became effective in 1996. Thus, RIDEM had full knowledge of these statutes prior to and at the time of the development of the ROD, and its failure to include them in the ROD should now bar it from trying to enforce these statutes against the Corporation after the fact.

These circumstances require that RIDEM be estopped from enforcing the State Disposal Laws against the Corporation in this context. Estoppel applies where RIDEM has "intentionally induced prejudicial reliance" by the Corporation on RIDEM's implicit representations. See El Marocco Club, Inc. v. Richardson, 746 A.2d 1228, 1234 (R.I. 2000). RIDEM's concurrence in the terms of the Consent Decree is precisely the type of "unequivocal behavior [. . .] calculated to mask the truth or lull an unsuspecting person into a false sense of security" upon which the Corporation may reasonably rely in its belief that the State had taken the position that the Consent Decree's terms, and not those of the State Disposal Laws, would govern the Corporation's activities at the Superfund Site, including any permitting requirement for the use of PBA in connection with remediation activities. Clauson v. Smith, 823 F.2d 660, 663 (1st Cir. 1987).

RIDEM's attempt to enforce the State Disposal Laws against the Corporation at this late date is not based on any issue of environmental protection, for the Consent Decree and the ROD, the latter of which RIDEM expressly concurred with in 1994, provide all the environmental protection with regard to the selection and implementation of the remedy that is required by law. Therefore, regardless of the basis for RIDEM's enforcement actions, RIDEM should be estopped

from any attempt to enforce the State Disposal Laws against the Corporation in connection with the performance of the remedy under the Consent Decree on the Superfund Site.

## CONCLUSION

For the reasons set forth above, the Corporation respectfully requests that this Court grant its Motion for Summary Judgment on its count for declaratory judgment, by declaring that: (1) RIDEM does not have the right, power, or authority to compel the Corporation to obtain from it any permit, license or approval in order to implement or perform any aspect of the on-site remediation with respect to the Superfund Site, and is barred and preempted from doing so on account of federal law and Section 8 of the Consent Decree; (2) RIDEM does not have the right, power, or authority to act pursuant to the Search Warrant dated October 12, 2005, pursuant to any future search warrants, or pursuant to any other civil, administrative, criminal statutory or regulatory proceeding concerning the Corporation's remediation activities within the Superfund Site under the Consent Decree; (3) RIDEM is estopped from asserting that the Plaintiff is required to obtain a permit, or from exercising any search warrant for an alleged failure to obtain a permit; and (4) the sole remedy of RIDEM with regard to the performance by the Corporation of the work under the Consent Decree lies within the four corners of the Consent Decree itself, and such remedy is limited to participation through EPA in any enforcement action against the Corporation of the requirements of the Consent Decree.

RHODE ISLAND RESOURCE
RECOVERY CORPORATION

By its Attorneys,

Patricia K. Rocha (#2793)
R. Bart Totten (#5095)
Jeffrey K. Techentin (#6651)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
(401) 351-4607 (Fax)
Dated: May 8, 2006

Richard A. Sherman (#1190)
Raymond M. Ripple (#6489)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of May, 2006, I caused a true and accurate copy of the foregoing Memorandum of Law in Support of Motion for Summary Judgment to be served by hand delivery to the following counsel of record:

John Langlois, Esq.
R.I. Department of Environmental Management
Office of Legal Services
235 Promenade Street
Providence, RI 02908

Michael Rubin, Esq.
Special Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903