STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
COMPLAINT TO SEARCH AND SEIZE PROPERTY / OR PERSON

To Richard Gabriel Justice of the Supreme, Superior Court, or Judge of the District Court of the State of Rhode Island.

a) Kurt A. Schatz, Chief of the Office of Criminal Investigation, Member of the Rhode Island Department of Environmental Management.

b) ........................ a person authorized by law to bring complaints for violation of the law which it is my responsibility to enforce a person who has right to possession of the property stolen, embezzled, or obtained by false pretense or pretenses:

ON OATH COMPLAINS THAT:

(1) Certain property has been stolen or embezzled, or obtained by false pretenses, or pretenses, with intent to cheat or defraud within this state or elsewhere.

(2) Certain property has been kept, suffered to be kept, concealed, deposited, or possessed in violation of law, or for the purpose of violating the law;

(3) Certain property is designed or intended for use, or is or has been used in violation of law, or as a means of committing a violation of law;

(4) Certain property contains evidence of a crime

and prays that a warrant to search for and seize said property/person be issued and if the same be subject to forfeiture, that the property be forfeited.

The person/property or articles to be search for and/or seized is described as follows:
Samples of incinerator ash

The name of the owner or keeper, thereof (if known) is: Rhode Island Resources Recovery Cooperation

The place or person to be searched is described as follows: The northern section of areas 5 & 6 of the Central Landfill Superfund site's Phase I, Zone 5 located at the Rhode Island Resources Recovery Cooperation 65 Shun Pike, Johnston, Rhode Island.

Your complainant prays that said warrant may be served in the nighttime for the reason that: N/A

Subscribed and sworn to before me:

10/12/05
Date

Judge/Justice

Complainant

# SEARCH WARRANT

| State Ex rel | Member of the Rhode Island Department of Environmental Management, Office of Criminal Investigation: Chief Kurt A. Schatz | County: Providence |
|---|---|---|
| vs. Respondent Rhode Island Resources Recovery Cooperation 65 Shun Pike, Johnston, Rhode Island. | | To: An officer authorized by law to execute the within warrant |

Complaint and affidavit having been made to me under oath, and as I am satisfied that there is probable cause for the belief therein set forth that grounds of issuing a search warrant exist, you are hereby commended diligently to search the place or person herein described for the property specified and to bring such property articles, and to summon the owner or keeper thereof, if any be named in the complaint, if to be found by you, to appear before the District Court in the district where such property shall have been seized, namely the 6th Division of the Court of Rhode Island.

Place or person to be search: The northern section of areas 5 & 6 of the Central Landfill Superfund site's Phase I, Zone 5 located at the Rhode Island Resources Recovery Cooperation 65 Shun Pike, Johnston, Rhode Island.

Property or articles to be search for: Samples of incinerator ash

Name of owner, or keeper, thereof if known to complainant: Rhode Island Resources Recovery Cooperation

Said warrant shall be served in the daytime - may be served in the nighttime - within seven (7) days from the issuance hereof, AND IF NOT SERVED WITHIN SAID TIME TO BE RETUNRED FORTHWITH TO A JUDGE SITTING IN THE ABOVE-NAMED COURT.

Property seized by you hereunder shall be safely kept by you under the direction of the Court so long as may be necessary for the purpose of being used as evidence in any case. As soon as may be thereafter, if the same be subject to forfeiture, such further proceedings shall be had thereon for forfeiture as is prescribed by law.

Hereof fail not and MAKE TRUE RETURN PROMPTLY OF THIS WARRANT TO A JUDGE THERE SITTING with your doings thereon, accompanied by a written inventory of any property taken to a judge sitting in the above-named court.

Issued at Providence in the county of Providence this 12 day of October A.D. 2005 @ 3:14 p.m.

Judge of the District Court
~~Justice of the Supreme/Superior Court~~

AFFIDAVIT

Your affiant upon oath states that he has reason to believe and does believe that grounds for such warrant exist and states the following facts on which such belief is founded on the following affidavit.

I, Kurt A. Schatz, being duly sworn due depose and say:

I am the Chief of the Office of Criminal Investigation and a Commissioned Environmental Police Officer with the state of Rhode Island, Department of Environmental Management. I have been a member of the Department of Environmental Management for approximately 30 years and have been the Chief of the Office of Criminal Investigation for approximately six years.

The Department of Environmental Management, Office of Criminal Investigation is responsible for investigating criminal violations of the Rhode Island General Laws (RIGL) relating to the Hazardous Waste Management Act and the Refuse Deposal Act.

