UNITED STATED DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RHODE ISLAND RESOURCE RECOVERY CORPORATION *Plaintiff* | : | |
| v. | : | C.A. No.05-451-ML |
| THE RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, by and through its Director, W. MICHAEL SULLIVAN *Defendant* | : | |

RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT'S

OBJECTION TO MOTION FOR SUMMARY JUDGMENT

The Rhode Island Department of Environmental Management hereby objects to Plaintiff's Motion for Summary Judgment. In support of this objection, the Rhode Island Department of Environmental Management relies upon the Memorandum in Support of Rhode Island Department of Environmental Management's Objection to Summary Judgment, filed contemporaneously herewith, and all other materials and arguments to be properly submitted in support of the objection.

WHEREFORE, the Rhode Island Department of Environmental Management respectfully requests that Plaintiff's motion be denied.

Respectfully submitted
Rhode Island Department of
Environmental Management
By its attorney

John A. Langlois, Esq. RI Bar No. 3488
Deputy Chief Legal Counsel
DEM – Office of Legal Services
235 Promenade Street
Providence, RI 02908
(401) 222-6607
(401) 222-3378 (Fax)

Respectfully submitted
State of Rhode Island
By its attorney
Patrick C. Lynch
Attorney General

Michael Rubin, RI Bar No. 3656
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Extension 2116
(401) 222-3016 (Fax)

## CERTIFICATION

I, the undersigned, hereby certify that a copy of the foregoing was sent regular mail, postage pre-paid to those listed below, on this 18th day of May, 2006.

Patricia K. Rocha, Esq.
R. Bart Totten, Esq.
Kristen W. Sherman, Esq.
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

Richard A. Sherman, Esq.
Raymond M. Ripple, Esq.
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903

UNITED STATED DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RHODE ISLAND RESOURCE RECOVERY CORPORATION *Plaintiff* | : | |
| v. | : | C.A. No.05-451-ML |
| THE RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, by and through its Director, W. MICHAEL SULLIVAN *Defendant* | : | |

RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT'S

MEMORANDUM IN SUPPORT OF

OBJECTION TO MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

The Rhode Island Department of Environmental Management ("DEM" or the "Department") objects to Plaintiff's Motion for Summary Judgment. As the prior pleadings and memoranda in this matter already show, Plaintiff is not entitled to judgment as a matter of law and, indeed, it is the defendant (the Department) that is entitled to judgment (as requested in its recent motion to dismiss). Plaintiff has not even attempted to breach the threshold legal hurdles represented by sovereign immunity (especially the Coeur d'Alene case) and Younger abstention. Moreover, even if, theoretically, the Plaintiff has stated a viable claim, there are genuine issues as to the material facts marshaled to support that claim. Therefore, summary judgment is not warranted and the Plaintiff's motion should be denied.

## II. FACTS AND TRAVEL

Rather than reiterate, for what would be the third time, the facts giving rise to this action, the Department refers the Court to the Statements of Fact set forth in the previous pleadings filed by it.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. F. Civ. P. 56(c). An issue is "genuine" if the pertinent evidence is such that a rational fact finder could render a verdict in favor of either party and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir 1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250, 106 S.Ct. 2505, 91 L. Ed2d 202 (1986)). The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Id.* Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. F. Civ. P. 56(e).

In ruling on a motion for summary judgment, the Court shall "determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Barreto-Rivera v. Medina-Vargas,

168 F.3d 42, 45 (1st Cir. 1999) (quoting Liberty Lobby, Inc., 477 U.S. at 251-252, 106 S.Ct. 2505). The Court should review all facts and draw all reasonable inferences in a light that is most favorable to the nonmoving party. *See* Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1s Cir. 1997).

## III. ARGUMENT

### A. Coeur d'Alene and Younger defeat the Plaintiff on the grounds of sovereign immunity and abstention, respectively.

The Department incorporates the prior arguments on sovereign immunity and abstention (including related doctrines) made in the preliminary injunction opposition and made in its dismissal memorandum as if set forth here at length.

### B. State Disposal Laws Are Applicable to the Superfund Site

Plaintiff asserts in its Motion for Summary Judgment that "State Disposal Laws" do not apply to the Rhode Island Resource Recovery Corporation ("RIRRC") Superfund remedy. The Plaintiff attempts to draw this Court's attention to three specific laws that the Plaintiff defines as "State Disposal Laws". The Plaintiff then argues that because none of these three "State Disposal Laws" is specifically mentioned as an ARAR ("all applicable or relevant and

appropriate federal and state requirements"), the State has no authority to enforce these laws. Simply stated: this position is nonsense.

