UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RHODE ISLAND RESOURCE RECOVERY CORPORATION<br><br>Plaintiff, | : | |
| v. | : | C.A. No. 05-451-ML |
| THE RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, by and Through its Director, W. MICHAEL SULLIVAN<br><br>Defendant. | : | |

**RHODE ISLAND RESOURCE RECOVERY CORPORATION'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Rhode Island Resource Recovery Corporation (the "Corporation"), hereby objects to the Motion to Dismiss of the Defendant, the Rhode Island Department of Environmental Management by and through its Director, W. Michael Sullivan. In support thereof, the Corporation relies upon its supporting Memorandum of Law filed contemporaneously herewith.

Dated: May 22, 2006

PLAINTIFF, RHODE ISLAND RESOURCE RECOVERY CORPORATION
By its Attorneys,

/s/ Patricia K. Rocha

Patricia K. Rocha (#2793)
R. Bart Totten (#5095)
Jeffrey K. Techentin (#6651)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
(401) 351-4607 (Fax)

-and-

Richard A. Sherman (#1190)
Raymond M. Ripple (#6489)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of May, 2006, I caused a true and accurate copy of the within document to be served via hand delivery to the following counsel of record:

John Langlois, Esq.
R.I. Department of Environmental Management
Office of Legal Services
235 Promenade Street
Providence, RI 02908

Michael Rubin, Esq.
Special Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903

*382332_1.doc*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RHODE ISLAND RESOURCE RECOVERY CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>THE RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, by and Through its Director, W. MICHAEL SULLIVAN<br><br>Defendant. | : | C.A. No. 05-451-ML |

**RHODE ISLAND RESOURCE RECOVERY CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Rhode Island Resource Recovery Corporation (the "Corporation"), hereby submits its Memorandum of Law in Support of its Objection to the Motion to Dismiss of the Defendant, the Rhode Island Department of Environmental Management by and through its Director, W. Michael Sullivan (the "Department").[1]

Section I of the Department's Memorandum of Law, although devoid of a single citation to case law, narrowly frames the issue in this case. It is the Department's position that it may enforce state environmental laws that are not incorporated in the Consent Decree at Operable Unit 1 of the Central Landfill Superfund Site in Johnston, Rhode Island (the "Superfund Site").

[1] While the Defendant has filed its Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the tenor and substance of the Motion is more akin to a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure. Pursuant to Rule 12(b), because the Motion to Dismiss relies on material outside the pleadings in this case, the motion should be decided in accord with the standards of Rule 56, only after the Corporation has had an opportunity to present material pertinent to the motion, which in this case would be comprised of the materials submitted by the Corporation in support of its Motion for Summary Judgment. As discussed herein, under either standard this motion should be denied.

That position is directly contradicted by CERCLA, the Consent Decree and the federal court opinions analyzing the issue.

Section 9621(f)(2)(A) of CERCLA provides a specific and defined statutory scheme that allows a state to participate in determining which state environmental laws or regulations will apply at a Superfund site. Pursuant to these provisions, the state has the opportunity to agree or disagree with the inclusion or exclusion of a legally applicable or relevant and appropriate standard, requirement, criteria or limitation ("ARARs") in any remedial action at a Superfund site. Id. These state requirements become embodied into a Consent Decree. However, once a Consent Decree is entered by the Court, the state may not thereafter seek other remedies against a potentially responsible party (such as the Corporation in this case) that are at odds with the terms of the Consent Decree and may not seek to impose additional requirements or penalties for state environmental laws or regulations that are not specifically included in the ARARs in the Consent Decree. *See Missouri v. Indep. Petrochemical Corp.*, 104 F.3d 159, 162 (9th Cir. 1997) (noting that all ARARs are "frozen" as of the date of Record of Decision ("ROD")); *Colorado v. Idarado Mining Co.*, 916 F.2d 1486, 1494 (10th Cir. 1990) (holding that, by its express terms, § 121(e)(2) of CERCLA limits a state's enforcement authority to "any Federal or State standard, requirement, criteria, or limitation to which the remedial action is required to conform under this Act [CERCLA].").

