UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RHODE ISLAND RESOURCE RECOVERY CORPORATION<br><br>Plaintiff, | : | |
| v. | : | C.A. No. 05-451-ML |
| THE RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, by and Through its Director, W. MICHAEL SULLIVAN<br><br>Defendant. | : | |

**REPLY MEMORANDUM IN SUPPORT OF RHODE ISLAND RESOURCE RECOVERY CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

The Corporation's motion for summary judgment presents a narrow and straightforward question of law for this Court: whether DEM may enforce the entire universe of state environmental laws at a Superfund Site, or whether DEM's authority is limited to the ARARs[1] that are part of the Consent Decree. None of the issues identified vaguely as "disputed" by DEM is a material fact that would preclude summary judgment on this question of law. Without citing a single case in support of its position, DEM contends that CERCLA and the Consent Decree do

[1] As set forth in the Corporation's initial memorandum, Section 9621(f)(2)(A) of CERCLA provides a specific and defined statutory scheme that allows a state to participate in determining which state environmental laws or regulations will apply at a Superfund site. Pursuant to these provisions, the state has the opportunity to agree or disagree with the inclusion or exclusion of a legally applicable or relevant and appropriate standard, requirement, criteria or limitation ("ARARs") in any remedial action at a Superfund site. *Id.* These state requirements, subject to EPA approval, are incorporated into a Consent Decree. However, once a Consent Decree is entered by the Court, the state may not thereafter seek other remedies against a potentially responsible party (such as the Corporation in this case) that are at odds with the terms of the Consent Decree and may not seek to impose additional requirements or penalties for state environmental laws or regulations that are not specifically included in the ARARs in the Consent Decree. *See Missouri v. Indep. Petrochemical Corp.*, 104 F.3d 159, 162 (9th Cir. 1997) (noting that all ARARs are "frozen" as of the date of Record of Decision ("ROD")); *Colorado v. Idarado Mining Co.*, 916 F.2d 1486, 1494 (10th Cir. 1990) (holding that, by its express terms, § 121(e)(2) of CERCLA limits a state's enforcement authority to "any Federal or State standard, requirement, criteria, or limitation to which the remedial action is required to conform under this Act [CERCLA].").

"not restrict the applicable environmental laws to the ARARs." *See* DEM's Opposition to Motion for Summary Judgment ("DEM's Opposition") at p. 5. DEM argues (again without a single authority) that "there are other [state] environmental laws that are applicable, but that are not on the [ARAR] list." *Id.* at 6.

DEM's position is directly contrary to the opinion of every federal court that has addressed the issue. Contrary to DEM's unsupported argument, federal courts interpreting CERCLA and addressing this very issue have consistently held that "if remedies proposed by a state do not become embodied in the Consent Decree by virtue of the statute's provisions for incorporation of state ARARs, the state may only enforce against the [potential responsible parties] the remedies adopted in the decree, *and no others*." *U.S. v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1454 (6th Cir. 1991) (emphasis added). Federal courts have interpreted CERCLA to limit state environmental remedies to those specifically included within a consent decree. The clear rule, applicable here, is that "once the consent decree is entered by a federal court . . . alternative state remedies may not be pursued . . . [since] other remedies based on state law are in effect preempted by the federal and state law embodied in the decree." *Id.* at 1454-55.[2]

There is no ARAR in the Consent Decree that gives DEM authority to require either a permit or any other type of approval for the Corporation to use the processed bottom ash from SEMASS as subgrade fill under the RCRA Cap. DEM's failure to cite a single applicable ARAR in support of its position tacitly admits this. Accordingly, DEM is preempted from requiring any approval for the use of the SEMASS ash at the Superfund Site.

---

2 Indeed, if DEM's position were correct—that the Consent Decree contemplates compliance with all state laws — the federal regulations specifically delineating the State's role in the process would be without meaning and there would be no need to recite the ARARs in the Consent Decree. *See* DEM's Opposition at 4.

