UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND RESOURCE
RECOVERY CORPORATION,
                    Plaintiff,

        v.                                                      CA 05-451 ML

RHODE ISLAND DEPARTMENT
OF ENVIRONMENTAL MANAGEMENT,
by and through its Director, W. MICHAEL
SULLIVAN,
                    Defendant.

MEMORANDUM AND ORDER

        This matter is before the Court on Plaintiff Rhode Island Resource Recovery

Corporation's ("RIRRC") Motion for Summary Judgment and Defendant Rhode Island

Department of Environmental Management's ("RIDEM") Motion to Dismiss.  For the reasons

set forth below, Defendant's Motion to Dismiss is denied, and Plaintiff's Motion for Summary

Judgment is granted in part and denied in part.

I.  Standard of Review

        In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6), "a court must take the

allegations in the plaintiff's pleadings as true and must make all reasonable inferences in favor of

the plaintiff." Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005).  Dismissal is appropriate

"only if it is clear that no relief could be granted under any set of facts that could be proved

1

consistent with the allegations." Id. (internal quotation marks omitted).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the pertinent evidence is such that a rational factfinder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citation omitted).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Id. Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

In the instant case, the basic facts are not in dispute. Where there are no significant disagreements about the basic facts, a court may treat the parties as though they have submitted their dispute as a "case stated" and decide the case as a matter of law. See EEOC v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 603 (1st Cir. 1995) (citing Federación de Empleados del Tribunal Gen. de Justicia v. Torres, 747 F.2d 35, 36 (1st Cir. 1984)).

2

II. Facts

The material facts of the instant case are undisputed.[1]  Plaintiff RIRRC, formerly known

as the Rhode Island Solid Waste Management Corporation, owns and manages the Central

Landfill in Johnston, Rhode Island.  From 1987 to 1993, Plaintiff conducted a remedial

investigation and feasibility study with regard to Operable Unit 1 of the Central Landfill (the

"Superfund Site").  After negotiations with Plaintiff, on June 17, 1994, the Environmental

Protection Agency ("EPA") executed a Record of Decision ("ROD") that documented its

decision on the remedial action to be implemented at the Superfund Site.  One of the remedial

activities required by the ROD was the construction by Plaintiff of a multi-layer impermeable cap

over one section of the Superfund Site.  In a letter sent by then-Director of RIDEM, Michael

Annarummo, on June 15, 1994, RIDEM concurred in the ROD remedy.

In 1996, the United States through EPA brought an action against the Plaintiff under

Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and

Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675 (2005), for remediation and costs incurred

by EPA for response actions at the Superfund Site.  On May 16, 1996, Plaintiff and EPA entered

into a Consent Decree that set out the remedy to address the groundwater contamination in the

area surrounding the Superfund Site.  The Consent Decree incorporated the ROD requirements.

The Consent Decree was then entered as an Order of this Court on October 4, 1996.

---

[1]In its Statement of Disputed and Undisputed Facts, Defendant RIDEM challenges some of Plaintiff's
factual assertions by indicating "disputed" below Plaintiff's assertion.  Under Local Rule Cv 56(a), merely disputing
an assertion in a motion filed pursuant to Fed. R. Civ. P. 56 does not suffice to introduce a material factual dispute.
Rather, the nonmoving party must support a denied or controverted fact with affidavit or other evidentiary material.
DRI LR Cv 56(a)(4).  This flaw is not outcome determinative, however, as none of the facts "disputed" by RIDEM is
material to the disposition of the matter at hand.

Relevant portions of the Consent Decree include Section 7, which states

> [a]ll activities undertaken by the Settling Defendant pursuant to this Consent
> Decree shall be performed in accordance with the requirements of all applicable
> federal and state laws and regulations.  Settling Defendant must also comply with
> all applicable or relevant and appropriate requirements of all Federal and state
> environmental laws [("ARARs")] as set forth in the ROD and the [Scope of Work
> ("SOW")].