I am authorized the by the director of the Department of Environmental Management to exercise all of the authorities established by the laws of the state of Rhode Island relating to the Hazardous Waste Management Act, the Refuse Disposal Act, and relevant regulations of the Department of Environmental Management. I am responsible for conducting investigations of alleged criminal violations of the state environmental statutes including the Hazardous Waste Management Act, Title 23, Chapter 19.1 and the Refuse Disposal Act, Title 23, Chapter 18.9.

In support of this application for a search warrant, your affiant incorporates the following definitions from the Rhode Island General Laws, the Refuse Disposal Act.

A. § 23-18.9-7 **Definitions.** – As used in this chapter, the following terms shall, where the context permits, be construed as follows:

1) Solid Waste means garbage, refuse, and other discarded solid waste materials generated by residential, institutional, commercial, industrial, and agricultural sources, but does not include solids or dissolved material in domestic sewage or sewage sludge as defined in Chapter 6.1 of Title 46, nor does it include hazardous waste as defined in chapter 19.1 of this title, nor does it include used asphalt, concrete, Portland concrete cement, or tree stumps.

2) Solid waste management facility" means any plant, structure, equipment, real and personal property, except mobile equipment or incinerators with a capacity of less than one thousand pounds (1,000 lbs.) per hour, operated for the purpose of processing, treating, or disposing of solid waste but not segregated solid waste. Any solid waste management facility that stores waste materials containing gypsum on site over three (3) months must install and maintain an active gas collection system approved by the Department of Environment Management.

3) "Person" includes an individual, firm, partnership, association, and private or municipal corporation.

B. § 23-18.9-5 **Disposal of refuse at other than a licensed facility.** –

1) No person shall dispose of solid waste at other than a solid waste management facility licensed by the director.

2) The phrase "dispose of solid waste", as prohibited in this section, refers to the depositing, casting, throwing, leaving or abandoning of a quantity greater than three (3) cubic yards of solid waste. Used asphalt, concrete, Portland concrete cement, and tree stumps, and solid waste temporarily in a vehicle or proper receptacle at a licensed place of business of a licensed solid waste hauler for a period not to exceed seventy-two (72) hours shall not be considered solid waste for purposes of this chapter.

Your affiant incorporates the following statute relating to the disposal of solid waste originating outside of the state of Rhode Island:

§ 23-19-13.1 **Disposal of solid waste originating outside the state prohibited – Rules and regulations.** – (a) No person, firm, corporation, transfer station, or any other entity engaged in the business of collecting, disposing, sorting, recycling, processing, manufacturing, or remanufacturing of solid waste shall deposit or cause to be deposited solid waste that is generated or collected outside the territorial limits of this state at the central landfill. Each deposit in violation of the provisions of this subsection shall be punishable by imprisonment for up to three (3) years and/or a fine not to exceed five thousand dollars ($5,000).

Your affiant also includes the following Rhode Island General Law relating to the Rhode Island Resource Recovery Cooperation Act in support of this warrant application:

§ 23-19-6 **Creation, membership, and terms of the Rhode Island Resource Recovery Corporation.** – (a) There is authorized, created, and established a public corporation of the state, having a distinct legal existence from the state and not constituting a department of the state government, with the politic and corporate powers set forth in this chapter, to be known as the Rhode Island resource recovery corporation, ("the corporation") to carry out the provisions of this chapter. The corporation is constituted a public instrumentality and agency exercising public and essential governmental functions, and the exercise by the corporation of the powers conferred by this chapter shall be deemed and held to be the performance of an essential governmental function of the state

On August 19, 2005, your affiant received an inter-office memorandum from Leo Hellested, Chief of the Office of Waste Management (OWM) within the Department of Environmental Management (DEM), in reference to potential violations of out-of-state solid waste disposal at the Central Landfill by the Rhode Island Resource Recovery Cooperation (RI RRC). Chief Hellested relays that an inspection conducted on Tuesday, July 26, 2005 at the Central Landfill

revealed that ash from the SEMASS Incinerator which is located in West Wareham, MA, was being disposed as "Control Fill" in a capping project at the Central Landfill. Chief Hellested further relays that it appears that RI RRC has been using the SEMASS ash as control fill for several years without prior approval from the DEM, OWM.

Your affiant has learned that the phrase "capping project" at the Central Landfill refers to the installation of an impermeable liner with a layer of natural or man-made material of sufficient thickness, density, and composition so as to impede the passage of a fluid to a degree that will satisfy the standards required by the DEM. The term "Control Fill" refers to substitute material approved by the DEM that is used in place of clean soil to build up and stabilize the grade elevations of the slopes in order to construct the impermeable cap correctly.

Chief Hellested states in the inter-office memorandum that the RI RRC never requested permission from the DEM, OWM or the EPA to use SEMASS ash as control fill in the current project. The RI RRC had requested to use the SEMASS ash for gas-vent layer beneath the impermeable cap in August 2000. During a cursory review of documents provided by RI RRC, the OWM observed historical analytical results that showed this ash exceeded hazardous waste level limits for lead on one occasion.