This assertion by RIRRC ignores the plain language of the 1996 Consent Decree between RIRRC and the U.S. Environmental Protection Agency. As the Department explained in its Motion to Dismiss filed previously in this action, the ARARs are not the entire universe of laws with which the remedy must comply. Consent Decree, Section 7. The ARARs are limited to environmental laws. *Id.* The Consent Decree requires compliance with all laws of the United States and the State of Rhode Island, as well as the environmental laws. Consent Decree, Section 7.

The arguments presented by the DEM in its Motion to Dismiss demonstrated that *all* Rhode Island statutes and laws apply to this Superfund remedy, not merely those "cherry-picked" by RIRRC. The first sentence of Section 7 of the Consent Decree required RIRRC to comply with all State and Federal laws *in addition to* the environmental ARARs set forth in the second sentence of Section 7. Consent Decree, Section 7. The Department hereby reasserts its position set forth in the Motion to Dismiss and calls the Courts attention to the Department's previous pleadings on this issue as a supplement to this objection to the Plaintiff's Motion for Summary Judgment.

Further, it should be noted that **none** of the ARARs cite to any particular Rhode Island statute. Consent Decree, Appendix A, "Record of Decision", Appendix B, "List of Tables", Tables 7-14. The list of State ARARs cites only regulations, not statutes. *Id.* Consequently, RIRRC would like to believe that the statutes do not apply.

The intent of the ARARs is to provide the parties with guidance as to the type of laws applicable with regard to the particular environmental media to be protected. Consent Decree,

Appendix A, "Record of Decision", page 46. There are ARARs applicable to groundwater protection, surface water body protection, air quality protection and hazardous waste management. *Id.* The Record of Decision cites to the specific Rhode Island regulation governing each environmental media to be protected. Consent Decree, Appendix A, "Record of Decision", Appendix B, "List of Tables", Tables 7-14. For example, one ARAR intended to protect groundwater quality at the Site requires RIRRC to comply with the DEM Groundwater Quality Regulations. *Id* at Table 8. RIRRC must also comply with several other DEM regulations applicable to the various environmental impacts from the Superfund project (DEM Air Pollution Control Regulations as to air quality, DEM Freshwater Wetland Regulations as to surface water quality, DEM Hazardous Waste Management Regulations as to hazardous waste handling and DEM Solid Waste Management Regulations as to solid waste landfill cap design). None of these ARARs mention the State statute on which the DEM Regulation is based.[1]

Unfortunately, RIRRC concludes from the absence of State statutory references in the ROD that the State statutes do not apply. The Court should draw completely the opposite conclusion. In general, all Rhode Island statutes are applicable and, in particular, the State statutes authorizing the DEM regulations apply. Consent Decree, Section 7. Therefore, the "State Disposal Laws" apply.

These particular DEM regulations are included in the list of ARARs because RIRRC and EPA agreed that RIRRC would comply with at least these Regulations when performing the remedy. Consent Decree, Section 7. The Record of Decision, however, does not restrict the applicable environmental laws to the ARARs. Consent Decree, Appendix A, "Record of

[1] The DEM Air Pollution Control Regulations are authorized by R.I. General Laws § 23-23-5. The DEM Freshwater Wetland Regulations are authorized by R.I. General Laws §2-1-20.1. The DEM Hazardous Waste Management Regulations are authorized by R.I. General Laws §23-19.1-6. The DEM Solid Waste Management Regulations are authorized by R.I. General Laws §23-18.9-1 et seq. The DEM is also authorized to promulgate any necessary regulations under R.I. General Laws §42-17.1-2.

Decision", page 46. The Record of Decision states, "Environmental laws from which ARARs for the selected remedial action are derived, and the specific ARARs, include: . . ." *Id.* The Record of Decision does not state that the list of ARARs is exclusive as RIRRC asserts. Rather, the Record of Decision uses the word "include" when describing the list of applicable environmental laws. The word "include" means that there are other environmental laws that are applicable, but that are not on the list. If the list were comprehensive, then the word "include" would not have been used in the above-quoted sentence. Therefore, the Court should refer to the plain language of the Consent Decree and not exclude applicable environmental laws merely because they are not listed in the ROD.