Federal Courts interpreting CERCLA and addressing this issue have consistently held that "if remedies proposed by a state do not become embodied in the Consent Decree by virtue of the statute's provisions for incorporation of state ARARs, the state may only enforce against the [potential responsible parties] the remedies adopted in the decree, *and no others*." *U.S. v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1454 (6th Cir. 1991) (emphasis added). Although

*Akzo* acknowledges that CERCLA does not preempt state environmental ARARs which set higher clean up standards than the federal statute, it creates a mechanism where state environmental laws must be incorporated at the time the consent decree is entered by the court. Otherwise, all such laws will be waived. *Id.* at 1458. Here, it is undisputed that the state environmental laws that the Department seeks to enforce against the Corporation were not included in the ARARs. Accordingly, they may not be enforced since "once the consent decree is entered by a federal court . . . alternative state remedies may not be pursued . . . [since] other remedies based on state law are in effect preempted by the federal and state law embodied in the decree." Id. at 1454-55.

## I. CERCLA and the Consent Decree Preclude Enforcement of State Environmental Laws Not Contained within the Consent Decree

### A. The State's enforcement rights are limited by the Consent Decree and federal law.

The State makes the sweeping assertion that since it is not a signatory to the Consent Decree,[2] the Decree has no effect on the right of the State to enforce state laws and regulations with regard to the Superfund Site. However, this assertion blindly ignores the statutory provision in Section 121(e) of CERCLA that no federal, state or local permit shall be required for any portion of the remedial action conducted entirely on-site. 42 U.S.C. § 9621(e)(1); *see also* 40 C.F.R § 300.400(e)(1) ("No federal, state, or local permits are required for on-site response actions conducted pursuant to CERCLA sections 104, 106, 120, 121 or 122.").

The Corporation has never asserted that the Department does not have the general right to regulate the Corporation's operations at the Central Landfill in Johnston, Rhode Island (the

---

[2] Appendix C to the Consent Decree includes the June 15, 1994 signed communication from the then Director of the Department to EPA evidencing the State's concurrence with the remedies set forth therein. *See* Section E, *infra.*

"Landfill"). However, Section 121(e)(1) of CERCLA constitutes a statutory limitation on the State's right to regulate the Superfund Site, which is separate and apart from the Landfill, including remediation for work performed "entirely on-site" pursuant to the Consent Decree. Therefore, the State's attempt to enforce certain of its environmental laws, namely R.I.G.L. § 23-19-13.1(a) and the Revised Final Interim Alternate Cover Materials Policy, *in the context of a Superfund remediation for work performed "entirely on-site,"* is barred as a matter of law. *See* 42 U.S.C. § 9621(e)(1); 40 C.F.R § 300.400(e)(1).

### B. The Consent Decree requires the Corporation to comply only with those state environmental laws and regulations contained in the ARARs.

The Department posits the argument that the ARARs in the Consent Decree are not the only state laws enforceable under the Consent Decree. The Department is clearly wrong for the following reasons.

First, as cited previously, the ARARs selection process is conducted pursuant to a specific statutory scheme under CERCLA. It is designed to provide clear guidance to the responsible party, when it executes a consent decree, of its court-ordered obligations to implement the approved remedial action at a Superfund site.

Second, the Consent Decree contains numerous pages setting forth in great detail the specific ARARs that apply in this case. For the Department to argue that "all applicable laws" now include – years after the Consent Decree has been entered as an Order of this Court – state environmental laws other than those listed in the ARARs section of the Consent Decree flies in the face of this statutory scheme, and if allowed to occur, would create remedial chaos and make the Consent Decree a moving target that the Corporation would find impossible to comply with in a timely manner. *See Akzo*, 949 F.2d at 1458 (holding that "once the [consent] decree is entered, the state may not seek to impose additional penalties on the defendants for state and

federal environmental violations adequately covered by the decree"); *Idarado Mining*, 916 F.2d at 1494.