DEM has narrowed the issues in this case by abandoning its argument that the Corporation's activities constitute the disposal of solid waste at other than a solid waste management facility licensed by DEM in violation of R.I. Gen. Laws § 23-18.9–5(a). In its opposition papers, DEM states that the Court "should easily deflate this overblown argument [the Corporation's argument that DEM is preempted from applying R.I. Gen. Laws § 23-18.9-5(a)] because DEM has not invoked R.I. Gen. Laws § 23-18.9-5(a) against [the Corporation]." *See* DEM's Opposition at p. 8. DEM tells the Court that it has never alleged that the Corporation was in violation of R.I. Gen. Laws § 23-18.9-5(a) but that this section of the Rhode Island General Laws was used only for definitional purposes – to provide the definition of "disposal of solid waste." *Id.*

A review of DEM's Notice of Intent to Enforce ("NOI") provides a directly contrary story. The NOI lists the violation of R.I. Gen. Laws § 23-18.9-5(a) as the first alleged violation by the Corporation with respect to its use of the SEMASS ash at the Superfund Site. The NOI provides, in part:

> C. Alleged Violations
>
> Based on the findings of fact set forth above, [the Corporation] is found to be non-compliant with and is in violation of the following Statutes and Regulations:
>
> (1) RIGL 23-18.9-5 Disposal of Refusal at other than a Licensed facility (a) No person shall dispose of solid waste at other than a solid waste management facility licensed by the Director.

Whatever DEM's motivation for withdrawing its claims under R.I. Gen. Laws § 23-18.9-5 might be, they are certainly different from those professed in DEM's opposition papers. As a definitional matter, the Corporation could not be in violation of this section of the Rhode Island General Laws because the statute applies only to "dispos[al] of *solid waste* at other than a *solid*

*waste management facility licensed by [DEM].*" (Emphasis added.) The ash is not "solid waste" and the Superfund Site is not a facility that could ever be licensed by DEM for the acceptance of solid waste. But, the same argument applies to DEM's only remaining alleged violation – that the use of the SEMASS ash at the Superfund Site constitutes the disposal of out of state solid waste at the Central Landfill. R.I. Gen. Laws § 23-19-13.1(a) provides, in part:

> No person, firm, corporation, transfer station or any other entity engage in the business of collecting, disposing, sorting, recycling, processing, manufacturing or remanufacturing of solid waste shall deposit or cause to be deposited solid waste that is generated or collected outside the territorial limits of this state at the central landfill.

The use of SEMASS ash as subgrade fill under the RCRA Cap at the Superfund Site is clearly not the disposal of "solid waste" – the ash is a *product* used in the construction of the RCRA Cap and therefore not "waste".[3]

The irrational results inherent in DEM's position in this case make a perfect example of why federal law limits the applicable state environmental laws to those contained within the ARARs. Accepting DEM's argument, any material used by the Corporation at the Superfund Site that came from anywhere outside the State of Rhode Island could violate this statute and

---

3 DEM also argues that the 1989 Attorney General Opinion has no application to this case. That Opinion says that the use of out of state ash as alternate daily cover does not violate prohibitions against the disposal of out-of-state waste since the ash is used as a *product* and is therefore not waste. Here, DEM cannot argue that the SEMASS is not being used as a *product* – to construct the substrate for the RCRA Cap at the Superfund Site. Instead it claims that the 1989 Opinion does not apply since it is safe to use ash on a daily basis in the operation of the landfill where the ash is left open to the environment but somehow not safe to place the ash under a RCRA Cap at a Superfund Site. Again, this makes no sense. The logic of the Attorney General Opinion that ash that is used as a *product* is not waste applies whether the *product* is used every day as cover or used as subgrade fill at the Superfund Site.

require the approval of DEM.[4] DEM's argument would make it a criminal violation to use any out of state materials at the Superfund Site. This would be an absurd result and shows why the state environmental laws are limited to those contained in the ARARs.

There is no iniquity in limiting the state's enforcement rights to the ARARs that are included in the Consent Decree. DEM had the full and fair opportunity, at the time the Consent Decree was created, negotiated, and adopted, to present any and all state laws and regulations for inclusion in the Consent Decree, including those it now seeks to enforce. EPA, of course, had ultimate authority to include or exclude any particular statute or regulation from the ARARs, but DEM had every right to suggest laws and regulations for inclusion. In all likelihood, however, EPA would not have included either these statutes or the Rules and Regulations for Composting Facilities and Solid Waste Management Facilities. *CF.* DEM's Opposition at II. The reason EPA would not have included them as ARARs is likely the same reason DEM did not ask that they be included: they are inapplicable. Just as Section 23-19-13.1 applies only at the Central Landfill, so too the regulations cited by DEM (and every other regulation that might give it approval authority for controlled fill) are operational standards governing licensed landfills. DEM admits that the Superfund Site is beyond the purview of those regulations. *Id.* at 12 ("This definition of a sanitary landfill does not include a Superfund remediation.").