(Pl.'s Statement of Undisputed Facts ("Statement") Ex. B.) Section 8.a of the Consent Decree

states that, "[a]s provided in Section 121(e) of CERCLA and § 300.400(e)(1) of the [National Oil

and Hazardous Substances Pollution Contingency Plan ("NCP")],  no permit shall be required for

any portion of the Work conducted entirely on-site." (Id.)

In its completion of the required impermeable cap, RIRRC acknowledges it used

processed bottom ash ("PBA"), some of which was generated outside of Rhode Island.  RIRRC

used the PBA as a fill material to layer between the landfill waste and the impermeable cap.

On August 11, 2005, RIDEM issued a Notice of Intent to Enforce ("NOI") to RIRRC in

which it stated that the use of out-of-state PBA violated R.I. Gen. Laws § 23-19-13.1(a) (2000).

In that NOI, RIDEM stated that RIRRC "shall only be permitted to use material(s) as controlled

fill after [it] obtains a written approval from RIDEM." (Def.'s Mot. Dismiss Ex. A.)  On

October 12, 2005, RIDEM obtained a search warrant from the Rhode Island District Court which

authorized it to enter the Central Landfill and take samples of the fill materials.  RIDEM

executed the search warrant and excavated through the impermeable cap to take samples of the

PBA.

On October 26, 2005, RIRRC filed a Complaint with this Court seeking a declaration

pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 that RIDEM does not have

the authority to require RIRRC to obtain any permit, license or approval in order to implement

any aspect of the on-site remediation at the Superfund Site. RIRRC also sought a preliminary

injunction at that time which would prohibit RIDEM from investigating the Superfund Site or

prosecuting RIRRC in any administrative, civil or criminal proceeding relating to RIRRC's

remediation activities within the Superfund Site. RIDEM has filed an Objection to the Motion

for Preliminary Injunction, and a Motion to Dismiss. On May 8, 2006, RIRRC filed a Motion for

Summary Judgment in which it agreed not to pursue the injunctive relief initially requested in the

Complaint and press only its declaratory judgment count. On June 20, 2006, this Court heard

arguments on RIDEM's Motion to Dismiss and RIRRC's Motion for Summary Judgment.


III.  Discussion

**I.  RIDEM's Motion to Dismiss**

In its Motion to Dismiss, RIDEM offers multiple arguments in support of its position that

RIRRC's Complaint should be dismissed. First, it claims the Consent Decree, on its own terms,

disposes of the issues by requiring RIRRC to comply with all state and federal laws, not merely

the applicable or relevant and appropriate federal and state requirements ("ARARs"). Second, it

asserts principles of sovereign immunity and federal abstention to encourage this Court to refrain

from exercising its jurisdiction. Third, RIDEM offers that the Anti-Injunction Act, 28 U.S.C. §

2283, bars a federal court from enjoining a state proceeding. Finally, RIDEM asserts that RIRRC

does not have standing to dispute the state criminal proceeding because the possibility of

criminal charges is merely speculative.


5

### A. The Consent Decree

Several key selections from the Consent Decree and CERCLA resolve the question of

RIDEM's enforcement rights in the Superfund Site. Both parties alert the Court to Section 7 of

the Consent Decree, which states

> [a]ll activities undertaken by the Settling Defendant pursuant to this Consent
> Decree shall be performed in accordance with the requirements of all applicable
> federal and state laws and regulations. Settling Defendant must also comply with
> all applicable or relevant and appropriate requirements of all Federal and state
> environmental laws [("ARARs")] as set forth in the ROD and the SOW.

(Pl.'s Statement Ex. B.) RIDEM argues that the first sentence of this section mandates

compliance with all state and federal laws, and that the second sentence requires compliance with

the ARARs as defined in the ROD. The effect of these two sentences in succession, RIDEM

asserts, is that the ARARs as well as all other federal and state laws are enforceable on the

Superfund Site. RIRRC's interpretation of that language is that the first sentence establishes that

federal and state laws apply to the Site generally, and the second sentence sets forth that, as to

environmental laws, the ARARs alone control. Therefore, RIRRC asserts, the ARARs comprise

the entire universe of environmental laws enforceable at the Site.