Your affiant was informed by OWM, Senior Engineer Walid Ali that during an inspection of the RI RRC Central Landfill on July 7, 2005 he observed a dark colored material stockpiled on the capping project site. He was informed by Dennis aRusso, RI RRC Operation Manager that the pile was ash from the SEMASS incinerator and was being used as control fill in the capping project.

Senior Engineer Ali, not recalling if SEMASS ash had been approved by the OWM, reported his observations and conversation to his immediate supervisor Laurie Grandchamp. Supervising Engineer Grandchamp conferred with the current supervisor of the capping project, Senior Engineer Gary Jablonski, who informed her that he was led to believe by RI RRC personnel that SEMASS ash had been approved by OWM. A review of the OWM files indicates that the OWM had never granted approval or received a request from RI RRC seeking approval of SEMASS ash in the capping project.

Your affiant was informed by OWM Senior Engineer Gary Jablonski, that the capping project is located in an old section of the Central Landfill that has been identified as a Superfund site by the EPA. The capping project site is referred to as OU-I which is one of several capping phases within the Superfund site. The EPA has directed the RI RRC to install an impermeable cap over the OU-I site. The capping specifications required that the grade elevations of the slope be stabilized and built up with clean fill in order to construct the impermeable cap correctly. Normally clean gravel and sand are used as clean fill, but that has a high cost factor. It was the RI RRC's responsibility to supply the clean fill. Due to the volume of fill needed on this project, the RI RRC had submitted a request to the OWM for approval of less expensive substitute materials for clean fill. Substitute material was referred to as controlled fill.

Engineer Jablonski informed your affiant that he observed incinerator ash being utilized as control fill in the OU-I project, but can not remember the first date he observed the ash being

used as control fill. He recalls seeing the ash stock piled on the OU-I site over the winter of 2004/2005. He assumed the RIRRC had already received approval from OWM to use the ash as control fill. His first recollection of SEMASS ash being discussed by the RI RRC was at an OU-I Project meetings in March 2005.

Engineer Jablonski provided your affiant with a diagram depicting the work zones for the OU-I. See attachment A. He explained that the ash was used as control fill in the slopes on the northern side of the peak in zone 5 designated areas 5 and 6. See attachment B. Engineer Jablonski informed your affiant that the ash has been covered with approximately three to four feet of clay.

Your affiant was informed by Laurie Grandchamp, Supervising Engineer with the OWM that when she was supervising the OU-I project between 1995 and 2000 SEMASS ash was not used as control fill. She recalls that "Big Dig" soil had been used as control fill in the OU-I project during that period.

Supervisor Grandchamp informed your affiant that any substitute material to be used by the RI RRC as control fill must first be approved by the OWM. Your affiant was provided with three letters written by DEM approving the use of construction and demolition debris screenings or fines and tunnel grindings from the RI Narragansett Bay Commission's sewer project for use of as controlled fill in RI RRC projects.

Supervisor Grandchamp informed your affiant that the RI RRC had requested approval to use SEMASS ash at the RI RRC Phase II/III Landfill Gas Vent Layer in 2000. But the OWM had concerns with the analytical test results of the ash that indicated hazardous waste levels of lead and other metals. Ms. Grandchamp recalls informing the RI RRC that the SEMASS incinerator ash would not be approved.

Grandchamp provided your affiant with notes she had taken at RI RRC and RIDEM monthly coordination meetings. These notes were taken on November 8, 2000; December 6, 2000; and April 4, 2001 at the monthly meetings. The notes reflect conversations between RI RRC personnel and DEM, OWM personnel regarding the review of the RIRRC request to use SEMASS ash. The December 6, 2000 meeting notes reveal that Supervisor Grandchamp informed RI RRC personnel that, "DEM does not plan to review the SEMASS Boiler Aggregate (ash) proposal." The April 4, 2001 notes again advise that DEM will not review the SEMASS submittals until a revised cap design is received.

SE Grandchamp informed your affiant that after informing the RI RRC of the OWM denial to approve the SEMASS ash, the OWM did not receive any further proposals from RI RRC or have any further discussions regarding the use of SEMASS ash by RI RCC personnel or their representatives. It was her belief that RI RRC decided not to pursue the proposal based on OWM concerns of hazardous levels of metals and legal issues regarding the out-of-state origin of the ash.

Your affiant was provided with a Revised Final Interim Alternate Cover Materials Policy (Policy) that is on file with the OWM. An attached letter to the Policy that was received on October 8, 1999 that was sent by GZA GeoEnvironmental, Inc. consultant for RI RRC to Terry

Gray Assistant Director of DEM dated October 6, 1999 accompanied their submittal of the Revised Final Interim Alternate Cover Materials Policy. Sherry Giarrusso-Mulhearn, Executive Director of RI RRC was listed as having been sent a copy of the Policy.