RIRRC would have this Court believe that the parties intended to have the Superfund remedy comply with just certain DEM Regulations, but not the Rhode Island statutes on which these Regulations are based. This argument defies logic. The State statutes require the DEM to promulgate regulations to further the intentions of the statutes.[2] The underlying statutes are the foundation for the regulations. The Court should not consider the DEM regulations in a vacuum without also considering the statutes on which the regulations are founded. RIRRC's narrow interpretation of applicable environmental laws is convenient for RIRRC, but is inconsistent with the stated objectives of the Consent Decree "to protect the public health or welfare of the environment at the Site . . . ." Consent Decree, Section 5. When the Consent Decree required RIRRC to comply with the law, it is clear that the parties intended to apply all laws necessary "to protect the public health or welfare of the environment at the Site . . . ." Restricting the applicable laws to a certain few selected by RIRRC is not consistent with the objectives of the Consent Decree. Without question, "State Disposal Laws" apply to this Site.

[2] See citations to R.I. General Laws set forth in Footnote 1.

The parties to the Consent Decree further expressed the intent to include underlying State statutes in addition to the State regulations when they used the word, "derived" in the Record of Decision to describe the scope of applicable laws. The Record of Decision states, "Environmental laws from which ARARs for the selected remedial action are derived, and the specific ARARs, include: . . ." Consent Decree, Appendix A, "Record of Decision", page 46. This language means that not only are the ARARs applicable, but also the environmental laws from which the ARARs are derived. When this language is used to determine the applicability of Rhode Island environmental laws at the RIRRC Superfund remedy, it is clear that not only the listed environmental regulations apply, but also the laws from which those regulations are derived. Therefore, the narrow interpretation of applicable law sought by RIRRC is inconsistent with the "derived from" language in RIRRC's own Consent Decree.

For the reasons set forth herein and in the Department's previous pleadings, the State Disposal Laws apply to the remediation activity at this Superfund project. RIRRC fails to demonstrate that there are no genuine issues of material fact on this subject. Therefore, the Plaintiff's Motion for Summary Judgment should be denied.

C. State Disposal Laws are not Preempted

With regard to the Plaintiff's general arguments as to preemption, the Department reasserts its position on preemption as set forth in the Department's Objection to Motion for Preliminary Injunction and the Department's Motion to Dismiss.

1 and 2. Preemption of R.I. Gen Laws § 23-18.9-5(a) is Irrelevant.

RIRRC argues in sections B(1) and B(2) of its Motion for Summary Judgment that R.I. Gen Laws § 23-18.9-5(a) is preempted by the Consent Decree and various Federal statutes. The Department responds that R.I. Gen Laws § 23-18.9-5(a) is irrelevant to this action and the Plaintiff's arguments with regard thereto should be disregarded.

RIRRC inaccurately states that the Department is requiring RIRRC to obtain a permit under R.I. Gen Laws § 23-18.9-5(a). The Plaintiff then posits in its long-winded preemption argument that such a permitting requirement is "explicitly preempted." The Court should easily deflate this overblown argument because the DEM has not invoked R.I. Gen Laws § 23-18.9-5(a) against RIRRC. Thus, whether that statute is preempted or not is irrelevant to this case.

RIRRC uses the search warrant affidavit as the basis for its position that DEM seeks to enforce R.I. Gen Laws § 23-18.9-5(a). A careful reading of the search warrant application, however, reveals that the affiant never referred to R.I. Gen Laws § 23-18.9-5(a) as the criminal violation alleged. R.I. Gen Laws § 23-18.9-5 governs the disposal of solid waste without a license. Section 2 of this statute contains the only definition of "dispose of solid waste" found in any Rhode Island statute. Therefore, the criminal investigator included the statutory definition found in the second section of R.I. Gen Laws § 23-18.9-5 in his affidavit. He never stated that he was investigating the disposal of solid waste without a license.

Indeed, the last sentence of page five of the search warrant affidavit states, "Based upon the facts set forth in this affidavit, your affiant believes that out-of-state generated solid waste is being unlawfully disposed of at the Central Landfill located at 65 Shun Pike in Johnston in violation of RIGL 23-19-13.1(a)." Plaintiff's Statement of Undisputed Facts, Exhibit D. Nowhere in the affidavit does the criminal investigator state that he is investigating a violation of

23-18.9-5. Therefore, all of Plaintiff's preemption arguments as to R.I. Gen Laws § 23-18.9-5 are misplaced and should be denied.