Third, the Department's suggestion that the State would have no jurisdiction to prosecute a murder at the Superfund Site or to enforce other non-environmental laws at the Superfund Site is without merit. The language of the Consent Decree, and the ARARs incorporated therein, only deal with the *environmental* remedial action to be performed at the Superfund Site, and the state laws in question only deal with whether a permit or approval from the State is required to perform that environmental remediation. Prosecuting a murder at the Superfund Site would not conflict with the remedial provisions of the Consent Decree and would not be barred. However, requiring compliance with state *environmental* laws that are not embodied within the Consent Decree would conflict with these provisions and thus would be barred.

### C. <u>The Department may not require permits or approvals that are not within the Consent Decree.</u>

The Department makes the argument that while it does not dispute that no *permit* from the State is required for any on-site remedial action, neither Section 8 of the Consent Decree nor any federal law or regulation exempts the Corporation from obtaining any necessary "*approval*" from the State under R.I.G.L. § 23-19-13.1(a) and the Revised Final Interim Alternate Cover Materials Policy. This is merely a distinction without a difference.

The Department's parsing of words is both illogical and without merit. Moreover, it is also contradictory to the following section of its own Notice of Intent To Enforce ("NOI") dated

August 11, 2005, which was issued to the Corporation. In pertinent part, the NOI provided as follows:

> D. Required Actions
>
> The following actions are required in order for you to comply with the above-mentioned documents [including R.I.G.L. § 23-19-13.1]:
>
> . . .
>
> (4) RIRRC shall only be *permitted* to use material(s) as controlled fill after RIRRC obtains a *written approval* from RIDEM.
>
> . . . .

(NOI at 2; Department's Exh. A) (emphasis added). Moreover, EPA's own guidance provides as follows: "Section 121(e) of CERCLA codifies EPA's earlier policy that on-site response actions may proceed without obtaining permits. This permit exemption allows the response action to proceed in an expeditious manner, free from potential lengthy delays of approval by administrative bodies. *This permit exemption applies to all administrative requirements, whether or not they are actually styled as 'permits.'*" EPA CERCLA Compliance With Other Laws Manual; Interim Final, pages 1-11 (emphasis added). Accordingly, the Department's state law requirements that are not incorporated within the Consent Decree are barred whether the Department calls these requirements "permits" or merely "approvals."

**D. The Department's right to inspect the site does not give it the right to require permits or approvals that are not incorporated within the Consent Decree.**

The Corporation does not contest the right of the Department to conduct inspections of the Superfund Site so long as they are in accord with the applicable provisions of the Consent Decree and applicable federal law and regulation. The Corporation merely argues that such a right is not unlimited.

The broad language of Section 26 of the Consent Decree allows access to the Superfund Site by the Department in accordance with its terms, but it does not override the provisions of 42 U.S.C. § 9621(e)(1) and 40 C.F.R § 300.400(e)(1). In other words, while the Department may have access to the Superfund Site pursuant to Section 26 of the Consent Decree, it does not have the right to conduct activities on the site precedent to its attempt to enforce a permitting or approval requirement against the Corporation which is contradictory to the permit exemption provisions of 42 U.S.C. § 9621(e)(1) and 40 C.F.R § 300.400(e)(1) or Section 8 of the Consent Decree.

### E. The Department's concurrence with the Consent Decree bars its right to seek enforcement of additional state environmental laws.

The Department argues here that it is not estopped from exercising its enforcement authority over the site by virtue of its June 15, 1994 concurrence letter which is attached at Exhibit C to the Consent Decree. The Department again misses the point. The Department cannot enforce the state environmental statutes at issue because those statutes – which were known to the Department well before June 15, 1994 – were not included in the ARARs in the Consent Decree. The Department's failure to have these statutes included in the ARARs now acts as a bar to the Department seeking to enforce them now against the Corporation.[3]

## II. There Is No Constitutional Bar to This Suit.

### A. Sovereign Immunity Does Not Apply.

The Department next contends that this case must be dismissed due to sovereign immunity on the strength of the United States Supreme Court's decision in *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 (1997). The Department contends that notwithstanding the fact that