4 DEM's contention that the Corporation is required to obtain DEM approval to use ash as controlled fill at the Superfund Site is a concession that RIGL § 23-19-13.1(a) cannot be applicable to the Corporation's activities therein. In that statute, the Rhode Island legislature banned such deposits categorically, and if it were applicable, DEM would have no authority to "approve" a violation of the statute, which could carry criminal penalties. Likewise, since the Consent Decree does not require the Corporation to seek approval for use of processed bottom ash, DEM has no authority to now do so.

Moreover, consistent with Section 121(e) of CERCLA,[5] EPA has interpreted CERCLA to preclude state administrative requirements, such as permitting and approvals, even where the laws and regulations (which otherwise might create such administrative requirements) are included in a Consent Decree's ARARs. *See*, *e.g.*, U.S. Environmental Protection Agency, *RCRA, Superfund & EPCRA Hotline Training Module, Introduction to Applicable or Relevant and Appropriate Requirements*, at 3 (Feb. 1998), *available at* <http://www.epa.gov/superfund/contacts/sfhotlne/arar.pdf> ("For on-site response activities, CERCLA does not require compliance with administrative requirements of other laws. CERCLA requires compliance with only the *substantive* elements of other laws, such as chemical concentration limits, monitoring requirements, or design and operating standards for waste management units for on-site activities. *Administrative* requirements, such as permits, reports, and records, along with substantive requirements, apply only to hazardous substances sent *off site* for further management." (emphasis added)).

In light of the clear preemption of the state environmental laws, summary judgment is appropriate in favor of the Corporation.[6] DEM's sole argument that any non-preempted standard might apply to the Corporation's use of ash – based on the construction specifications for the

---

[5] "Permits, if required, shall be obtained for all response activities conducted *off-site*" ... "The lead and support agencies shall identify requirements applicable to the release or remedial action contemplated based upon an objective determination of *whether the requirement specifically addresses a hazardous substance, pollutant, contaminant, remedial action, location, or other circumstance found at a CERCLA site.*" 121(e) of CERCLA (emphasis added).

[6] Although DEM "disputed" a number of the facts posited by the Corporation in its Statement of Undisputed Facts, summary judgment should still enter. On most "disputed" issues, DEM merely offered the conclusory statement that the fact was "disputed" (which is insufficient under Local Rule 56). Others were immaterial (*e.g.*, Fact 15, that the date of the NOI was incorrect, Fact 19, that DEM has not attempted to repair the RCRA C-Cap). The only issue in dispute is a legal one – does DEM have the right to require approval for use of ash as controlled fill at the Superfund Site when such requirement is not embodied in the Consent Decree. As discussed, *supra*, the answer is no. DEM's authority is limited to the ARARs that are part of the Consent Decree.

RCRA Cap – is a complete red herring. *See* DEM Opposition to Motion for Summary Judgment at 13-14. DEM likely knows and understands this, as it never argues that the construction specifications provide DEM any authority to "approve" ash at the Superfund Site. *See id.* Of course, the construction specifications are a matter for EPA, not DEM, enforcement, and EPA explicitly approved of the Corporation's use of ash in the substrate for the cap. Under all *applicable* standards, the use of ash was approved, permitted, and entirely appropriate.

Accordingly, for the reasons set forth herein and in its initial memorandum, the Corporation prays this Court grant its motion for summary judgment.

Dated: June 5, 2006

PLAINTIFF,
RHODE ISLAND RESOURCE
RECOVERY CORPORATION
By its Attorneys,

Patricia K. Rocha (#2793)
R. Bart Totten (#5095)
Jeffrey K. Techentin (#6651)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
(401) 351-4607 (Fax)

-and-

Richard A. Sherman (#1190)
Raymond M. Ripple (#6489)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of June, 2006, I caused a true and accurate copy of the within document to be served via hand delivery to the following counsel of record:

John Langlois, Esq.
R.I. Department of Environmental Management
Office of Legal Services
235 Promenade Street
Providence, RI 02908

Michael Rubin, Esq.
Special Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903

Debra Hamm

*383169_1.doc*