Case law supports RIRRC's argument. See Feikema v. Texaco, Inc., 16 F.3d 1408, 1416

(4th Cir. 1994); United States v. Akzo Coatings of Am., Inc., 949 F.2d 1409, 1458 (6th Cir.

1991); Colorado v. Idarado Mining Co., 916 F.2d 1486, 1495 (10th Cir. 1990); but see United

States v. Colorado, 990 F.2d 1565 (10th Cir. 1993)(holding that state could enforce state laws not

included in consent decree against federal facility pursuant to state's EPA-delegated Resource

Conservation and Recovery Act (RCRA) authority).

As explained by the Akzo court, CERCLA creates a mechanism by which state

6

environmental laws which are more stringent than federal standards may be incorporated into the

consent decree. That mechanism is outlined in 42 U.S.C. § 9621(f), and provides for EPA

promulgation of regulations that allow for state participation in the initiation, development and

selection of remedial action by involvement in, among other activities, the early feasibility

studies and planning for remediation, 42 U.S.C. § 9621(f)(1)(D), (E), comments on EPA's

proposed plan for remedial action, 42 U.S.C. § 9621(f)(1)(G), and ultimately, intervention in the

judicial action to enter the consent decree if the state chooses not to concur in the proposed

remedial action, 42 U.S.C. § 9621(f)(2)(B). When a state does not concur in the action agreed to

by EPA and the potentially responsible party ("PRP") because the proposed action "does not

attain a legally applicable or relevant and appropriate standard, requirement, criteria, or

limitation," it "shall intervene in the action . . . before entry of the consent decree, to seek to have

the remedial action so conform." 42 U.S.C. § 9621(f)(2)(A), (B). It is then the task of the court

reviewing the consent decree to determine if the EPA finding underlying the decision not to

include the standard, requirement, criteria or limitation is supported by substantial evidence. 42

U.S.C. § 9621(f)(2)(B). If the court determines the EPA finding is not supported by substantial

evidence, the court then requires that the remedial action be modified to conform to the standard

promoted by the state. Id. If, on the other hand, the court decides the EPA finding is supported

by substantial evidence, the court may approve the remedial action without modification;

however, the state may agree to pay the additional costs attributable to meeting the disputed

standard, requirement, criteria, or limitation and thereby force the modification of the remedial

action. Id.

     Interpreting 42 U.S.C. § 9621(f), the Akzo court sharpened the explanation of how

CERCLA coexists with state environmental laws and regulations. That court found that while CERCLA does not exactly preempt more stringent state environmental laws, "other remedies based on state law are in effect preempted by the federal and state law embodied in the decree through a mechanism incorporating the federal standards and any relevant more stringent state standards." Akzo, 949 F.2d at 1455. This mechanism, described in § 9621(f), precludes other means of enforcing state environmental laws on the site of remediation because "the language of CERCLA and the legislative history of that act indicate that once the consent decree is entered by a federal court–giving the decree the force of law–alternative state remedies may not be pursued." Id. at 1454-55.

For purposes of the instant case, the Akzo court's reasoning is persuasive. RIRRC's predecessor and EPA fashioned the Consent Decree and RIDEM formally concurred in its plan for remediation. Certain state environmental laws were included in the ROD as ARARs, and the ROD was incorporated into the Consent Decree. The state statute at issue here, R.I. Gen. Laws § 23-19-13.1, banning disposal of out-of-state waste in the Central Landfill, was not selected for inclusion in the ROD as an ARAR. The state's attempts to enforce it now must be barred given RIDEM's missed opportunity to include the statute in the ROD, and in light of a reading of CERCLA which renders that inclusion process as the exclusive mechanism for incorporating more stringent state environmental laws into the required remedy. RIDEM's argument that Section 7 of the Consent Decree mandates that RIRRC must comply with "all applicable state and federal laws" as well as the ARARs fails when read alongside this interpretation of CERCLA and the role of the Consent Decree in establishing the field of environmental law pertaining to the site of remediation.