The Policy includes in Section 6.2.1 a description of the material evaluation process, acceptance criteria, and storage and handling procedures for alternate daily cover material. In Section 6.2.1.1 the Policy stipulates the minimum required analytical testing and criteria for alternate daily cover material.

Section 6.2.1.7 entitled **Incinerator Ash** reads as follows: *"Incinerator ash consists of the solid residue and entrained fluids remaining after the combustion of fossil fuels potentially in combination with solid waste and or tires. __This material will be considered for use as daily cover material only__. The generator must ensure that the incinerator ash proposed for use as alternate cover material meets all the requirements listed in Sections 6.2.1 and 6.2.1.1 above. Additionally, the ash must be delivered with an adequate moisture content to prevent the generation of a dust nuisance."*

Your affiant verified with Senior Engineer Ali and Supervising Engineer Grandchamp that the Interim Alternate Cover Material Policy reflects the current policy by which DEM, OWM regulates the RI RRC. They also informed your affiant that control fill and daily alternate cover are not considered the same. Each has a different use and distinct purpose in the Landfill operations. Section 6.2.1.7 does not allow SEMASS incinerator ash to be used as control fill.

Supervisor Grandchamp informed your affiant that the SEMASS ash does not meet the required characteristics and composition of control fill based on her review of the information and analytical testing of SEMASS incinerator ash submitted to the OWM by RI RRC. According to Supervisor Grandchamp the SEMASS ash is solid waste and is not approved to be used as control fill at the Central Landfill. Based on Supervisor Grandchamp's opinion that the SEMASS incinerator ash is solid waste and generated out of state, your affiant continued his investigation regarding the source of the material.

Your affiant met with RI RRC Executive Director Sherry Giarrusso-Mulhearn. Ms. Giarrusso-Mulhearn informed your affiant that she brokered a deal with American Ref-Fuel Co. of SEMASS in 2004 for the delivery of 100,000 tons incinerator ash. The first delivery of ash to RI RRC occurred on July 8, 2004. The RI RRC planned to utilize the ash as controlled fill in the capping project of the OU-I Superfund site. Ms. Giarrusso-Mulhearn stated that it would save the RI RRC money by utilizing the SEMASS ash as control fill by not having to purchase gravel at approximately $8.00 to $10.00 per yard. There was no charge for the delivery of the ash by SEMASS to RI RRC and RI RRC did not charge SEMASS for disposing of the ash at the Central Landfill. According to a RI RRC Customer/Material Report provided to your affiant at this meeting, 82,892.70 tons of ash has been brought to RI RRC by SEMASS as of 8/18/05.

Based on the facts set fourth in this affidavit, your affiant believes that out-of-state generated solid waste is being unlawfully disposed of at the Central Landfill located at 65 Shun Pike in Johnston in violation of RIGL 23-19-13.1(a).

RAG

Your affiant prays that permission is granted to members of the DEM, Office of Criminal Investigation and ~~Office of Compliance and Inspection and contract company personnel~~ for the purpose of executing a search warrant and seizing samples of incinerator ash suspected as being out-of-state generated solid waste. The area to be searched is described as the northern portion of areas 5 & 6 in Zone 5 within the Operable Unit Phase I section of the EPA designated Superfund site. See attachment A. A backhoe provided by a state contract company will be utilized to excavate one or more sample holes not to exceed 10 sample holes. Each sample hole excavated will be approximately six feet wide by six feet long and approximately four feet in depth in order to seize sufficient samples of incinerator ash.

The samples will be analyzed for hazardous waste and solid weste characteristics by means of Toxicity Characteristic Leaching Protocol (TCLP) including all of the contaminants listed in table 1 of Title 40 of the Code of Federal Regulations and section 261.24 as well as 2,3,7,8-TCDD. This method of testing meets the American Society for Test Methods 1311 as described in EPA publication SW-846. The ash will also be tested for Polychlorinated Biphenyls (PCB's). The testing of the samples will provide further evidence of the material's contents, and whether the SEMASS ash is a hazardous waste.

Kurt A. Schatz [signature]

Chief Kurt A. Schatz
RIDEM, Office of Criminal Investigation

SUBSCRIBED AND SWORN to me before me on this 12th day of October 2005, in Providence, in the County of Providence, State of Rhode Island and Providence Plantations.

Before me,

[signature]

Judge




Figure 1
Landfill Gas Well and Air Monitoring Locations
Rhode Island Resource Recovery Corporation
Johnston, Rhode Island




WORK ZONES

FIGURE 8