3. R.I. Gen Laws § 23-19-13.1(a) is not Preempted.

The Department has never required RIRRC to obtain a permit for the use of SeaMass ash as controlled fill in the Superfund remedy. As established in the Department's Motion to Dismiss and the Notice of Intent to Enforce attached thereto, the Department simply informed RIRRC that DEM approval for the ash was needed, not a permit. The Notice of Intent to Enforce was clear, "RIRRC shall only be permitted to use material(s) as controlled fill after RIRRC obtains a written approval from RIDEM." August 16, 2005 Notice of Intent to Enforce, Page 3.

RIRRC's preemption argument in this portion of its Motion for Summary Judgment definitively proclaims that any enforcement of the out-of-state waste statute is "tantamount to enforcing a permit requirement". RIRRC continues that, because permitting requirements are expressly preempted, all DEM enforcement likewise should be preempted. While creative, this argument by RIRRC is logically flawed because it is founded on the incorrect premise that any enforcement of the out-of-state waste prohibition is "tantamount to enforcing a permit requirement".

RIRRC has gone to great lengths in each of its pleadings in this case to assert that the DEM is requiring a permit for the SeaMass ash. Not one of these pleading has provided a factual foundation for this assertion, however. On the contrary, DEM has established in its Motion to Dismiss that no such permit has ever been required. The lack of a factual basis has not impeded

RIRRC's arguments that the DEM is requiring a permit and such a permit is preempted under Federal law and the Consent Agreement.

RIRRC now muddies the waters even further by asserting in this Motion that the DEM is not requiring an actual permit from RIRRC, but rather a new form of "constructive permit" by enforcing a criminal statute. This assertion that any enforcement of the out-of-state waste statute is "tantamount to enforcing a permit requirement" is beyond illogical and borders on nonsensical.

The DEM is not requiring a permit. The Rhode Island Refuse Disposal Act is very specific as to the permit application process for solid waste management facilities. R.I. Gen Laws § 23-18.9-9. Nothing DEM has required with regard to the remedial activities at the Superfund Site can be interpreted as "permitting" under Rhode Island law. The Plaintiff has failed to demonstrate how enforcing a criminal statute is the equivalent of requiring a permit. The Plaintiff cannot produce even a single case law to support this "constructive permitting" concept. Therefore, the Plaintiff's arguments regarding the preemption of the out-of-state waste statute are incorrect and the motion should be denied.

The Plaintiff also asserts in this portion of its Motion that a 1989 Opinion Letter from the Rhode Island Attorney General's Office authorized the use of out-of-state ash at the Superfund Site. This assertion is not only inaccurate, but it is irrelevant to this action.

RIRRC is seeking to enjoin DEM from enforcing State laws at this Superfund Site. RIRRC is also seeking a declaratory judgment that the State of Rhode Island is precluded from taking any civil, administrative or criminal action with regard to the Superfund Site. The 1989 Opinion Letter has nothing to do with any of the relief sought by RIRRC in its Complaint.

The 1989 Opinion Letter concluded that the Central Landfill could use out-of-state ash as cover material in the ordinary course of the operations as a sanitary landfill facility. Plaintiff's Statement, Exhibit E. In the instant action, RIRRC did not use the out-of-state ash as cover material in the ordinary course of the operations as a sanitary landfill facility. Instead, RIRRC admits to using the out-of-state ash as a *fill material* under a Superfund cap. Plaintiff's Statement, Paragraphs 12 and 16. Using ash as fill is vastly different than using ash as cover material.

The DEM Solid Waste Regulations define "cover material" as, "clean soil or earth or other material approved by the Director that is used to cover compacted solid waste in a sanitary landfill." Rules and Regulations for Composting Facilities and Solid Waste Management Facilities, SW 1.3.48 (as amended, October, 2005). The regulations proceed to describe three types of cover material used at sanitary landfills. Rules and Regulations for Composting Facilities and Solid Waste Management Facilities, SW 2.3.04 (as amended, February, 1997). "Initial cover" is six inches of clean soil used to close the working face of the landfill at the end of each working day to prevent exposure of that day's waste to the elements. *Id.* "Intermediate cover" is an additional six inches of clean soil on top of the initial cover used to cover any landfill areas that will not be actively used for six months or more. *Id.* "Final cover" is twenty-four inches of clean soil used to temporarily close a portion of the landfill that will not be used for one year. *Id.*[3]

RIRRC did not use the out-of-state ash as initial, intermediate or final cover. RIRRC used this out-of-state ash as fill material to re-grade the base layer under the Superfund cap.