[3] The Corporation also incorporates herein its arguments on federal preemption and estoppel set forth in its Memorandum of Law In Support of its Motion for Summary Judgment dated May 8, 2006 and previously filed with the Court in this matter.

the Corporation sued an individual officeholder rather than the State of Rhode Island, the grave threat to Rhode Island's sovereignty posed by this action might trump the well established and important *Ex parte Young* doctrine that permits citizen suits in federal courts to vindicate federal rights. However, the *Coeur d'Alene* case has no meaningful application to this matter, except to the extent that it reinforced the *Ex parte Young* doctrine permitting suits against state officials, in their official capacities. *Coeur d'Alene*, 521 U.S. at 269 ("We do not, then, question the continuing validity of the *Ex parte Young* doctrine."). *See also id.* at 274 (noting important interest of permitting federal courts to interpret federal law). *Coeur d'Alene* is a unique case, and an expansive, general application of its holding, as the Department urges, would gut the *Ex parte Young* doctrine, flying in the face of the Supreme Court's express intent not to do so.

In *Coeur d'Alene*, the Supreme Court refused to allow suit against Idaho in federal courts because it concluded that the Coeur d'Alene tribe's federal lawsuit amounted to a "quiet title" action, which would place an entire geographic region, which had been part of Idaho, under the control of a different sovereign, the tribe. *Id.* at 281. As Justice O'Connor explained in her concurrence, the tribe was seeking, essentially, to obtain a declaration that certain land was not within the sovereign control of the State of Idaho. *See id.* at 290-91. Of course, in this case the Corporation makes no such claim. The Corporation is certainly not seeking to quiet title in the Superfund Site in itself, nor does it contend that the Superfund Site is somehow an enclave of exclusive federal jurisdiction. The issues in this case – whether the Department may enforce its environmental permitting process or penalize the Corporation for failing to comply with inapplicable environmental laws and regulations – do not implicate the State of Rhode Island's sovereignty or its "standing in the Union." *See id.* at 282.

The Department never explains how the *Coeur d'Alene* decision could be applicable in this situation, except to state in broad, conclusory terms that:

> Here, the Plaintiff's attempts to accomplish the removal of its land (land particularly invested with public interest concerns) from the authority of the State courts, State licensing agencies, and State officials armed with warrants. [*Sic*]

Memorandum in Support of Motion to Dismiss at 15. This straw-man argument is apparently an extension of its groundless claim that if the Corporation were to prevail in this case, the State would be unable to prosecute a murder that occurred at the Superfund Site. This would be an absurd result. The mere fact of federal preemption – either of a particular topic or a field of law – has no impact on the continued force and effect of non-preempted state laws. This fact is echoed in the Department's abbreviated quotation of James Madison's passage in THE FEDERALIST No. 39 (federal jurisdiction "extends to certain enumerated objects only, and leaves to the several States a residuary and inviolable sovereignty over all other objects."). *See id.* at 23.[4]

The *Coeur d'Alene* decision was *sui generis*, and reinforced the application of the *Ex parte Young* doctrine under ordinary circumstances. The instant case constitutes an ordinary circumstance, not some extreme threat to the sovereignty of the State of Rhode Island. The *Ex parte Young* exception applies, and sovereign immunity is no bar to this suit.

### B. **The Court May Not Decline to Exercise Jurisdiction on The Basis of *Younger* Abstention.**

As it did in its opposition to the Corporation's motion for a preliminary injunction in this case, the Department invokes the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971) to urge this Court to abstain from adjudicating this matter. None of the Department's arguments in

[4] Of course, it is possible for the federal government to assume exclusive or concurrent jurisdiction over geographical regions within a state (*e.g.*, certain military reservations), but that is not at issue here.

this latest memorandum are new, although it does cite to a few additional cases. In its reply brief relating to the motion for preliminary injunction, the Corporation addressed the *Younger* issue generally, and it will not restate those arguments in full, but rather incorporates its previous arguments and responds only to the new material offered by the Department.