The question of whether state environmental laws not incorporated as ARARs may be enforced against a PRP as to the Superfund Site also arises in the context of RIDEM's efforts to require "written approval" from RIRRC for its use of PBA.  Section 8.a of the Consent Decree provides that "[a]s provided in Section 121(e) of CERCLA and § 300.400(e)(1) of the [National Oil and Hazardous Pollution Contingency Plan ("NCP")], no permit shall be required for any portion of the Work conducted entirely on-site."  (Pl.'s Statement Ex. B.)  Section 300.400(e)(1) of the NCP indeed echoes this prohibition on permits and defines the term "on-site":

> No federal, state, or local permits are required for on-site response actions conducted pursuant to CERCLA sections 104, 106, 120, 121, or 122.  The term "on-site" means the areal extent of contamination and all suitable areas in very close proximity to the contamination necessary for implementation of the response action.

40 C.F.R. § 300.400(e)(1).  Section 121(e) of CERCLA similarly forbids any permitting requirements:

> No Federal, State, or local permit shall be required for the portion of any removal or remedial action conducted entirely onsite, where such remedial action is selected and carried out in compliance with this section.

42 U.S.C. § 9621(e)(1).

Here, it is clear that the Consent Decree, CERCLA and the NCP indicate unanimously that a state may not require permits of the PRP for any action conducted "on-site," as defined by the federal regulation.  RIRRC's use of out-of-state PBA falls into the category of on-site activity by virtue of the fact that the PBA is being used as fill material in the construction of the impermeable cap covering the Superfund Site.  RIDEM attempts to bypass the prohibition on permit requirements by asserting that it is merely requesting that RIRRC seek "written approval," and not a formal permit.  (Def.'s Mot. Dismiss Ex. A.)  That distinction is too fine for this Court;

9

the ban on permit requirements is part of a Congressional effort to streamline remedial actions at hazardous waste sites and effect prompt cleanups of those sites, and can only be read to block "written approval" requirements as well as permit requirements.

### B. Sovereign Immunity

In its Motion to Dismiss, RIDEM invokes the doctrine of Eleventh Amendment sovereign immunity and its elaboration in Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997), to assert RIDEM's immunity from suit.  RIDEM contends that the Ex parte Young, 209 U.S. 123 (1908), exception to the general rule proscribing federal suits against unconsenting states does not apply in this instance because Coeur d'Alene sets aside certain suits as outside the exception. The Coeur d'Alene decision, according to RIDEM, denies use of the Ex parte Young doctrine to those suits requesting relief that would block state officials from exercising jurisdiction over a substantial portion of land within the state's territory.  RIRRC counters that it does not seek to create an enclave of exclusive federal jurisdiction.  Rather, it contends the issues in this case are whether RIDEM can require written approval for RIRRC's remediation activities or penalize RIRRC for failing to comply with state environmental laws and regulations not incorporated into the Consent Decree.

As discussed above, under the terms of the Consent Decree, all federal and state laws apply to the Superfund Site except those environmental laws not included as ARARs.  It is clear from its prayer for relief that RIRRC does not seek to remove the Superfund Site from all state authority or control.  For that reason, the "special sovereignty interests" implicated in the Coeur d'Alene decision are not invoked, 521 U.S. at 281-82, and the Ex parte Young exception to

10

sovereign immunity functions normally.

As a rule, the Ex parte Young doctrine avoids the Eleventh Amendment defense where prospective injunctive relief, not involving damages or property transfer, is sought against named state officials for violations of federal law. See Neo Gen Screening, Inc. v. New England Newborn Screening Program, 187 F.3d 24, 28 (1st Cir. 1999). As a side attack on RIRRC's use of the Ex parte Young doctrine, RIDEM contests RIRRC's method of naming the state official in the caption but not pleading any substantial allegations against him, nor alleging that any such actions were undertaken in an official capacity. RIRRC responds that this Court has previously accepted suits against state agencies where the agency was sued "by and through" its director, as it has here sued RIDEM "by and through" its director. The First Circuit, in Neo Gen Screening, refused to dismiss the action for pleading flaws similar to those RIDEM highlights, preferring to rule on substantive grounds. Id. This Court will follow that lead, and rest its determination on the larger questions at hand. Because the suit falls into the category of suits allowed by the Ex parte Young doctrine, that is, Plaintiff RIRRC seeks prospective injunctive relief not involving damages or property transfer against a state officer for violation of federal law, sovereign immunity does not bar RIRRC's claim.