---

[3] The Solid Waste Regulations cited are the most recent version of these Regulations. The Solid Waste Regulations referred to in the Consent Decree as an ARAR were issued in April of 1992. The 1992 Solid Waste Regulations contain almost identical language regarding cover material as the most recent Regulations. "Cover material" is defined in the 1992 Regulations at SW 3.23. The three types of cover are explained in the 1992 Regulations at SW 15.04. The cited portions of these sections are identical in the 1992, 1997 and 2005 Solid Waste Regulations.

Plaintiff's Statement, Paragraphs 12 and 16. The 1989 Opinion Letter only authorized to the use of out-of-state ash as cover material, not fill. Because RIRRC did not use the SeaMass ash as authorized in the 1989 Opinion Letter, the Opinion Letter is inapplicable to the facts in the instant action.

Further, RIRRC did not use the out-of-state ash in "the ordinary course of the operations as a sanitary landfill facility" as allowed in the 1989 Opinion Letter. The out-of-state ash was used as sub-base under a hazardous waste cap. Performing a hazardous waste remediation is not considered an ordinary part of a sanitary landfill operation. The Solid Waste Regulations define "sanitary landfill" as:

> a licensed land disposal site employing an engineered method of disposal of solid waste in a manner that absolutely minimizes environmental hazards, including: spreading the solid waste in thin layers, compacting the solid waste to the smallest practical volume; and applying cover material at the end of each operating day, or at such more frequent intervals as may be necessary. A sanitary landfill shall also mean a solid waste landfill. Rules and Regulations for Composting Facilities and Solid Waste Management Facilities, SW 1.3.160 (as amended, October, 2005).

This definition of a sanitary landfill does not include a Superfund remediation. Therefore, the out-of-state ash in the Superfund project was not used in the ordinary course of RIRRC's operations as a sanitary landfill facility as allowed in the 1989 Opinion Letter.[4] The 1989 Opinion Letter did not authorize such use of this ash and RIRRC's attempt to justify its use with the Opinion Letter is improper.

---

[4] Curiously, RIRRC asserts in its Summary Judgment Motion that the Superfund Site is **not** a part of the Central Landfill. Plaintiff's Memorandum in Support of Motion for Summary Judgment, page 6, footnote 5. If this is true, then RIRRC defeats its own reliance on the Opinion Letter as authority to use out-of-state waste in "the ordinary course of the operations as a sanitary landfill facility".

Indeed, the 1989 Opinion Letter is not even in effect at this time. The Revised Final Interim Alternate Cover Materials Policy referred to in Plaintiff's Motion and adopted in 1999 superseded the 1989 Opinion Letter. The Alternate Cover Policy was established by DEM at the request of RIRRC in 1999. This Policy governed the use of all alternate cover materials at Central Landfill. The Policy governed both in-state and out-of-state generated alternate cover material. Revised Final Interim Alternate Cover Materials Policy, Page 2. Therefore, the 1989 Opinion Letter was no longer controlling authority as to out-of-state cover material used by RIRRC in 2005. The 1999 Alternate Cover Policy was in effect at that time and not the 1989 Opinion Letter.

Interestingly, the Alternate Cover Policy, as proposed by RIRRC and adopted by DEM, explicitly **prohibits the use of incinerator ash for any use other than daily cover material.** Revised Final Interim Alternate Cover Materials Policy, Section 6.2.1.7. RIRRC's own proposed policy banned RIRRC from using incinerator ash as controlled fill. *Id.* RIRRC now argues that this Policy should be applied against DEM to justify the use of ash as controlled fill. This bizarre perspective is extraordinary even by RIRRC standards.

The use of the ash in the Superfund remedy is also banned in the construction specifications proposed by RIRRC for this Superfund project. The Superfund Cap Construction Specifications clearly prohibit the use of ash as controlled fill in this cap design. Central Landfill Operable Unit 1, Landfill Cap Construction Areas 5, 6 and 7 Construction Specifications, The Louis Berger Group, Inc., July 9, 2003. In Section 02220 of the Construction Specifications for this area of the Superfund cap, Part 2 entitled Controlled Fill states, "Controlled Fill shall consist of imported or processed imported material, reasonably free from rocks larger than 12 inches, from roots and other organic matter, **ashes**, cinders, trash, debris, and other deleterious

materials." *Id.* at Section 02220 (bold face added). Indisputably, the design specifications for this cap prohibit the use of ash. The Controlled Fill is supposed to be "reasonably free from . . . ash", not primarily consist of ash. RIRRC's assertions that its use of ash as Controlled Fill under the cap in 2005 was somehow authorized by the State of Rhode Island in the 1989 Opinion Letter are ridiculous. Even the cap design specifications submitted by RIRRC's own engineers prohibit the use of ash at this Superfund Site.