As the Corporation previously noted, *Younger* abstention is not a bar to all "interference" with state judicial activities, but only applies in "certain instances." *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 68-69 (1st Cir. 2005). Further, "the Supreme Court has made it clear that it has never 'remotely suggest[ed]' that every pending state proceeding between a state and a private plaintiff justifies abstention if that private plaintiff then sues the state in federal court." *Rio Grande Cmty. Health Ctr.*, 397 F.3d at 70 (quoting *Moore v. Sims*, 442 U.S. 415, 423 n. 8 (1979)). Despite the fact that this action "'may well affect, or for practical purposes pre-empt, a future – or, as in the present circumstances, even a pending – state-court action,'" *Younger* abstention would still be inappropriate. *Id.* at 71 (quoting *New Orleans Public Serv., Inc v. Council of City of New Orleans*, 491 U.S. 350, 373 (1989) ("*NOPSI*")). Unlike the *Rio Grande* situation, here there is not even a "pending state proceeding" that might give rise to the consideration of abstention. The Department's boundless interpretation of the *Younger* doctrine finds no support in precedent, either from the Supreme Court or any other jurisdiction; as the Supreme Court put it, "[s]uch a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *Id.* at 368.

The Department's presentation of *Younger* abstention consists of sweeping generalizations about the importance of the principle of comity and the citation to several inapplicable cases. None of those arguments has merit. First and foremost, the Department

entirely fails to consider the applicable, *controlling* precedent in this case: the First Circuit's 1995 decision in *Chaulk Serv., Inc. v. Massachusetts Comm'n Against Discrimination*, 70 F.3d 1361, which held that *Younger* abstention is inappropriate where, as here, there is a "facially conclusive" or "readily apparent" preemption of state law. *Chaulk* involved a labor dispute, in the course of which the parties had litigated first before the National Labor Relations Board and, after that matter had been fully resolved, before the Massachusetts Commission Against Discrimination. *Id.* at 1363-64. The respondent in the Commission's proceedings moved to dismiss the complaint on the basis of federal preemption, and the Commission declined, instead retaining jurisdiction. *Id.* It then brought suit in federal district court for a declaratory judgment of federal preemption and injunctive relief against further prosecution of the complaint before the Commission. *Id.* at 1364. The district court declined to exercise jurisdiction based on *Younger* abstention principles, dismissing the federal complaint. *Id.*

In *Chaulk*, the First Circuit reversed this dismissal despite the uncontroverted existence of ongoing state proceedings. *Id.* at 1370-71. Thus even assuming that the Department is correct in its assertion that the mere issuance of a search warrant constitutes "ongoing state proceedings" – a conclusion that finds no support in this Circuit and which the Corporation disputes – this Court must assess whether preemption is "readily apparent" in this case before electing to abstain from the exercise of jurisdiction. The Court's analysis in *Chaulk* is entirely applicable here:

> Faced with this particular factual scenario, we find that under the *Garmon* doctrine it is "readily apparent" that the Commission is acting beyond its jurisdictional authority by entertaining Doulamis' complaint, for it is readily apparent that Chaulk's conduct at issue is at least arguably prohibited by, and thus subject to the NLRA. Accordingly, we hold that abstention was inappropriate and that the district court abused its discretion when it dismissed Chaulk's complaint on the basis of *Younger* abstention.

*Id.* at 1370. Because the Corporation's remediation activities at the Superfund Site are governed by the Consent Decree, and federal law, it is equally "readily apparent" that the Department is acting beyond its jurisdictional authority by pursuing the enforcement of state environmental laws that have not been specifically incorporated into the Consent Decree. Because preemption is clear in this case, abstention would constitute an abuse of discretion.