### C. Abstention

RIDEM further contends that the abstention doctrine articulated in Younger v. Harris, 401 U.S. 37 (1971), requires this Court to dismiss the action because a state criminal proceeding is pending by virtue of the search warrant issued by a Rhode Island District Court. RIRRC counters that Younger abstention is inappropriate when a claim of federal preemption is "facially

11

conclusive" or "readily apparent" in the claim. Chaulk Services, Inc. v. Mass. Comm'n Against Discrimination, 70 F.3d 1361, 1370 (1st Cir. 1995). Moreover, it argues there is no pending state criminal proceeding and only exceptional circumstances justify a federal court's refusal to decide a case in deference to the state.

Younger abstention is ordinarily required if (1) there is an ongoing state judicial proceeding involving the federal plaintiff that (2) implicates important state interests and (3) provides an adequate opportunity for the federal plaintiff to assert his federal claims. Local Union No. 12004 v. Massachusetts, 377 F.3d 64, 77 (1st Cir. 2004)(citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)).

Before even addressing the three-part test, RIRRC points to case law establishing an exception to the Younger doctrine in which abstention is deemed improper where a claim of preemption is "facially conclusive" or "readily apparent" in the claim. Chaulk Services, Inc. v. Massachusetts Comm'n Against Discrimination, 70 F.3d 1361, 1370 (1st Cir. 1995)(listing cases). The Chaulk Services court reasoned that no significant state interests are served when it is clear that the state court is acting beyond the lawful limits of its authority, and summed up this principle neatly by stating, "comity works both ways." Id. at 1369. In that case, the court found a claim of federal preemption was "facially conclusive" or "readily apparent" in the complaint because the misconduct at issue was "at least arguably prohibited by, and thus subject to the [National Labor Relations Act]." Id. at 1370. In this situation, the conduct complained of, RIDEM's attempts to enforce a state environmental law within a Superfund Site, is similarly subject to a federal statutory scheme which has significant preemptive powers. Therefore, RIRRC's claim that abstention is inappropriate in this instance is persuasive.

12

However, even if the claim did not reveal federal preemption on its face, the Court has serious concerns about whether there exists an ongoing state criminal proceeding, and whether there is an adequate forum for plaintiff's federal claims. RIDEM insists that the issuance of a search warrant suffices to establish that there is an ongoing criminal proceeding, and rests its argument primarily on a New York case, Nick v. Abrams, 717 F. Supp. 1053 (S.D.N.Y. 1989). That case, along with the other cases RIDEM cites in support of this position, is distinguishable here because it relies on a state statute which defines clearly what constitutes the commencement of a criminal action.  Id. at 1056.  There is no analogous Rhode Island statute defining a criminal proceeding, or establishing at what point such a proceeding begins, that might lead this Court to the conclusion that there is an ongoing criminal proceeding in this case.

Other courts have offered that a court should base its Younger analysis more generally on whether the state criminal proceedings have reached a "sufficiently advanced procedural stage within the state's criminal justice system" at the time substantive proceedings have commenced in federal court to warrant federal abstention. Sovereign News Co. v. Falke, 448 F. Supp. 306, 333 (N.D. Ohio 1977).  This kind of inquiry directs a court to the interests underlying Younger abstention, namely, avoiding federal interference with state criminal proceedings, especially when those state proceedings would afford adequate opportunity to vindicate federal claims.  See Middlesex County,  457 U.S. at 432.