DEM further submits that the 1989 Opinion Letter is irrelevant to this proceeding. Whether RIRFC was authorized to use the out-of-state ash goes to the merits of any underlying administrative, civil and criminal actions that may be taken by the State. The merits of those potential (and, at this time, speculative) actions are not before this Court. The merits of any action taken by the State of Rhode Island are not before the Court because those actions are beyond the scope of the Plaintiff's Complaint. The Plaintiff's Complaint merely seeks to define the role of DEM in the Superfund remedy. The State's execution of a search warrant should not warrant an examination by the Court of the merits of any subsequent action taken by the State. Such a review by the Court is premature.

The State also submits that the Federal Court is not the appropriate forum for such a review. As set forth in its previous pleadings, the merits of any administrative, civil or criminal actions taken by the State against RIRRC should be reviewed only by the State courts. Therefore, this Court should not consider the 1989 Opinion Letter in this action.

D. DEM is not Estopped from Enforcing State Laws

RIRRC's final argument in its Motion for Summary Judgment alleges that DEM is estopped from seeking to impose the "State Disposal Laws" because (1) DEM concurred with the remedy and (2) the Consent Decree was entered in 1996 and DEM has not sought to enforce the State laws sooner. The Department responds that neither of these arguments has any merit and certainly does not warrant summary judgment.

The DEM concurrence letter was signed on June 15, 1994. At that time, the proposed Superfund remedy was merely a concept. Even a cursory review of the Consent Decree, ROD and SOW proves that the remedy to which DEM concurred had none of the specificity that would have triggered enforcement of State laws at that time. The Department should not be estopped from enforcing State laws because it agreed to the concept of the remedy in 1994.

The particulars of the cap design and the construction of the Superfund cap came years later. The specific cap design standards (including the prohibition against using ash as controlled fill) had not even been considered at the time DEM signed the concurrence letter. This is evidenced by the date on the construction specifications mentioned above. Central Landfill Operable Unit 1, Landfill Cap Construction Areas 5, 6 and 7 Construction Specifications, The Louis Berger Group, Inc., July 9, 2003. These design standards for the area of the Superfund cap where the out-of-state ash was placed were filed in July of **2003**. This area of the cap was not constructed until 2005. Therefore, DEM should not be estopped from enforcing State Disposal Laws now because it agreed to the raw concept of capping the Superfund Site twelve years ago.

Further, RIRRC argues that DEM should be estopped from enforcing the out-of state waste statute because DEM never sought to enforce the State Disposal Laws until now.

However, it is self-evident that the DEM could not have applied the out-of-state waste statute to RIRRC until the Department was aware that RIRRC was using out-of-state waste. The DEM was not aware of the use of out-of-state ash until DEM inspectors observed the ash stockpiled at RIRRC in the summer of 2005. Plaintiff's Statement, Exhibit D, Page 4. Only thereafter did DEM obtain the search warrant and commence its investigation. *Id.* As a result, DEM should not be estopped because it failed to enforce a statute before DEM was aware of the violation.

## CONCLUSION

The Motion for Summary Judgment should be denied. None of the Plaintiff's arguments have any merit and several have already been addressed in previous motions. RIRRC has failed to establish that there are no genuine issues as to any material facts and that RIRRC is entitled to a judgment as a matter of law. Because RIRRC has failed to meet its burden under Rule 56, the motion should be denied.

Respectfully submitted
Rhode Island Department of
Environmental Management
By its attorney

John A. Langlois, Esq. RI Bar No. 3488
Deputy Chief Legal Counsel
DEM – Office of Legal Services
235 Promenade Street
Providence, RI 02908
(401) 222-6607
(401) 222-3378 (Fax)

Respectfully submitted
State of Rhode Island
By its attorney
Patrick C. Lynch
Attorney General

Michael Rubin, RI Bar No. 3656
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Extension 2116
(401) 222-3016 (Fax)

**CERTIFICATION**

I, the undersigned, hereby certify that a copy of the foregoing was sent regular mail, postage pre-paid, to those listed below, on this 18th day of May, 2006.

Patricia K. Rocha, Esq.
R. Bart Totten, Esq.
Kristen W. Sherman, Esq.
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

Richard A. Sherman, Esq.
Raymond M. Ripple, Esq.
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903