The First Circuit's decision in *Chaulk* was well supported by precedent. As the Court explained,

> A number of courts have held that *Younger* abstention is inappropriate where a claim of preemption is "facially conclusive" or "readily apparent", because no significant state interests are served when it is clear that the state tribunal is acting beyond the lawful limits of its authority. *Bud Antle, Inc. v. Barbosa*, 35 F.3d 1355, 1365-66 (9th Cir. 1994), as amended by, 45 F.3d 1261, 1272-73 (9th Cir. 1994); *Gartrell Construction, Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir. 1991) (citing *Champion International Corp. v. Brown*, 731 F.2d 1406 (9th Cir. 1984); *National R.R. Passenger Corp. v. Florida*, 929 F.2d 1532, 1537 n. 12 (11th Cir. 1991) (citing *Baggett v. Department of Professional Registration*, 717 F.2d 521, 524 (11th Cir. 1983)); *Southwestern Bell Tel. v. Ark. Public Service Commission*, 824 F.2d 672, 673 (8th Cir. 1987); *Kentucky W. Va. Gas Co. v. Pennsylvania Pub. Util. Comm'n*, 791 F.2d 1111, 1115 (3d Cir. 1986).

*Id.* Even Judge Lynch, who dissented from the *Chaulk* opinion, agreed that *Younger* mandates that where state proceedings are clearly violative of federal constitutional provisions, abstention is inappropriate because the constitutional violation would constitute irreparable injury to the federal complainant. *Id.* at 1380 ("A sufficient risk of irreparable injury may exist where the challenged state statute is 'flagrantly and patently violative of express constitutional prohibitions. . . .'") (quoting *Younger*, 401 U.S. at 53-54).

The *Chaulk* decision remains good law, and many courts, including the First Circuit, have cited favorably to its holding with respect to *Younger* abstention. *See, e.g.*, *Arookstook Band of Micmacs v. Ryan*, 404 F.3d 48, 66 (1st Cir. 2005); *United Parcel Service, Inc. v. Flores-Galarza*,

275 F. Supp. 2d 155, 159 (D.P.R. 2003) ("the abstention doctrines invoked by the Secretary do not apply here because the operation of federal preemption is clear"); *Terminix Int'l Co. v. Rocque*, 210 F. Supp. 2d 97, 101-02 (D. Conn. 2002); and *Goleta Nat. Bank v. Lingerfelt*, 211 F. Supp. 2d 711, 717 n. 7 (E.D.N.C. 2002) ("The majority of circuits considering this issue have held that Younger abstention is inappropriate when a federal preemption claim is 'readily apparent' or 'facially conclusive.'").

There are two other, independent reasons why *Younger* abstention has no application in this case. First, as explained in the Corporation's reply memorandum in support of its motion for summary judgment, abstention has no place where a state prosecution is brought in bad faith. *See Local Union No. 12004 v. Massachusetts*, 377 F.3d 64, 77-78 (1st Cir. 2004). Again, the Department's knowing acquiescence in the use of out-of-state PBA in connection with the construction of the RCRA-C Cap at the Superfund Site, especially when viewed in light of the Attorney General's express determination that the use of such materials as fill does not constitute the deposit of solid waste for the purposes of the state laws at issue, renders any decision to prosecute on that factual predicate inherently in bad faith.

Second, notwithstanding the Department's citation to other district court decisions, there is no "ongoing state proceeding" in favor of which this Court might abstain. The Department relies on numerous non-precedential cases in support of its contention that there is some "proceeding" that has been begun by the issuance of the search warrant referenced in the Corporation's complaint, but the application of those cases here would be in error. First, those cases look to state law to determine at what point a "proceeding" has commenced, and the Department provides no authority to conclude that as a matter of Rhode Island law, criminal proceedings are commenced by a search warrant. *See, e.g.*, *Nick v. Abrams*, 717 F. Supp. 1053,

1056 (S.D.N.Y. 1989). Moreover, courts have taken a hard look at pre-indictment situations to determine whether the circumstances actually rise to the level of an "about-to-be-pending" proceeding. *See, e.g.*, *Kingston v. Utah County*, 161 F.3d 17, 1998 WL 614462 at *4 (10th Cir. 1998) (unpublished opinion) (noting that the plaintiff "would have had an immediate opportunity to challenge the validity of the warrant in state court" [...] "absent the district court's intervention."). By contrast, the State of Rhode Island executed the search warrant over seven months ago, and no charge has been filed, no indictment has issued, and no "proceeding" other than this one is visible on the horizon. There is no evidence that the Corporation will "have an immediate opportunity" to vindicate its federal claims in any state proceeding.