As of the date of this Order, the issuance of the search warrant has been the sole state judicial conduct in this case; no charge has been filed, and no indictment has issued.  For these reasons, the Court is not convinced that there exists an adequate forum in which RIRRC can have its claim addressed.  Furthermore, RIRRC's request for relief asks broadly for a declaratory

13

judgment that RIDEM is barred from pursuing a civil, administrative, criminal statutory or regulatory proceeding concerning RIRRC's remediation activities in the Superfund Site. This is not the same as a request to enjoin an ongoing state criminal proceeding. Therefore, because there is no state proceeding to enjoin, and were the Court to abstain, there would be no court to hear RIRRC's claims, Younger abstention is not appropriate in this instance.


### D. The Anti-Injunction Act

RIDEM argues further in support of its Motion to Dismiss that the Anti-Injunction Act, 28 U.S.C. § 2283, bars RIRRC's claim. That statute prohibits a federal court from enjoining state actions, subject to three exceptions: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. While RIRRC has withdrawn its request for a preliminary injunction and presses only its application for a declaratory judgment, several courts have held that if a declaratory judgment would have essentially the same effect as an injunction, it should be refused if the injunction would be barred by § 2283. See, e.g., McLucas v. Palmer, 427 F.2d 239, 242 (2d Cir. 1970) (listing cases). Because RIRRC's requested relief would have an effect at least similar to that of an injunction, the Anti-Injunction Act might very well apply in this case.

Nevertheless, since this Court has determined earlier that there is no ongoing state proceeding, the Anti-Injunction Act does not bar the Court's action here. Hyde Park Partners, L.P. v. Connoly, 839 F.2d 837, 842 (1st Cir. 1988)(finding that Anti-Injunction Act does not bar injunctive relief against a state court when federal court's injunctive power is requested before

state court action is commenced).

### E. Standing

RIDEM argues RIRRC lacks standing to petition the Court for declaratory relief because the possibility of prosecution is merely speculative. Without charges, RIDEM asserts, the case against RIRRC is not an actual, live controversy fit for determination by a federal court. RIDEM makes this argument briefly, as a parting shot on the last page of its Motion to Dismiss. The Court reads its use of the "live controversy" language as an invocation of Article III standing requirements. Briefly, the basic principles of constitutional standing have been articulated by the Supreme Court as compelling a litigant to demonstrate that he has suffered an "injury in fact" which must be concrete and not merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical. Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) (citations and internal quotation marks omitted). Further, the litigant must show that the injury can be traced to the challenged action and is likely to be redressed by a favorable decision. Id. None of these requirements indicate that there must be an ongoing criminal prosecution to establish Article III standing.

In this case, the "injury in fact" that is required has been adequately pled by RIRRC, primarily in its description of RIDEM's execution of the search warrant and the Notice of Intent to Enforce. These facts show that there is nothing hypothetical or speculative about RIDEM's attempts to enforce a state statute against RIRRC. Similarly, RIRRC has demonstrated sufficiently that its injury can be traced to the challenged action, that is, RIDEM's excavation into the impermeable cap and the threat of prosecution is a direct result of RIDEM's attempt to

enforce the state law. Finally, it seems the injury RIRRC incurred will be redressed by a favorable decision in that RIDEM will cease its attempts to enforce the state statute and thereby remove the threat of prosecution. Therefore, as to the injury created by RIDEM's initial attempts to enforce the state environmental law against RIRRC, RIRRC has successfully pled the elements of standing.

### F. Conclusion

Defendant RIDEM's Motion to Dismiss fails because none of the theories in favor of dismissal proposed by RIDEM applies directly to the facts of this case. The Court finds, as Plaintiff RIRRC has argued, that the terms of the Consent Decree and CERCLA preclude enforcement of state environmental laws not contained within the Consent Decree. Doctrines of sovereign immunity, abstention, statutory bars on injunctive relief and lack of standing fail to find a home here for the reasons outlined above. RIDEM's Motion to Dismiss is therefore DENIED.