Moreover, the Department wrongly suggests that federal courts are uniform in their conclusion that "A State Criminal Prosecution Is Deemed Pending Where A Search Warrant Has Been Issued." Department Mem. at 18. The Third Circuit has expressly rejected this conclusion. *Monaghan v. Deakins*, 798 F.2d 632 (3d Cir. 1986):[5]

> The holdings and rationales of these cases adumbrate a clear line: *Younger* abstention is appropriate only when there is pending a proceeding in which a state court will have the authority to adjudicate the merits of a federal plaintiff's federal claims. Indeed, the [Supreme] Court emphasized in *Middlesex County* that the critical factor was the availability in the pending state proceeding of an adequate opportunity to adjudicate the constitutional claims raised in the federal litigation. 457 U.S. [423] at 432 [(1982).]
>
> The defendant state officials do not urge that a New Jersey grand jury has the authority to adjudicate anything. A grand jury proceeds *ex parte*. N.J. Crim.Prac.R. 3:6-6. It can issue an indictment, which is no more than a charge that the defendant has violated the criminal law. Only when such a charge is filed does there commence a judicial proceeding that affords the adjudicatory opportunity that *Hawaii Housing* [*Authority v. Midkiff*, 467 U.S.

[5] The decision in *Monoghan* with respect to *Younger* abstention was vacated by the Supreme Court on the grounds that the issue had been mooted while an appeal was pending to that Court. *Deakins v. Monaghan*, 484 U.S. 193, 199-201 (1988).

> 229 (1984)] and *Middlesex County* require. No indictment had been returned against the plaintiffs at the time they filed their complaint in the district court. Thus there was not, for *Younger* purposes, any ongoing state proceeding warranting abstention by the district court.

798 F.2d at 636-37. The same is true here: a Rhode Island grand jury cannot adjudicate anything; it can do no more than issue an indictment, which would trigger a judicial proceeding with adjudicatory power.[6]

In considering *Younger* abstention and the comity principles underlying the doctrine, this Court must ask a fundamental question: if it declines to exercise jurisdiction, what will come of the plaintiff's claims? Only if the answer is clearly that the plaintiff will be able to obtain meaningful adjudication of its claims at the state level does *Younger* have any application. "Abstention" here would not mean remanding questions of federal law to state court, it would mean consigning them to limbo.[7]

### C. <u>The Anti-Injunction Act Does Not Bar The Relief Sought.</u>

The Department contends, in summary fashion and without citing any caselaw in support of its proposition, that the Anti-Injunction Act, 28 U.S.C. § 2283, "complicates" the Corporation's attempt to obtain injunctive relief. Even assuming that the Department is correct that there is some ongoing proceeding as to which the Anti-Injunction Act might have some application, this argument is also without merit. The Anti-Injunction Act specifically authorizes

---

[6] The Department further asks this Court to abstain based on the "common sense" notion that "a criminal investigation is an integral part of a criminal proceeding." Department Mem. at 19. Its argument is, essentially, that without subpoenas and search warrants, the state's criminal enforcement activities would grind to a halt. But the same could be true of the appointment of judges, the convening of grand juries, or even the deployment of police to patrol the streets. None of those would constitute a "proceeding" adequate for the Corporation to have its federal claims adjudicated, and the same holds true of a grand jury proceeding held in the Autumn of 2005.

[7] For the same reasons that the Court should not abstain in favor of non-existent proceedings, there exist no pending proceedings at the state level that could be the subject of the Anti-Injunction Act, 28 U.S.C. § 2283.

federal courts to enjoin or stay proceedings "to protect or effectuate its judgments." *Id.* The Consent Decree is a judgment of this Court, and any injunction issuing on the Corporation's complaint would by definition be made to protect or effectuate that judgment. To the extent it is determined that the State of Rhode Island was not a party to the Consent Decree, such determination is immaterial. *See, e.g., Faucy v. Hannon*, 275 F.2d 234, 238 (1st Cir. 1960); *Metheny v. Becker*, 352 F.3d 458, 462 (1st Cir. 2003) (rejecting Anti-Injunction Act argument that non-parties cannot be enjoined to effectuate prior judgment).