### II. RIRRC's Motion for Summary Judgment

RIRRC moves for summary judgment on the declaratory judgment count in its Complaint. That count seeks a declaration from the Court that RIDEM "does not have the right, power or authority to compel the Plaintiff to obtain from it any permit, license or approval in order to implement or perform any aspect of the on-site remedy at Operable Unit 1 of the Central Landfill Superfund Site . . . ." In its Motion for Summary Judgment, however, RIRRC adds three further orders that it seeks from the Court:

16

(2) RIDEM does not have the right, power, or authority to act pursuant to the Search Warrant dated October 12, 2005, pursuant to any future search warrants, or pursuant to any other civil, administrative, criminal statutory or regulatory proceeding concerning [RIRRC's] remediation activities within the Superfund Site under the Consent Decree; (3) RIDEM is estopped from asserting that the Plaintiff is required to obtain a permit, or from exercising any search warrant for an alleged failure to obtain a permit; and (4) the sole remedy of RIDEM with regard to the performance by [RIRRC] of the work under the Consent Decree lies within the four corners of the Consent Decree itself, and such remedy is limited to participation through EPA in any enforcement action against [RIRRC] of the requirements of the Consent Decree.

(Pl.'s Mem. Supp. Summ. J. 23.)

In support of its Motion for Summary Judgment, RIRRC has filed a Statement of Undisputed Facts ("Statement") pursuant to LR Cv 56(a) of the Local Rules of this Court. RIDEM's responsive filing, Defendant's Statement of Disputed and Undisputed Facts, answers RIRRC's factual assertions by setting either "undisputed" or "disputed" next to the assertion it has copied from RIRRC's Statement. In order to properly dispute an asserted fact for purposes of a motion for summary judgment, the nonmoving party must offer an affidavit or other evidentiary material to support the claim that the fact asserted is in dispute. DRI LR Cv 56(a)(4). Because RIDEM fails to properly dispute the asserted facts, the Court may take the facts in RIRRC's Statement as admitted. Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000).

In this case, however, the only material facts are those few that describe the entry of the Consent Decree in 1996 and RIDEM's recent efforts to enforce R.I. Gen. Laws § 23-19-13.1. As detailed more fully above, the terms of the Consent Decree and CERCLA govern the determination of whether RIDEM's conduct was prohibited. Any facts concerning whether RIDEM has attempted to repair the torn cap or whether RIRRC ceased using the PBA two weeks before RIDEM sent its Notice of Intent to Enforce are not relevant to the disposition of RIRRC's

17

request for declaratory relief.  The moving party has met its burden to show that there are no

material facts in dispute, and the Court will render judgment as a matter of law.

The arguments in support of and in opposition to the Motion for Summary Judgment echo

those offered in opposition to and in support of the Motion to Dismiss.  RIRRC persists in

claiming RIDEM's enforcement actions are precluded by CERCLA and the Consent Decree.

RIDEM presses its sovereign immunity and abstention objections to the claim.  Both sides alert

the Court to the policy governing the use of cover materials proposed by RIRRC and adopted by

RIDEM in 1999, as well as the construction specifications for the cap submitted by RIRRC's

engineers.  These documents, however, do not contribute to the legal landscape determining the

appropriate limits of RIDEM's actions within the Superfund Site.  Just as in the Motion to

Dismiss, the issues are determined by the terms of the Consent Decree and CERCLA, and are

appropriate for summary disposition.

RIRRC seeks a very broad order from this Court.  While the Court agrees that the terms

of the Consent Decree and CERCLA preclude enforcement of the particular Rhode Island statue

at issue here, it will not go so far as to say that nothing resulting from the October 12, 2005

search warrant may be used in any other civil, administrative, criminal statutory or regulatory

proceeding concerning RIRRC's remediation activities within the Superfund Site under the

Consent Decree, as RIRRC requests.  Nor will it declare that the sole remedy for any dispute

RIDEM has against RIRRC's remedial work is to be found within the Consent Decree.  Rather,

the Court limits its decision to the statute at issue and makes the following declaration:

1.      RIDEM is precluded from enforcing R.I. Gen. Laws § 23-19-13.1 as to RIRRC's

        remedial work occurring entirely on-site.

18

2.      RIDEM may not require a permit or written approval for remediation activity conducted

        entirely on-site.


SO ORDERED.


Mary M. Lisi
United States District Judge
July  26 , 2006