**D. <u>The Corporation Has Standing To Sue.</u>**

In a clear attempt to have its cake and eat it too, the State argues (again, without any citation to authority) that if the absence of formal charges renders abstention inappropriate, then the possibility of future charges is "merely speculative," depriving the Corporation of standing. This argument is wrong as a matter of law. *Wine & Spirits v. Rhode Island*, 418 F.3d 36, 46 (1st Cir. 2005) (preliminary steps taken to enforce statute "enough to show that the threatened harm is imminent"). "This is not a situation of a litigant 'pressing solely abstract concerns founded on ill-defined facts, creating a danger that a judicial pronouncement would constitute a prohibited "advisory opinion."'" *McInnes-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 71 (1st Cir. 2003) (quoting 1 Tribe, AMERICAN CONSTITUTIONAL LAW § 3-14, at 338 (3d ed. 2000). Rather, the Corporation reasonably perceives that the Department intends to take enforcement action against it based upon the formal declarations of the Department and the actual execution of the search warrant at the Superfund Site.

There is no conflict or even tension between the Corporation's reasonable apprehension of enforcement action, which is sufficient to confer standing, and the absence of an actual state proceeding, which precludes abstention. Abstention requires an actual proceeding, else the

plaintiff's claim will never be heard. Principles of standing simply do not require that the plaintiff wait to be injured. These two may and must be read in harmony; and, in cases like this one, the Corporation has standing to sue in federal court despite the absence of an actual, ongoing proceeding at the state level.

## E. The Corporation Has Properly Pled This Action Against The Department's Director in His Official Capacity.

In support of its motion to dismiss, the Department again raises the argument, first leveled in its opposition to the Corporation's motion for preliminary injunction, that the designation of "The Rhode Island Department of Environmental Management, by and through its director, W. Michael Sullivan" is insufficient to plead this action under the *Ex parte Young* exception to sovereign immunity. *See* Department Mem. at 16-17. The Department insists, without any support, that the Corporation having named the Department "by and through" its Director, Mr. Sullivan, is somehow different from naming Mr. Sullivan "in his official capacity" as Director of the Department. There is no merit to this contention, or to the Department's further assertion that failing to make allegations "against the named official" in the body of the complaint renders it defective and deserving of dismissal. Federal courts, including this one, have permitted official-capacity suits against state agencies through the use of the "by and through" language employed by the Corporation in this case. *See Hatmaker v. Georgia Dept. of Transp.*, 973 F. Supp. 1047, 1054 (M.D. Ga. 1995). Moreover, the important consideration for *Ex parte Young* purposes is that the official be the named defendant in the action. *Id.*; *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent'" and "It is not a suit against the official personally, for the real party in interest is the entity.") (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55 (1978)). Of course,

should the Court find that the Corporation's allegations are insufficient in that they fail to identify, by name, the Director of the Department in the body of the complaint, the Corporation should be permitted to amend its complaint to correct such a defect.

## CONCLUSION

For the reasons set forth above and in the Corporation's Memorandum of Law in Support of Motion for Summary Judgment already on file with the Court, the Corporation respectfully requests that this Court deny the Department's motion to dismiss in its entirety.

Dated: May 22, 2006

RHODE ISLAND RESOURCE
RECOVERY CORPORATION

By its Attorneys,

Patricia K. Rocha

Patricia K. Rocha (#2793)
R. Bart Totten (#5095)
Jeffrey K. Techentin (#6651)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
(401) 351-4607 (Fax)

Richard A. Sherman by pkr

Richard A. Sherman (#1190)
Raymond M. Ripple (#6489)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of May, 2006, I caused a true and accurate copy of the within document to be served via hand delivery to the following counsel of record:

John Langlois, Esq.
R.I. Department of Environmental Management
Office of Legal Services
235 Promenade Street
Providence, RI 02908

Michael Rubin, Esq.
Special Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903

Debra Humm